IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **SPECTRUM LABORATORIES, LLC.,** an Ohio Limited Liability Company. <br><br> *Plaintiff,* <br><br> v. <br><br> **DOES #1-10,** <br><br> *Defendants.* | § § § § § § § § § § § § § <br><br> CIVIL ACTION NO. 4:22-cv-03705 <br><br> JUDGE CHARLES ESKRIDGE <br><br> JURY DEMAND |

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

**SPECTRUM LABORATORIES, LLC** (hereinafter "Plaintiff" or "Spectrum") files this Motion to Compel Discovery from Non-Party URZ Trendz, LLC ("URZ") in response to Spectrum's Subpoena.

**SUMMARY**

Acting with this Court's leave to serve non-party discovery aimed at identifying the proper defendants in this action, Spectrum served subpoenas on suspected suppliers of products that are counterfeits of Spectrum's QUICK FIX product. All suppliers responded to the subpoenas and produced documents except for URZ, which instead asserted invalid boilerplate objections, and refused to produce any document or comply in any manner with the requests. Spectrum's repeated, good faith attempts to conference with counsel on resolving this dispute without Court intervention have failed. URZ initially refused to respond to Spectrum's repeated requests for conference. After finally agreeing to a conference, URZ agreed to produce documents after entry of a Protective

Order and receipt of an amended subpoena. Even after those conditions were satisfied, URZ has still failed to produce documents or respond to Spectrum's additional requests for conference. The Court should overrule URZ's objections and compel the discovery Spectrum seeks.

## PROCEDURAL BACKGROUND

This is a counterfeiting case under the Lanham Act in which Spectrum seeks damages, profits, and injunctive relief from one or more infringers of Spectrum's QUICK FIX and Q-CLOCK marks and counterfeiters of Spectrum's QUICK FIX product. The procedural background of this case has pertained to Spectrum's efforts to quickly identify the proper defendants responsible for the counterfeits.

On January 23, 2023, the Court granted leave for Spectrum to amend its pleadings to drop the originally named defendants and to add unknown parties, Defendants DOES #1-10 ("DOE Defendants").

On February 2, 2023, the Court granted leave for Spectrum to conduct discovery to determine the identities of the DOE Defendants, who engaged in the counterfeiting activity that is the basis of this lawsuit.

## BRIEF FACTUAL BACKGROUND

Spectrum filed this lawsuit when it discovered that counterfeits of its QUICK FIX product were being sold by Royal Fragrances LLC d/b/a City Supply Wholesale ("RF"). Spectrum originally named as defendants the individuals and businesses that Spectrum believed were associated with RF's City Supply business. After RF and related parties were served, RF's attorney advised Spectrum that RF had no knowledge that it was

selling counterfeits, RF stopped selling the products, and RF agreed to cooperate with Spectrum to help identify the source of the counterfeits that RF purchased (believing they were genuine) and then resold in the market.  Since then, Spectrum has voluntarily dismissed all of the defendants except the DOE Defendants [*see* Doc. 30] based on a sworn affidavit provided by RF's owner disclaiming any prior knowledge of the counterfeiting and indicating those believed to be responsible for these counterfeit products.

Spectrum knows that its QUICK FIX product is being counterfeited.  With the cooperation of RF, Spectrum has learned the names of the several different suppliers from whom RF believed it obtained the counterfeit "QUICK FIX" product.

In accordance with the Court's grant of leave to conduct discovery regarding the identity of the infringers, Spectrum issued several subpoenas to the suppliers, including URZ.  Spectrum's subpoenas were narrowly tailored to information involving the QUICK FIX product.  While most suppliers timely responded without objection, URZ responded with boilerplate objections and refused to produce documents.  Spectrum's lawyers made multiple email requests and telephone calls to counsel for URZ who signed those objections. URZ's counsel, however, initially refused to respond to Spectrum's repeated requests to meet and confer about those objections and resolve any issues without Court intervention. [Exs. 3 and 4, Conferencing correspondence regarding the subpoena].  Tellingly, URZ's counsel responded to Spectrum's conferencing attempt with legal argument stating (incorrectly) that Spectrum's QUICK FIX mark was "invalid" but gave no dates or times to meet and confer.  [Ex. 3].  The defensive stance of URZ's

response, including: (1) arguing over the validity of Spectrum's trademarks, (2) refusing to produce discoverable information, and (3) refusing to meet and confer about the requests in the subpoena, reads more like the response of an infringer, rather than an innocent third party not involved in this counterfeiting scheme. URZ's stonewall objections, refusal to comply with the meet-and-confer process, and merits-based response underscores the importance of the discovery Spectrum seeks from URZ.

