UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SPECTRUM LABORATORIES, LLC,<br>    Plaintiff,<br><br>v.<br><br>URZ TRENDZ, LLC,<br>    Defendant. | **Case No. 4:22-CV-03705**<br><br>**Hon. Judge Charles Eskridge**<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT'S MOTION TO DISMISS PURSUANT FED.R.CIV.P. §12(b)(6)**

Defendant URZ Trendz, LLC ("Defendant") hereby submits this Motion to Dismiss ("Motion") the Second Amended Complaint ("SAC") filed by Plaintiff Spectrum Laboratories, LLC. ("Plaintiff"). Concurrent with this Motion, Defendant submits the Declaration of Louis F. Teran ("Teran Decl.").

## I.   INTRODUCTION

Make no mistake, Plaintiff Spectrum Laboratories, LLC ("Plaintiff") has filed this lawsuit to protect its criminal enterprise of selling synthetic urine to drug addicts who need it to falsely pass urine tests that are routinely conducted by employers, law enforcement, and government agencies to test for illegal drug use. The manner by which Plaintiff is audaciously manipulating the federal legal system is nothing short of incredible. Plaintiff acquired Trademark Registration Nos. 4453892 and 5791421 for the marks "Quick Fix" and the "Q-Clock" design mark. See *Teran Decl.,* Ex. A and B. These registrations were issued for the following products:

> "synthetic urine for use in urinalyses; dietary supplemental drinks; and chemical compositions and agents for detoxifying medical and clinical urine samples." See *Id.*

1

Essentially, Plaintiff represented to the USPTO that it sells dietary supplemental drinks and synthetic urine for use in a medical or clinical setting.  In its Complaint, Plaintiff broadly describes itself as a supplier of "a synthetic urine product".  See *SAC,* ¶10.  But in reality, Plaintiff advertises its product as follows:

> "What is synthetic urine? -  Synthetic urine, also known as fake urine or fake pee, resembles the chemical structure and physical properties of real human urine…
>
> Fake pee is mostly used to pass urine tests that a person, prank, or sports event organizer can order.  In most of these cases, getting caught with traces of toxins in the body can have far-reaching consequences.  Instead of facing problems, many people opt to use Quick Fix Synthetic Urine or the larger 3oz Quick Fix Synthetic Urine 6.3 plus bottle.
>
> Submitting fake pee instead of human urine is widely considered to be one of the most effective ways to pass urine tests that you would otherwise fail.
>
> If you recently consumed toxic substances, such as nicotine, Quick Fix is the best synthetic urine kit to help you pass.  It is indistinguishable from human urine, even at a molecular level."  See *Teran Decl.,* Ex. C.

Even more, Plaintiff also sells a "Belt Kit" that allows the fake urine to be hidden around the waist underneath clothing so that it appears that Plaintiff's consumer is actually urinating into a cup during a drug test.  See *Teran Decl.,* Ex. D.  But when the "Belt Kit" does not work, Plaintiff sells a specially designed underwear with a hidden pocket into which the fake urine can be hidden.  See *Teran Decl.,* Ex. E.

There is no question that Plaintiff is in the business of manufacturing and selling substances and devices designed to falsify drug test results.  Such is a blatant violation of Texas Health & Safety Code §481.133 and punishable by imprisonment as a Class A misdemeanor.  So while others stay away from these products for fear of going to prison, Plaintiff doubles down with the following advertisement:

> "Best Synthetic Urine Brand – In this day and age, synthetic products are in demand.  Despite efforts by law enforcement and governments to shut down the use of synthetic urine, there is pushback by the consumer, and the consumers are sending a clear message: 'we want it, and we need it'."  See *Teran Decl.,* Ex. F.

Essentially, despite any measures that law enforcement and governments put in place to protect people from alcoholics and drug addicts, Plaintiff is right there to tear them down with its synthetic urine. Now, Plaintiff has the audacity to run to this Federal Court seeking protection of its criminal enterprise.

With regards to Plaintiff's claims against Defendant, the SAC must be dismissed pursuant Fed.R.Civ.P. §12(b)(6) for failure to state a claim upon which relief can be granted. More specifically, the SAC fails to identify what product, if any, Defendant has sold or offered to sell that purportedly infringes Plaintiff's trademark registrations. After all, the SAC appears to indicate that Defendant was added to this case based on the Court's order rather than based on facts that support a claim of wrongdoing.

As such, Defendant hereby submits this motion to dismiss without opportunity to amend pursuant Fed.R.Civ.P. §12(b)(6).

## II.     LEGAL STANDARD

It is established that a plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts must dismiss the claim if there are insufficient factual allegations to raise the right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007).

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments thereto. See *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. See *Id*.

## III. PLAINTIFF FAILS TO PROPERLY PLEAD ITS TRADEMARK INFRINGEMENT CLAIM

To prevail on a trademark-infringement claim, a plaintiff must show (1) a protectable right in a mark, and (2) that the defendant's use of the marks creates a likelihood of confusion as to the mark's source, affiliation, or sponsorship. See *Paulsson Geophysical Services, Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008).

