IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **SPECTRUM LABORATORIES, LLC**., an Ohio Limited Liability Company. § § § § § § § § § § § § § | |
| *Plaintiff,* § § | CIVIL ACTION NO. 4:22-cv-03705 |
| | JUDGE CHARLES ESKRIDGE |
| **v.** § § | |
| **DOES #1-10,** § § | |
| *Defendants.* § § | |

**SPECTRUM'S OPPOSITION TO URZ'S MOTION TO DISMISS**

**I.   INTRODUCTION**

Defendant URZ Trendz argues for dismissal by (1) making spurious and irrelevant criminal allegations against not only plaintiff Spectrum Laboratories, LLC but <u>also</u> this Court, and (2) feigning ignorance of the product Spectrum contends URZ is counterfeiting, and the trademarks Spectrum contends URZ is infringing. As to the latter, Spectrum's complaint could not be clearer. It alleges that URZ participated in the counterfeiting of Spectrum's *Quick Fix* product and selling counterfeit versions of *Quick Fix* with the QUICK FIX mark on the boxes and elsewhere (*see* 2d Am. Compl. ¶34). As to the former, Spectrum has committed no crime, and URZ's allegations are nothing more than false mudslinging in an effort to avoid its discovery obligations. The above alone demonstrates that URZ has no defense on the merits.

The Court should reject URZ's arguments and deny its motion.

## II. BACKGROUND

### A. Spectrum's QUICK FIX Mark and QUICK FIX Product

Spectrum invented, markets, and sells a synthetic urine product called "*Quick Fix*." (2d Am. Compl. ¶ 8-11.) It is undisputed that Spectrum also owns a federally registered trademark to the QUICK FIX mark for "Chemical compositions and agents, namely, synthetic urine for use in urinalysis." (2d Am. Compl. ¶ 8.)

### B. This Lawsuit.

Spectrum filed this action when it discovered that counterfeits of its *Quick Fix* product were being sold in Texas by Royal Fragrances LLC, d/b/a City Supply Wholesale ("RF"). [*See* Doc. 1 (Compl.); 2d Am. Compl. ¶ 15.] After RF was served, RF's attorney advised Spectrum that RF had no knowledge that it was selling counterfeits, RF stopped selling the products, and RF agreed to cooperate with Spectrum to help identify the source of the counterfeits that RF purchased (believing they were genuine) and then resold in the market. [2d Am. Compl. ¶ 19; *see also* Docs. 30 (Mot. for Leave to Amend Compl.); 33 (Mot. to Begin Discovery)].

Because this lawsuit has always been about getting to the bottom of the counterfeiting, Spectrum voluntarily dismissed the Original Defendants [*see* Doc. 28; *see also* 2d Am. Compl. ¶ 20] when RF's owner provided a sworn affidavit disclaiming any prior knowledge of the counterfeiting and provided information to help Spectrum trace the counterfeits upstream. Next, based on information obtained from RF regarding its suppliers of the counterfeit product, Spectrum requested (and was granted) leave to amend its complaint to join unknown defendants ("DOES #1-10"). [Docs. 30-31].

Spectrum also requested (and was granted) leave to conduct third-party discovery to learn who was responsible for the counterfeiting and to add them to the lawsuit, if discovered. [Docs. 33-34].

Spectrum issued subpoenas to several suspected suppliers of the counterfeit products. [See Returns of Service at Docs. 36-39]. URZ responded with boilerplate objections and completely refused to produce documents. [*See* Doc. 45 (Mot. to Compel).] Spectrum's efforts to conference with URZ were essentially rejected. Instead, URZ's counsel adopted a defensive stance which included (a) asserting a merits-based legal argument that Spectrum's trademarks were invalid (which Spectrum disputes), (b) refusing to produce discoverable information, and (c) refusing to meet and confer about the subpoena. [2d Am. Compl. ¶ 23]

When URZ's counsel finally agreed to a conference, URZ agreed to respond to the subpoena if (a) the Court entered a Protective Order, and (b) Spectrum served an amended subpoena which incorporated by reference the Quick Fix product referenced in Spectrum's Original Complaint (claiming that they did not understand what "Quick Fix" meant in this context). [2d Am. Compl. ¶ 24; *see also* Doc. 45.] Both conditions were satisfied. The Court entered a Protective Order on April 18, 2023 [Doc. 42], and Spectrum served an amended subpoena on URZ on April 24, 2023.

However, URZ still refused to respond. Spectrum was forced to file a Motion to Compel Discovery. [2d Am. Compl. ¶¶ 25-26; *see also* Doc. 45]. On May 3, 2023, the Court granted Spectrum's Motion to Compel. [Doc. 46]. The Court's Order specifically provides that ". . . if URZ Trendz isn't cooperative, Spectrum may bring a motion to

amend their pleading to add it as a Defendant upon information and belief." [Doc. 46] (emphasis added).

