UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SPECTRUM LABORATORIES, LLC,<br>        Plaintiff,<br><br>v.<br><br>URZ TRENDZ, LLC,<br>        Defendant. | **Case No. 4:22-CV-03705**<br><br>**Hon. Judge Charles Eskridge**<br><br>**JURY TRIAL DEMANDED** |

### DEFENDANT'S REPLY RE: DEFENDANT'S MOTION TO DISMISS PURSUANT FED.R.CIV.P. §12(b)(6)

Defendant URZ Trendz, LLC ("Defendant") hereby submits this Reply re: Defendant's Motion to Dismiss ("Motion") the Second Amended Complaint ("SAC") filed by Plaintiff Spectrum Laboratories, LLC. ("Plaintiff").

### I.      PLAINTIFF FAILS TO PLEAD A TRADEMARK INFRINGEMENT OR COUNTERFEITING CLAIM

An important element of a trademark infringement claim is that the defendant's use of the accused mark creates a likelihood of confusion as to the mark's source, affiliation, or sponsorship. See *Paulsson Geophysical Services, Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008).  In this case, Plaintiff erroneously asserts that it properly pled this element with the following allegation:

> "34.  Moreover, upon information and belief, URZ is an entity that has (a) counterfeited, or assisted with counterfeiting, the Quick Fix products; (b) sold, offered to sell, or marketed the Counterfeit Products; and/or (c) introduced the Counterfeit Products into the stream of commerce that led to RF."  See *Opposition,* p.7 (referencing *SAC,* ¶34).

1

However, neither this allegation nor any part of the SAC alleges that Defendant's use of the accused mark creates a likelihood of confusion. Thus, Plaintiff has failed to properly plead a trademark infringement claim. Nevertheless, now Plaintiff asserts a counterfeiting claim against Defendant. But the above allegation in the SAC merely alleges that Defendant sold "counterfeit products" or counterfeited Plaintiff's product. Such is not a violation of the Lanham Act. In fact, 15 U.S.C. §1114(1)(b) prohibits the use of a "counterfeit mark" rather than a "counterfeit product". Even more, the term "counterfeit mark" as defined in 15 U.S.C. §1116(d)(1)(B)(i), involves "a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use…" Courts have defined counterfeiting of a mark as follows:

> "In this context, the mark used by [the defendant] was counterfeit if: (1) it was a non-genuine mark identical to [the plaintiff's] mark; (2) **[the plaintiff's] mark was registered on the Principal Register for use on the same goods to which [the defendant] applied the mark**; (3) [the plaintiff's] mark was in use; and (4) [the defendant] was not authorized to use [the plaintiff's] mark." See State of Idaho Potato Com'n v. G.T. Terminal Packaging, Inc., 425 F.3d 708, 721 (9th Cir. 2005) (citing McCarthy on Trademarks and Unfair Competition §25:15 and referencing 15 U.S.C. §§1116(d)(1)(B)(i)). Emphasis Added.

Furthermore, McCarthy explained counterfeiting of a mark as follows:

> "**The Requirement that the Accused Goods or Services be the Same as Those in the Registration**. The statutory phrase 'a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services' was intended to require that the accused goods or services must be the same as those for which the plaintiff's mark is registered… For example, if the hypothetical mark REGIS is registered for personal computers, while the trademark owner might well have traditional trademark infringement civil remedies against the unauthorized use of REGIS on computer printer ink cartridge, such a use is not a 'counterfeit'…" See *McCarthy* §25:15 (4th ed.)

Thus, a fundamental requirement of the counterfeiting claim is that the defendant uses the accused mark with the same good that is identified in the plaintiff's trademark registration. Defendant's goods cannot be similar or related, it is a fundamental

requirement that Defendant's goods must be the same as plaintiff's registered goods. This requirement distinguishes counterfeiting from trademark infringement. Such was explained by Congress as follows:

> "The definition of 'counterfeit mark' in this Act reaches only instances in which the mark is used in connection with goods or services for which the mark is registered on the principal register of the U.S. Patent and Trademark Office and in use… In addition, because this act is intended to reach only the most egregious forms of trademark infringement, it does not affect cases in which the defendant uses a registered mark in connection with goods and services for which the mark is not registered. Under the Lanham Act, a plaintiff can sometimes obtain relief against a defendant who uses a mark in connection with goods or services that are 'related' to those for which the mark is registered. For example, a plaintiff with a federal registration for use of the mark 'Hopscotch' on typewriters might have a Lanham Act remedy against a defendant who used that mark to identify typing paper, even though the plaintiff had not registered that mark for use in connection with typing paper. Under the present act, however, the use of the mark 'Hopscotch' on typing paper would not count as the use of a 'counterfeit mark'." See *Senate-House Joint Explanatory Statement on Trademark Counterfeiting Legislation*, 130 Cong.Rec. H12076, H12078 (Oct. 10, 1984).

In the present case, Plaintiff fails to plead that Defendant used a counterfeit mark, meaning that Defendant used the accused mark with the same good as a good identified in Plaintiff's trademark registration. Instead, Plaintiff merely alleges that Defendant sold "counterfeit products". However, as discussed above, selling "counterfeit products" is not actionable under the Lanham Act. Instead, using a counterfeit mark is actional.