When URZ's counsel finally agreed to a conference, Spectrum understood that URZ would respond to the subpoena if (1) the Court entered a Protective Order, and (2) Spectrum served an amended subpoena which incorporated by reference the QuickFix produced from Spectrum's Complaint. [Ex. 4].

Both conditions have been satisfied. On April 10, 2023, Spectrum's counsel provided the amended subpoena to URZ's counsel. The Court entered the Protective Order on April 18, 2023. On April 24, 2023, Spectrum's lead counsel advised URZ's counsel that the Protective Order had been entered and requested production by April 28, 2023. Spectrum's lead counsel further requested a time to conference if URZ still did not intend to produce documents. As of the time of this filing, URZ's counsel has not responded or produced documents. Left with no choice, Spectrum files this motion to compel URZ's compliance with the subpoena.

## ISSUES REQUIRING RESOLUTION

The sole issue before the Court is whether URZ should be compelled to produce documents in response to Spectrum's subpoena. The Court's grant or denial of a motion

to compel is reviewed under an abuse of discretion standard. *See Vann v. Gilbert*, 482 Fed. Appx. 876, 878 (5th Cir. 2012).

## ARGUMENT AND AUTHORITIES

**A.     Spectrum's subpoena to URZ seeks relevant and discoverable information.**

The party posing discovery may move to compel the disclosure of any materials requested so long as such discovery is relevant and otherwise discoverable. *See* Fed. R. Civ. P. 37.  Materials and information are discoverable if they are "relevant to any party's claim or defense" or if they "appear[ ] reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Mata v. Caring For You Home Health, Inc.*, No. 7:13-CV-287, 2014 WL 12601094, at *1 (S.D. Tex. Aug. 14, 2014) (R. Crane).  Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Spectrum seeks information from URZ, an alleged upstream supplier of counterfeit products illegally sold under the Quick Fix[1] mark.  Spectrum sought the following categories of documents from URZ:

---

[1] References in this section to "Quick Fix" in its uncapitalized form are for purposes of readability and to match URZ's responses, and not intended or to be construed as a disclaimer of Spectrum's rights in the QUICK FIX mark.

1. All Communications since 1/1/2020 with any suppliers or sellers of Quick Fix regarding Quick Fix;
2. All Communications since 1/1/2020 with any customers or buyers of Quick Fix regarding Quick Fix;
3. All internal Communications since 1/1/2020 regarding Quick Fix;
4. All Documents (including Communications) created, modified, sent, or received since 1/1/2020 regarding fake, knock-off, imitation, or counterfeit Quick Fix;
5. All invoices documenting Your sales of Quick Fix since 1/1/2020;
6. All invoices documenting Your purchases of Quick Fix since 1/1/2020;
7. Ten randomly selected samples of Quick Fix from Your inventory for inspection; and
8. All Communications with Royal Fragrances, City Supply Wholesale, or Saif Ali regarding Quick Fix, imitation Quick Fix, or this lawsuit.

[Ex. 1, Spectrum's Subpoena].

Each of these categories of requested documents is relevant, reasonably calculated to lead to the discovery of admissible evidence, narrowly tailored as to scope and timeframe, and is not in any way overly broad or unduly burdensome.

For example, Spectrum's Request Nos. 1 & 2 for communications between URZ and any suppliers, sellers, customers, and buyers regarding the Quick Fix product are directly relevant to the liability of URZ and others in relation to the counterfeiting of the Quick Fix product. Request No. 3 seeking internal URZ communications is relevant for the same reasons.

Request No. 4 is indisputably relevant. It seeks documents and communications created, modified, sent, or received regarding fake, knock-off, imitation, or counterfeit Quick Fix since January 1, 2020.

Likewise, Spectrum's Request Nos. 5 & 6 for invoices for sales and purchases of the Quick Fix product are directly relevant to damages incurred by Spectrum, and illicit profits gained by URZ and others.

Request No. 7 for random samples of the Quick Fix product sold by URZ is directly relevant to whether or not the imposter Quick Fix products are indeed a counterfeit of the Spectrum Quick Fix product.  Also, this is not an undue burden as the cost to comply with this request is under $100 of product.

Moreover, Request No. 8 seeking communications between URZ and Royal Fragrances, City Supply Wholesale, and Saif Ali (the originally named defendants who acted as unknowing downstream sellers of the counterfeits) are directly relevant to URZ's business dealings involving counterfeit goods with its downstream customers.