In the present case, Plaintiff pleads sufficient facts for the first factor. After all, Plaintiff pleads that it is the registrant of two trademark registrations that were issued by the United States Patent and Trademark Office ("USPTO").

However, Plaintiff fails to properly plead the second factor because the SAC does not allege any facts to show that Defendant used the registered marks in a manner that creates a likelihood of confusion. To determine whether confusion exists, courts often consult nine non-exhaustive "digits of confusion." Those digits are: (1) the type of trademark; (2) mark similarity; (3) similarity of services; (4) identity of retail outlets and purchasers; (5) identity of advertising media; (6) defendant's intent; (7) actual confusion; (8) care exercised by potential purchasers; and (9) parody. See *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009). See also *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998).

The SAC does not provide any information whatsoever identifying which of Defendant's product or service specifically is alleged to be the source of a likelihood of confusion. Even more, the SAC fails to plead any facts that Defendant actually used a mark that is likely to cause confusion. Rather than providing the factual basis for its claims, Plaintiff merely pleads in a conclusory manner as follows:

> "32. Upon information and belief, URZ is complicit in the counterfeiting and infringement scheme. Accordingly, [Plaintiff] now adds URZ as a defendant in this case." See *SAC,* ¶32.

Even more, nowhere in the SAC is there sufficient facts to define such "counterfeiting and infringement scheme". In fact, the word "scheme" does not appear anywhere else in the SAC. More important, Plaintiff fails to plead sufficient facts that

4

Defendant actually used any of the registered marks and that such use is likely to cause confusion. After all, Plaintiff fails to identify the mark that Defendant has allegedly used and the specific product or service that Defendant has allegedly used said mark with.

At an absolute minimum, Defendant is entitled to be given notice as to what mark and what product form the basis for Plaintiff's claims. Without this basic information, Defendant is unable to properly submit an answer and prepare a proper defense in this case.

Accordingly, Defendant respectfully requests this Court to dismiss Plaintiff's trademark infringement claim.

## IV.     PLAINTIFF IMPLIES THAT THIS COURT ORDERED THE ADDITION OF DEFENDANT TO THIS ACTION

Instead of pleading the required facts, Defendant pleads as follows:

> "26. However, URZ still refused to respond [to a subpoena], and [Plaintiff] filed a Motion to Compel Discovery.
> 27. On May 3, 2023, the Court granted [Plaintiff's] Motion to Compel. The Court's Order specifically provides that "…if URZ Trendz's isn't cooperative, [Plaintiff] may bring motion to amend their pleading to add it as a Defendant upon information and belief." See *SAC,* ¶26-27.

Thus, rather than pleading the required facts for a trademark infringement claim, Plaintiff pleads that the Court essentially ordered that Defendant be added to this case for failure to be "cooperative" with a subpoena. Lack of cooperation with a subpoena is not an element for trademark infringement or any of the other claims asserted in this action. Thus, this is insufficient to constitute a proper pleading.

It is amazing how Plaintiff manipulates the federal legal system to protect its criminal enterprise. Thus far, Plaintiff has duped the USPTO and this Court into believing that it is a law abiding company that provides synthetic urine for medical and clinical use. All the while, however, Plaintiff has built a criminal empire providing people all over Texas and the rest of the country substances and devices to falsify drug test results. Now, by all appearances, this Court seems to be protecting Plaintiff's criminal empire through extraordinary means including authority for Plaintiff to issue

subpoenas to third parties at Plaintiff's sole discretion despite the lack of factual support that such third parties did anything wrong. It is unclear what is the legal basis for this Court to allow Plaintiff to inspect confidential business records without first pleading sufficient factual matter to support an alleged wrongdoing. It is even more incredible that such action is essentially shielding Plaintiff's criminal activity.

## V. OTHER CLAIMS ARE DEPENDENT ON TRADEMARK INFRINGEMENT CLAIM

Given that the trademark infringement claim was not properly plead in the SAC, all the other claims are also not properly plead because they are all based on the trademark infringement claim. As such, Defendant respectfully requests this Court to dismiss Plaintiff's remaining claims.

## VI. CONCLUSION

Based on the foregoing, Defendant respectfully requests this Court to grant this Motion and dismiss the SAC as to Defendant without opportunity to amend.

DATED:  June 29, 2023

By:_____

Louis F. Teran (Admitted *Pro Hac Vice)*
Email: lteran@slclg.com
California Bar No. 249494
SLC Law Group
1055 E. Colorado Blvd., Suite 500
Pasadena, CA 91106
Phone:  818-484-3217 x200

ATTORNEY FOR URZ TRENDZ, LLC.

## **CERTIFICATE OF SERVICE**

I certify that I filed this brief via the ECF system, which serves this motion on all counsel of record.

DATED:  June 29, 2023

By:_____

Louis F. Teran (Admitted *Pro Hac Vice)*
Email: lteran@slclg.com
California Bar No. 249494
SLC Law Group
1055 E. Colorado Blvd., Suite 500
Pasadena, CA 91106
Phone:  818-484-3217 x200

ATTORNEY FOR URZ TRENDZ, LLC.