On May 10, 2023, Spectrum forwarded the Court's Order to URZ, asking again for documents in response to the subpoena, and warning that URZ may be joined as a defendant if it continued to refuse to comply with the subpoena. [2d Am. Compl. ¶ 28; *see also* June 2, 2023 Discovery Letter, att'd as Ex. 1] On May 16, 2023, Spectrum again asked for compliance with the subpoena, and requested compliance by May 19, 2023. [2d Am. Compl. ¶ 29.] URZ did not produce documents by the deadline, despite being under a Court Order to do so. [*Id.* ¶¶ 30-32.]

### C. Spectrum Names URZ as a Defendant.

On June 2, 2023, Spectrum moved to amend its complaint to add URZ as a named defendant. [Doc. 48.] The Court granted leave to amend on June 12, 2023, and Spectrum filed its second amended complaint that same day. [Doc. 49, 50.]

On June 29, 2023, URZ moved to dismiss under Fed. Civ. R. 12(b)(6). [Doc. 56.]

That same day, June 29, URZ emailed a "supplemental" subpoena response to Spectrum's counsel that provided (a) three pages of boilerplate "General Objections", (b) muddled "specific objections" to each request that appear to rewrite what Spectrum sought by subpoena, and (c) the incredible claim that URZ was "unable to locate or identify any responsive documents within its possession, custody, or control." [Suppl. Subpoena Resp., att'd as Ex. 2] Spectrum explains *infra* at pages 9-10 just some of the reasons why this "I have nothing" claim simply cannot be true.

Spectrum now opposes URZ's motion to dismiss.

### III. LAW AND ARGUMENT

#### A. Legal Standard

Rule 8(a)(2) requires a complaint to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." *See ConocoPhillips Co. v. In-Depth Compressive Seismic, Inc.*, No. 4:20-cv-04385, 2021 WL 1854516, at *1 (S.D. Tex. May 10, 2021). A complaint merely needs to contain enough factual allegations to state a claim to relief that is plausible on its face. *Id.*, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In deciding a Rule 12(b)(6) motion, the Court must "accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *ConocoPhillips*, 2021 WL 1854516, at *2.

When plaintiff has good reason to believe a factual contention is true, but may need more discovery to prove it, the plaintiff may identify the allegation as made "upon information and belief," and such an allegation is deemed true for deciding a motion to dismiss. *See ConocoPhillips*, 2021 WL 1854516, at *3; *see also* Fed. Civ. R. 11, Committee Notes, 1993 Amendment. Such allegations are especially appropriate when, as here, "the evidence of proof is in the hands of, or more accessible to, the defendant." *ConocoPhillilps*, 2021 WL 1854516, at *3.

The Court should deny a motion to dismiss when, as here, plaintiff has pleaded facts establishing each of the proof elements of each cause of action and stated a plausible claim. *See Jemison v. Illinois Dept. of Health & Family Services*, No. 4:21-cv-2099, 2022 WL 283027, at *3 (S.D. Tex. Jan. 13, 2022).

**B.	URZ failed to meet-and-confer before filing its motion.**

As a threshold matter, Paragraphs 17(b) of this Court's Court Procedures states: "Before filing a motion to dismiss for failure to state a claim or counterclaim under Rule 12(b)(6)," the movant must "identify such issues to the opposing party and confer in good faith to resolve them." The Court warns that it "strikes motions that don't include this in the certificate of conference." (Court Procedures, Judge Charles Eskridge ¶ 17(b).)

Here, URZ did not contact Spectrum before filing its motion, let alone identify the issues raised in its motion or attempt to confer in good faith to resolve them. URZ also did not include any certificate of conference.

The Court, therefore, should strike URZ's motion to dismiss on that basis alone.

**C.	Spectrum states a more than plausible claim for trademark infringement against URZ.**

As URZ acknowledges (Mot. 4), to state a claim for trademark infringement under the Lanham Act, Spectrum must allege (a) ownership of a protectable mark, and (b) that defendant uses in commerce "any word, term, name, symbol, or device, or any combination thereof, .... which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A).

The Lanham Act specifically identifies use of a "counterfeit mark or designation" as a more severe form of trademark infringement that entitles the trademark owner to

(a) treble damages and reasonable attorneys' fees, unless the court finds there are "extenuating circumstances," and (b) statutory damages. 15 U.S.C. § 1117(b), (c).

Here, URZ agrees that Spectrum has sufficiently alleged ownership of a protectable mark. (Mot. 4 ("Plaintiff pleads sufficient facts for the first factor").) Indeed, URZ must make that concession because it is undisputed that Spectrum owns a federally-registered trademark for the QUICK FIX mark (2d Am. Compl. ¶ 8, at Ex. 1.), the mark is now incontestable, and thus the registration triggers a nearly non-rebuttable presumption of trademark ownership and validity. *See* 15 U.S.C. § 1065, § 1057(b).