Plaintiff's failure to properly plead a counterfeiting claim is not a trivial defect. After all, Plaintiff asserts two (2) trademark registrations with multiple registered goods identified therein. See *SAC,* Exs. 1 and 2. In the SAC, Plaintiff fails to plead which of the two marks was allegedly used by Defendant and with which of the registered goods. Without such information, Defendant does not have sufficient notice of the claims against it and is unable to properly prepare a defense. In its Opposition, Plaintiff erroneously asserts it gave proper notice of the accused products as follows:

> "As shown above, Spectrum's complaint clearly and plainly accuses URZ of selling counterfeit versions of Spectrum's Quick Fix product, in other words, counterfeit products that appear to be genuine Quick Fix with the QUICK FIX mark on them, despite being fakes. (See supra pp. 6-8) Thus, Spectrum's complaint properly puts URZ on notice about what alleged actions by URZ constitute trademark infringement." See *Opposition,* p.11.

But, upon a careful review of Plaintiff's opposition and the SAC, it is still unclear as to which mark was illegally used by Defendant in connection with which of the registered goods. After all, the SAC defines "Counterfeit Product" as "counterfeit versions of Spectrum's Quick Fix product that copies Spectrum's packaging, including the Quick Fix Mark, the Q-Clock Mark and the Quick Fix trade dress". See *SAC,* ¶15. As discussed in the Motion, Defendant sells a wide variety of Quick Fix products, including fake urine specifically designed to falsely pass a urine drug test, and a belt kit and underwear with hidden pocket to hide the fake urine. See *Teran Decl.,* Ex. D and E. None of these products are identified in any of Plaintiff's trademark registrations. Thus, Defendant's sale of any of these products in connection with the accused mark, cannot serve as a proper basis for a counterfeiting claim. On the other hand, Plaintiff's registered goods include dietary supplemental drinks, chemical reagents for medical purposes, multi-drug testing dip cards, and synthetic urine for use in urinalysis. See *SAC,* Ex. 1 and 2. Thus, any unauthorized sale of these registered goods in connection with the accused mark may serve as a basis for a counterfeiting claim. However, the SAC fails to identify the specific accused mark and the registered good that serves as the basis for the counterfeiting claim. As such, the SAC fails to plead sufficient facts to state a counterfeiting claim that is plausible on its face.

Accordingly, Defendant respectfully requests this Court to dismiss Plaintiff's trademark infringement/counterfeiting claim.

## II. LACK OF MEET AND CONFER WAS NECESSARY AND NON-PREJUDICIAL TO PLAINTIFF

Plaintiff complains that Defendant filed this motion without first seeking to meet and confer. However, the circumstances under which this Motion was filed did not allow

for a meet and confer.  This case was first filed against Royal Fragrances, LLC ("RF").  After initiating this lawsuit against RF, Plaintiff issued a subpoena to Defendant and other third parties even though they were not named parties in this case.  The subpoenas issued by Plaintiff were not related to the claims asserted against RF, as required by the Rules of Civil Procedure.  Instead, the subpoenas issued by Plaintiff sought private and highly confidential business records as part of a fishing expedition to gather market intelligence.  Such is not allowed by the Rules of Civil Procedure.  When Defendant objected properly, Plaintiff retaliated by adding Defendant to this lawsuit without a factual basis of Defendant's alleged wrongdoing other than objecting to Plaintiff's subpoena.

Then, this Court issued an Order stating as follows:

> "Upon service [of the SAC], [Defendant] will have seven days to comply with any obligation as to pending discovery under the Federal Rules of Civil Procedure.  [Defendant] is further admonished that this Court will not hesitate to impose sanctions for willful disobedience of this order and/or discovery obligations."  See *Order,* ECF No. 53.

It is not clear which pending discovery or discovery obligations the Court referred since Fed.R.Civ.P. 26(d) expressly states, "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)…"  Thus, Defendant took the Court's order seriously and complied with all its obligations under the Federal Rules of Civil Procedure within the Court ordered "seven days", including providing amended responses to Plaintiff's subpoena and filing this Motion as the required responsive pleading.  Since Defendant only had "seven days", it was practically impossible to comply with the meet and confer requirement.  Defendant wished to comply with this Court's order of "seven days" the best way it could.

Furthermore, Plaintiff does not state that it was prejudiced in any way whatsoever by the lack of a meet and confer ahead of filing this Motion.  After all, there is no indication that Defendant would have dismissed or amended its claims against Defendant had the parties met and conferred.

5

## III.     CONCLUSION

Based on the foregoing, Defendant respectfully requests this Court to grant this Motion.

DATED:  July 25, 2023

By:_____

Louis F. Teran (Admitted *Pro Hac Vice*)
Email: lteran@slclg.com
California Bar No. 249494
SLC Law Group
1055 E. Colorado Blvd., Suite 500
Pasadena, CA 91106
Phone:  818-484-3217 x200

ATTORNEY FOR URZ TRENDZ, LLC.

## CERTIFICATE OF SERVICE

I certify that I filed this brief via the ECF system, which serves this motion on all counsel of record.

DATED:  July 25, 2023

By:_____

Louis F. Teran (Admitted *Pro Hac Vice*)
Email: lteran@slclg.com
California Bar No. 249494
SLC Law Group
1055 E. Colorado Blvd., Suite 500
Pasadena, CA 91106
Phone:  818-484-3217 x200

ATTORNEY FOR URZ TRENDZ, LLC.