Any documents or samples responsive to the above requests are likely candidates for admissible evidence in support of Spectrum's claims.  The information Spectrum seeks from URZ is thus within the scope of discovery, and the burden shifts to URZ to show why the discovery should not be permitted.  *See Mata,* 2014 WL 12601094, at *1.

**B.     URZ cannot meet its burden to show why discovery should not be permitted, and its objections should be overruled.**

URZ's objections should be overruled because they are general, rote, boilerplate objections and violate the Court's procedures.  URZ cannot establish its burden that the requests are irrelevant, overly broad, or unduly burdensome or oppressive. *See Mata,* 2014 WL 12601094, at *1.

1. <u>URZ's boilerplate "General Objections" violate the Court's Procedures and do not insulate URZ from complying with the law.</u>

At the outset, URZ's objections begin with ten "General Objections" which directly violate the Court's Procedures. [Ex. 2, URZ's Objections to Spectrum's Subpoena]; Court Procedures at Rule 13 (d) ("State only specific objections." . . . "Don't state general or rote objections").

Further, URZ's "General Objections" are mere boilerplate. For example, General Objection No. 1 objects – without explanation – that the subpoena fails to take reasonable efforts to reduce the burden and expense on a nonparty to the extent the records sought are in the possession, custody, or control of the parties to the litigation. [Ex. 2, at General Objection ("GO") 1]. The sole identifiable party to the litigation is Spectrum. Spectrum clearly does not have access to the requested URZ records. Spectrum also clearly does not have access to the records of the unidentified DOE Defendants. Also, URZ made no attempt to explain how these requests are burdensome or costly to respond to. URZ counsel's refusal to meet and confer only highlights the lack of merit to this objection. The Court should overrule this boilerplate objection.

URZ again objects without explanation that Spectrum's requests for specific communications "since 1/1/2020" and "ten randomly selected samples" are overbroad and burdensome and not reasonably tailored to the issues in the litigation. [Ex. 2, GO 3]. However, URZ ignores that these requests are both (1) limited only to the Quick Fix product, and (2) limited to a timeframe of less than three years. The requests are precisely tailored to the issues in this litigation.

URZ's other "General Objections" are improper for the following reasons:

| URZ's other General Objections | Reasons objections lack merit and should be overruled |
|---|---|
| a) Spectrum has not made a showing it is entitled to "sensitive financial and other information" without making a showing that it has authorization to receive the information [Ex. 2, GO 2]; | The other parties produced their records in response without a protective order. If true, URZ could have resolved this objection by a protective order. URZ's counsel, however, refused to meet and confer. |
| b) terms such as "Quick Fix" and "Communication" are vague and ambiguous because they don't provide enough information [Ex. 2, GO 4]; | URZ sells Quick Fix and knows exactly what it is. URZ and its counsel know what communications are, and that term is defined. URZ did not object to any portion of that definition. |
| c) the requests do not reasonably limit the time period [Ex. 2, GO 5]; | January 1, 2020 is very reasonable considering the counterfeiting issue. None of the other parties responding to the same subpoena topics objected to this timeframe. |
| d) the requests seek confidential, proprietary, and trade secret information which will not be produced without a protective order [Ex. 2, GO 6]; | URZ did not provide a shred of proof that the information sought is somehow confidential, proprietary or trade secret in a manner that would prevent production of relevant or require a protective order. URZ's counsel refused to meet and confer to explain this boilerplate objection |
| e) the requests seek "not reasonably accessible" information [Ex. 2, GO 7]; | The requests seek URZ's business records indisputably within its possession, custody or control. |
| f) the requests encompass privileged information [Ex. 2, GO 8]; | The requests on their face do not seek privileged documents. If such responsive documents exist, URZ provided no privilege log. |
| g) the requests seek information not in URZ's possession, custody, or control [Ex. 2, GO 9]; and | The requests on their face seek information in URZ's possession, custody or control. |
| h) there is no showing of relevance as to issues at stake in the litigation [Ex. 2, GO 10]. | As set forth above, the requests are relevant to obtaining documents pertaining to counterfeiting, which is against the law. |

Accordingly, URZ's "General Objections" should be overruled.