Spectrum has sufficiently alleged the second element by alleging that, upon information and belief, URZ has counterfeited and sold counterfeit versions of Spectrum's *Quick Fix* products. The complaint states:

> 34. Moreover, upon information and belief, URZ is an entity that has (a) counterfeited, or assisted with counterfeiting, the Quick Fix products; (b) sold, offered to sell, or marketed the Counterfeit Products; and/or (c) introduced the Counterfeit Products into the stream of commerce that led to RF.

(2d Am. Compl. ¶ 34.) The counterfeit versions of *Quick Fix* at issue have duplicates of the "QUICK FIX" mark on the counterfeit boxes themselves. Spectrum alleges this fact in the complaint in (a) the textual allegations (2d Am. Compl. ¶ 16), and (b) Exhibit 3 attached to the complaint, which shows a genuine *Quick Fix* box next to a counterfeit *Quick Fix* box. It is more than plausible—and, in fact, is axiomatic—that selling a counterfeit product with a counterfeit trademark on a counterfeit box that looks identical to the real trademark is likely to cause confusion. Indeed, that is the entire purpose of counterfeiting products: to confuse customers into thinking it is the real thing.

The law agrees with this logic. This Court has held that, although "[g]enerally, a likelihood of confusion analysis involves a factual inquiry into several different factors, ... in the case of a counterfeit mark, likelihood of confusion is clear." *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1007 n.11 (S.D. Tex. 2000). Federal courts in this circuit and beyond unanimously agree. *See Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 667, 674 (W.D. Tex. 2008) (citing cases).

Spectrum has sufficiently and plausibly alleged trademark infringement against URZ by alleging that URZ has counterfeited Spectrum's *Quick Fix* products in boxes with the counterfeit QUICK FIX mark on them and sold them in commerce.

### D.     URZ's criminal allegations are irrelevant and absurd.

Trying to deflect attention from its counterfeiting, URZ leads with spurious accusations that Spectrum's *Quick Fix* sales are criminal. URZ even makes the absurd accusation that this Court is "protecting" Spectrum's "criminal enterprise." It states: "Now, by all appearances, this Court seems to be protecting Plaintiff's criminal empire through extraordinary means including authority for Plaintiff to issue subpoenas ..." (Mot. at 5-6.)

URZ's criminal allegations against Spectrum (and the Court) are: (a) factually false because Spectrum committed no crime, (b) irrelevant to the motion to dismiss, (c) an improper attempt to tarnish Spectrum's reputation in front of this Court, and (d) hypocritical because URZ itself sells (a counterfeit of) Quick Fix synthetic urine.

Although URZ's allegations of criminal conduct are unsupported, irrelevant, and a transparent attempt to tarnish Spectrum before the Court, Spectrum nonetheless is compelled to respond:

First, Spectrum's *Quick Fix* has lawful uses including use as a cleaner and more consistent substitute for real human urine in medical research; calibrating and testing urinalysis machines; testing corrosion of materials exposed to urine, such as airplane bathroom structures; animal repellents or lures; product testing (*e.g.*, diapers), and novelty uses.

Second, *Quick Fix* is lawful to sell, as evidenced by the USPTO issuing patents to Spectrum for its synthetic urine formulations. *See* U.S. Patent Nos. 7,192,776 and 9,128,105, available at https://patents.google.com/patent/US7192776B2/en?oq=7192776 and https://patents.google.com/patent/US9128105B2/en?oq=9128105, respectively; *see also* 35 U.S.C. § 101 (inventions must be "new" and "useful" to obtain patent protection). Further, Spectrum has sold *Quick Fix* throughout the U.S. for over a decade in plain sight of law enforcement.

Third, URZ's attorney's allegations fall dangerously close to violating Texas Disciplinary Rule of Professional Conduct 4.04, which forbids a lawyer from presenting or threatening to present criminal charges solely to gain an advantage in a civil matter.

Finally, although URZ appears to contend it has not sold *Quick Fix* (genuine or counterfeit), Spectrum's private investigator purchased *Quick Fix* synthetic urine directly from URZ's brick-and-mortar store in Houston, Texas in March 2023. Attached as Ex. 3 are photos taken by the investigator that evidence his purchases. This means that URZ is

lying when it says in its July 2023 supplemental subpoena response that it has no records concerning its purchase or sale of *Quick Fix*. Because URZ was selling *Quick Fix* in March 2023, it must at least have records showing how it obtained *Quick Fix* (e.g., invoices) and documenting its sale of *Quick Fix* (*e.g.*, receipts, accounting records). The fact that URZ avoided complying with the subpoena for months, then demanded a protective order (despite now saying it has no documents to produce), and now denies having any records of obtaining or selling *Quick Fix* further indicates that URZ is, in fact, the source of the counterfeit goods. Otherwise, URZ would be honest and produce the documents showing how it acquired the *Quick Fix* that it sold.