  2. <u>URZ's "Specific Objections" are equally meritless.</u>

In its "Specific Objections," URZ merely duplicates its invalid "General Objections." [Ex. 2, at 3]. The "Specific Objections" fail to provide any additional specificity to what is presented in the "General Objections." The "Specific Objections" are repetitive boilerplate which simply parrot the specific language of each request into the objection to that request. The Specific Objections should be overruled.

  a. *All Communications since 1/1/2020 with any suppliers or sellers of Quick Fix regarding Quick Fix.*

URZ objects to Request No. 1 as overbroad and unduly burdensome because it seeks "[a]ll Communications since 1/1/2020 with any suppliers or sellers" without making a showing that the demand cannot be reasonably narrowed to the issues of the litigation, that terms such as "Communications," "Quick Fix," "suppliers," and "sellers" are vague and ambiguous, that the request seeks confidential and proprietary information and "in fact" "seeks" to invade URZ's privacy, and that URZ does not have authorization to disclose confidential information of third parties [Ex. 2, Specific Objection ("SO") 1].

However, URZ's objections are baseless. As described above, Request No. 1 is properly limited in both time and scope to the issues of this litigation. The request seeks communications over a limited time frame, with parties in specific relationships with URZ, and with regard a specific product. The terms "Communications" and "Quick Fix" are defined in the subpoena, and URZ, as a supplier, cannot reasonably assert that it does not understand the meaning of "supplier" or "seller." URZ does not identify any type of confidential or proprietary information, or how Spectrum's requests "in fact" seek to

invade URZ's or other's privacy. URZ's supposed lack of "authorization" to disclose third party confidential information is irrelevant. URZ has never mentioned nor sought a protective order. Accordingly, URZ's objections to Request No. 1 should be overruled.

      b.    *All Communications since 1/1/2020 with any customers or buyers of Quick Fix regarding Quick Fix.*

URZ's objections to Request No. 2 are *identical* to its objections to Request No. 1, with the exception of its objection that the terms "customers" and "buyers" are vague and ambiguous. [Ex. 2, at SO 2]. URZ's assertion that it, a supplier, cannot understand the meaning of "customers" and "buyers" of Quick Fix is disingenuous. URZ's objections to Request No 2. should be overruled for the same reasons.

      c.    *All internal Communications since 1/1/2020 regarding Quick Fix.*

URZ's objections to Request No. 3 are likewise identical to its objections to Requests Nos. 1 and 2, with the exception that URZ claims "Internal Communications" is vague and ambiguous. [Ex. 2, at SO 3]. "Communications" is a defined term. "Internal Communications" is clear and unambiguous; the request seeks the communications sent internally at URZ responsive to the request. URZ's objections to Request No. 3 should be overruled for the same reasons that its previous objections should be overruled.

      d.    *All Documents (including Communications) created, modified, sent, or received since 1/1/2020 regarding fake, knock-off, imitation, or counterfeit Quick Fix.*

In response to Request No. 4, URZ repeats the same objections, but now objects that "fake," "knock-off," "imitation," and "counterfeit" are vague and ambiguous. [Ex. 2, at SO 4]. The irony of the objection notwithstanding, these plain-language English terms that are clear and unambiguous, especially in the context of a subpoena issued in a

trademark infringement and counterfeiting lawsuit. The Court should overrule URZ's objections to Request No. 4.

  e. *All invoices documenting Your sales of Quick Fix since 1/1/2020.*

Here, URZ objects to "Quick Fix" as vague and ambiguous, and re-states its objections regarding confidentiality and authorization to release third party confidential information. [Ex. 2, at SO 5]. Again, "Quick Fix" is a defined term denoting a specific product line and/or mark. URZ provides no explanation of why invoices are confidential or proprietary to it or third parties. Indeed, URZ's failure to seek or obtain a protective order from the Court belies that this information is not confidential or proprietary. The Court should overrule URZ's objections to Request No. 5.

  f. *All invoices documenting Your purchases of Quick Fix since 1/1/2020.*

URZ's objection to Request No. 6 is *verbatim* of its objection to Request No. 7, and should be overruled for the same reasons.

  g. *Ten randomly selected samples of Quick Fix from Your inventory for inspection.*

URZ's objection to Request No. 7 characterizes "ten random samples" of a specific product as a "broad demand," objects that "randomly selected samples" and "inventory" are vague and ambiguous, then repeats the same confidentiality objections. [Ex. 2, at SO 7]. Ten samples of a specific "Quick Fix" product can hardly be characterized as a broad demand. Instead, it is incredibly specific and narrowly tailored to the key issue in this case – whether or not the "Quick Fix" sold by the subpoenaed parties is a counterfeit of the "Quick Fix" sold by Spectrum. Further, a supplier such as

URZ cannot reasonably claim that it does not understand the terms "randomly selected samples" or "inventory." The Court should overrule URZ's objections to Request No. 7.