In the end, although Spectrum has committed no crime, URZ never explains how its baseless criminal allegations against Spectrum could possibly lead to the dismissal of Spectrum's trademark infringement complaint against URZ, especially when URZ admits that Spectrum pleaded ownership of a valid trademark. URZ's abrasive and baseless disparagement of Spectrum <u>and</u> the Court demonstrates a lack of civility and professionalism towards Spectrum and a lack of respect for this Court. (*See* Court Procedures, Judge Charles Eskridge, Attachment 2, Guidelines for Professional Conduct).

### E. URZ's claims of ignorance are not credible and ignore the plain language in Spectrum's complaint.

URZ purportedly claims ignorance about why it was sued, arguing that the "SAC fails to identify what product, if any, Defendant has sold or offered to sell that purportedly infringes Plaintiff's trademark registrations" (Mot. 3), and that it has no "notice as to what mark and what product form the basis for Plaintiff's claims" (*Id.* 5).

As shown above, Spectrum's complaint clearly and plainly accuses URZ of selling counterfeit versions of Spectrum's *Quick Fix* product, in other words, counterfeit products that appear to be genuine *Quick Fix* with the QUICK FIX mark on them, despite being fakes. (*See supra* pp. 6-8) Thus, Spectrum's complaint properly puts URZ on notice about what alleged actions by URZ constitute trademark infringement.

Lastly, URZ argues that adding URZ to the action due to its failure to cooperate with the subpoena is improper because "[l]ack of cooperation with a subpoena is not an element for trademark infringement." (Mot. 5.) URZ, however, misses the point. The fact that URZ refused to cooperate in responding to the subpoena (and still does so), and now makes the dubious claim that it possesses **_no_** responsive documents, supports Spectrum's belief that URZ is involved in the counterfeiting of *Quick Fix*. Spectrum explained this in its complaint. [*See* 2d Am. Compl.¶ 31.]

URZ's evasive conduct evidences its liability and gives Spectrum more than enough basis to plead, upon information and belief, that URZ participated in the making and selling of the counterfeit *Quick Fix*. Indeed, URZ's most recent claim that it does not have *any* documents regarding its sale of *Quick Fix* (genuine or counterfeit) lacks credibility (and further evidences a guilty mind) because (a) it was selling *Quick Fix* as recently as March 2023, and thus must have records for those sales, and (b) it demanded a protective order months ago, but yet now claims it has no records to produce under said Protective Order. Why would URZ demand a protective order if it had no documents that required protection? The request for a protective order was phony pretext to obstruct,

delay, and further attempt to avoid responsibility for its counterfeiting. The Court should admonish URZ's gamesmanship.

### F. URZ does not argue any independent grounds for dismissing Spectrum's other claims against it.

URZ states that Spectrum's other claims against URZ fail "because they are all based on the trademark infringement claim." (Mot. 6.) Because Spectrum has stated a valid claim for trademark infringement, therefore, URZ's challenges against Spectrum's other claims fail as well.

## IV. CONCLUSION

For these reasons, the Court should deny URZ's motion.

DATED: July 20, 2023                Respectfully submitted,

By: */s/ David B. Cupar*
David B. Cupar (*pro hac vice*)
*Attorney in Charge*
Ohio Bar No. 71622
dcupar@mcdonaldhopkins.com
Matthew J. Cavanagh (*pro hac vice*)
Ohio Bar No. 79522
mcavanagh@mcdonaldhopkins.com
**MCDONALD HOPKINS LLC**
600 Superior Avenue, East
Suite 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
Facsimile: 216.348.5474

By: */s/ Courtney Ervin*
Courtney Ervin
Texas Bar No. 24050571
SDTX No. 611093
cervin@hicks-thomas.com
Kasi Chadwick
Texas Bar No. 24087278
SDTX No. 2421911
kchadwick@hicks-thomas.com
**HICKS THOMAS LLP**
700 Louisiana St., Suite 2000
Houston, Texas 77002
Telephone: 713.547.9100
Facsimile: 713.547.9150

**ATTORNEYS FOR PLAINTIFF SPECTRUM LABORATORIES, LLC**

## **CERTIFICATE OF WORD COUNT**

In accordance with Section 18(c) of the Court's procedures, I certify that this document contains 2,886 words, exclusive of the caption, signature block and certificates of service and conference.

*/s/ Courtney Ervin*
Courtney Ervin

## **CERTIFICATE OF SERVICE**

Service of this document on all counsel was accomplished automatically through the Court's Notice of Electronic Filing on July 20, 2023.

*/s/ Courtney Ervin*
Courtney Ervin