      h.    *All Communications with Royal Fragrances, City Supply Wholesale, or Saif Ali regarding Quick Fix, imitation Quick Fix, or this lawsuit.*

Aside from the same objections it repeats in response to previous requests, URZ objects to Request No. 8 that "all communications" is overbroad and unduly burdensome because it is not limited in time. URZ also objects that terms such as "communications," "Royal Fragrances," "City Supply Wholesale," "Saif Ali," and "Quick Fix" are vague and ambiguous in the absence of clarifying definitions. URZ then repeats its standard confidentiality objections. [Ex. 2, at SO 8]. While "all communications" is not limited in time *per se*, it is reasonably tailored and limited specifically to three different parties, and limited to those communications regarding Quick Fix, an imitation Quick Fix, or the lawsuit. Royal Fragrances and City Supply wholesale are business entities with whom URZ does business. Salif Ali is an individual with whom URZ does business. "Quick Fix" and "communications" are defined terms in the subpoena. URZ cannot realistically deny an understanding of the identities of those persons and entities with whom it does business and cannot realistically object that defined terms are not defined enough. URZ's objections to Request No. 8 should be overruled.

## **CONCLUSION**

As described above, none of URZ's objections have merit. Each of URZ's requests seeks information directly relevant to the issues in this counterfeiting lawsuit, reasonably tailored in time and/or scope, and are calculated to lead to the discovery of

admissible evidence. Spectrum respectfully requests that the Court overrule each of URZ's objections and grant this Motion to Compel.

DATED: May 2, 2023          Respectfully submitted,

    By: */s/ David B. Cupar*
        David B. Cupar (*pro hac vice*)
        *Attorney in Charge*
        Ohio Bar No. 71622
        dcupar@mcdonaldhopkins.com
        Matthew J. Cavanagh (*pro hac vice*)
        Ohio Bar No. 79522
        mcavanagh@mcdonaldhopkins.com
        **MCDONALD HOPKINS LLC**
        600 Superior Avenue, East
        Suite 2100
        Cleveland, Ohio 44114
        Telephone: 216.348.5400
        Facsimile: 216.348.5474

    By: */s/ Courtney Ervin*
        Courtney Ervin
        Texas Bar No. 24050571
        SDTX No. 611093
        cervin@hicks-thomas.com
        Kasi Chadwick
        Texas Bar No. 24087278
        SDTX No. 2421911
        kchadwick@hicks-thomas.com
        **HICKS THOMAS LLP**
        700 Louisiana St., Suite 2000
        Houston, Texas 77002
        Telephone: 713.547.9100
        Facsimile: 713.547.9150

        **ATTORNEYS FOR PLAINTIFF SPECTRUM LABORATORIES, LLC**

## CERTIFICATE OF CONFERENCE

I certify that Spectrum, through counsel, has attempted to conference with URZ, through counsel, on several occasions to resolve this discovery dispute without the need for Court intervention. Upon receipt of URZ's objections, counsel for Spectrum sent numerous emails seeking a conference, including by e-mail on March 23 (Kasi Chadwick), March 28 (Kasi Chadwick), April 4 (Kasi Chadwick), April 5 (David Cupar), and April 7 (Kasi Chadwick). Counsel for URZ offered only the morning of April 7, Good Friday, for a conference. While lead counsel, Mr. Cupar, was not available at that time, both Courtney Ervin and Kasi Chadwick made themselves available. During the telephone conference, at URZ's request, Spectrum agreed to seek entry of a protective order and to supplement the subpoena to clarify that the information sought was limited to sales of Spectrum's product or any counterfeit of it. Spectrum understood that URZ would then comply with the subpoena. URZ still has not complied with the subpoena and has not responded to Spectrum's follow-up request for a further conference, including by e-mail on April 10 (Kasi Chadwick and Courtney Ervin) and April 24 (David Cupar). Therefore, URZ should be considered opposed to the relief requested in this motion.

*/s/ Courtney Ervin*
Courtney Ervin

## CERTIFICATE OF WORD COUNT

In accordance with Section 18(c) of the Court's procedures, I certify that this document contains 3,381 words, exclusive of the caption, signature block and certificates of service and conference.

*/s/ Courtney Ervin*
Courtney Ervin

## CERTIFICATE OF SERVICE

I hereby certify that on May 2, 2023, this document was served to the parties of record via the Court's ECF noticing system and the attorney of record for non-party URZ has been served via email and via first class mail, postage prepaid.

*/s/ Courtney Ervin*
Courtney Ervin