UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SPECTRUM LABORATORIES, LLC,<br>　　　　　　Plaintiff,<br><br>v.<br><br>URZ TRENDZ, LLC,<br>　　　　　　Defendant. | **Case No. 4:22-CV-03705**<br><br>**Hon. Judge Charles Eskridge**<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS**

　　　　Defendant URZ Tredz, LLC ("Defendant") hereby submits this Opposition to the Motion for Sanctions ("Motion") filed by Plaintiff Spectrum Laboratories, LLC ("Plaintiff").

**I.　DEFENDANT'S DISCOVERY PRODUCTION WAS COMPLIANT WITH THE COURT'S ORDERS AND PROPORTIONAL TO THE NEEDS OF THE CASE**

　　　　Plaintiff accurately states, "[t]his case involves [Plaintiff's] search for the parties responsible for manufacturing and distributing counterfeit versions of [Plaintiff's] Quick Fix product, which were discovered for sale in Texas." See *Motion,* p.2.  In addition, Plaintiff is correct in that the Court ordered Defendant to produce documents related to Plaintiff's trademark by September 22, 2023.  Furthermore, Plaintiff is correct in that Defendant produced documents on September 22, 2023 pursuant to the Court's order.  Even more, in a prior letter to the Court, Plaintiff accurately states that Defendant produced two receipts from SNK for purchase of the accused product, one invoice from Hookah G for purchase of the accused product, and three pages of sales/purchase reports

1

related to the accused product. See Ex. A, *Plaintiff's Letter to Court Dated October 20, 2023*. In fact, the documents produced by Defendant pursuant to the Court's Order identify the identity of its source of the accused product and the identity of its customers to whom it sold the accused products. Even more, the sales reports produced by Defendant identify the sales price, quantity, and profit from Defendant's sale of the accused product. Plaintiff also correctly states that on December 9, 2023, Defendant produced additional documents which addresses all of Plaintiff's concerns raised in its letter to the Court. Now, Plaintiff seeks sanctions against Defendant because the documents that Defendant produced on December 9, 2023, should have been produced on September 22, 2023. However, as discussed in detail below, the documents Defendant produced on December 9, 2023, did not alter or change the information that Defendant produced on September 22, 2023. The second set of documents are largely duplicative of the information included in the first set of documents produced.

      After Defendant produced its first set of documents pursuant to the Court's Order, Plaintiff complained that Defendant failed to produce proof that Defendant actually paid for its purchases of the accused product. To be clear, Defendant produced receipts and invoice of its purchases of the accused product. Such documents identify the amount of accused product purchased by Defendant, the date of the transaction, the price, and the identity of the source of the accused product. Now, Plaintiff merely complains that Defendant failed to produce documents that it actually paid for said purchases. Clearly, the receipts and invoices themselves are sufficient evidence that Defendant purchased and paid, for the accused product. Nevertheless, Defendant supplemented its production to Plaintiff to include copies of checks evidencing that Defendant actually paid for the transactions identified in the receipts and invoices. However, the proof of payment does not alter or change the information already included in the receipts and invoices produced. Defendant did not withhold any material information.

      Secondly, Defendant produced sales reports evidencing its sales of the accused product. Now, Plaintiff merely complains that the reports do not include the date of each transaction. See Ex. A, *Plaintiff's Letter to Court Dated October 20, 2023*. In fact,

Defendant's sales report includes the identity of the buyer, the sales price, the quantity, and Defendant's profit for each and every sales transaction involving the accused product. But, Plaintiff now complains that the report does not include the date of each transaction. Nevertheless, Plaintiff supplemented its production to Plaintiff to include another report, along with the native files of said report, that provides the date of each transaction. However, the new report, including the native files, does not alter or change the sales information already included in the original sales report produced by Defendant. More specifically, the amount of accused product and profit made by Defendant remains the same. Defendant did not withhold any material information.

Thirdly, Plaintiff complains that Defendant did not produce the receipts or invoices for each of its sales transactions in the sales reports. Apparently, in addition to the sales report, Defendant demands the actual receipts or invoices of each transaction. Plaintiff's position is disingenuous especially since a similar issue arose with Plaintiff's discovery production and Plaintiff argued, "production of every single invoice…is not necessary…and would be grossly disproportional to the needs of this case…Spectrum's revenue report that was produced…[is sufficient]." See *Plaintiff's Letter to Court Dated December 14, 2023*. Thus, on the one hand, Plaintiff complains that it needs copies of each and every sales invoice because a sales report is not enough. But, on the other hand, when its time for Plaintiff to produce documents, Plaintiff flips a switch and argues that a sales report is sufficient. Nevertheless, Defendant supplemented its production to Plaintiff to include the invoice for each and every sales transaction involving the accused product. Such invoices do not alter or change the sales information already included in the original sales report produced by Defendant. More specifically, the amount of accused product sold, the revenue and profit made by Defendant from said sales remain the same. Defendant did not withhold any material information.

In addition, in previous letters to this Court, Plaintiff acknowledged that its private investigator had purchased 112 units of the accused product from Defendant on March 4, 2023. See Ex. A, *Plaintiff's Letter to Court Dated October 20, 2023*. However, it must NOT go unnoticed by this Court that Plaintiff does NOT present any evidence

3

whatsoever or even allege that any of those 112 units are counterfeit products. In fact, those 112 units were purchased from third parties that are believed to be authorized distributors of Plaintiff's products. In fact, in another discovery dispute pending with the Court, Plaintiff is refusing to provide a list of its authorized distributors, thus, depriving Defendant the discovery it needs to defend itself in this case. More specifically, Plaintiff hired a private investigator who thoroughly investigated Defendant prior to filing this lawsuit and Plaintiff still has failed to present any evidence whatsoever that Defendant is counterfeiting Plaintiff's products. This must NOT go unnoticed by this Court.

Furthermore, it must NOT go unnoticed by this Court that the amount in controversy is about $12,000 in gross sales with under $3,000 in gross profit. This is not a substantial case by any stretch of the imagination.

Nevertheless, despite the low amount in controversy and the lack of evidence that Defendant counterfeited the trademark-at-issue, Plaintiff demands production of documents that are duplicative of the documents already produced by Defendant pursuant to the Court's order. Even more, Plaintiff falsely asserts that Defendant's failure to produce its second set of documents earlier is a gross violation of the discovery rules and indicative that Defendant is hiding something. Such is not true. After all, the information in the second set of documents is the same as the information provided in the first set of documents. Defendant is not hiding anything. Nevertheless, Plaintiff's Motion fails to address the proportionality requirement that this Court must consider. After all, discovery in this case, much like any other case, is limited to material that is relevant and proportional to the needs of the case. See *Fed.R.Civ.P. 26(b)(1)*. The proportionality requirement involves an evaluation of the amount in controversy, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit. See *Fed.R.Civ.P. 26(b)(1)*.

In the present case, Defendant had already produced purchase invoices identifying the source from whom Defendant purchased the accused products, the amount of accused product purchased by Defendant, and the price Defendant paid for the accused product.

4

In addition, Defendant had already produced detailed sales reports identifying the buyer to whom Defendant sold the accused product, and the price, revenue, and profit for each of Defendant's transactions involving the sale of the accused product. Now, Plaintiff seeks to sanction Defendant because Defendant failed to provide copies of checks evidencing that it actually paid for the purchase of the accused product, and copies of the invoices for each and every sales transaction identified in the sales report already produced. The documents now demanded by Plaintiff provide the same information already provided in the documents produced by Defendant. But, production of these additional documents are not proportional to the needs of this case because they provide the same information as Plaintiff's original production of documents, they are burdensome and costly for Defendant to attain, and they provide no benefit to the resolution of the issues raised in this case.

As such, Defendant discovery production made on September 22, 2023, was compliant with the Court's Order and proportional to the needs of this case.

## II. INTERNAL AND EXTERNAL COMMUNICATIONS DO NOT EXIST

In addition to the documents discussed above, the Court ordered Defendant to produce all internal and external communications related to the accused product. As indicated by Plaintiff, Defendant did not produce any communications because such communications do not exist or are not in the possession or control of Defendant. As such, there has not been any violation of the Court's Order. In fact, it must be noted that Plaintiff fails to present any evidence whatsoever that any such communications are being withheld by Defendant.

## III. SANCTIONS ARE NOT PROPER BECAUSE DEFENDANT NEVER FAILED TO OBEY A VALID DISCOVERY ORDER

As discussed above and in Plaintiff's Motion, the Court issued a discovery order requiring Defendant to produce documents related to Plaintiff's asserted trademark. As discussed in detail above, Defendant complied with the Court's Order and produce all documents related to Plaintiff's asserted trademark in possession or control of Defendant and proportional to the needs of the case. Thus, Defendant obeyed the Court's Order.

However, assuming *arguendo*, that this Court finds that Defendant did not obey the Court's Order, then sanctions pursuant Fed.R.Civ.P. 37 are not proper because the Court's discovery order was not a valid order in compliance with Fed.R.Civ.P. 26.  In fact, this action against Defendant was filed by Plaintiff on June 12, 2023.  See *ECF No. 50.*  Then, Defendant promptly responded by filing a Motion to Dismiss on June 29, 2023.  See *ECF No. 56.*  Then the Court issued its discovery order on August 29, 2023.  See *ECF No. 63.*  However, by August 29, 2023, the Court had not issued a scheduling order or held a scheduling conference.  After all, Fed.R.Civ.P. 26(d)(1) expressly states as follows:

> "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)…"

Then Fed.R.Civ.P. 26(f) expressly states as follows:

> "the parties must confer as soon as practicable – and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due…"

In the present case, the Court did not hold a scheduling conference and the Court did not issue a scheduling order before August 29, 2023, at least not one that applies to Defendant.  As such, pursuant Fed.R.Civ.P. 26(d)(1), the parties were not allowed to conduct discovery from any source before August 29, 2023.  In fact, the Court's discovery order is related to purported discovery that was invalid pursuant Rule 26(d)(1) and never responded by Defendant.  The Court failed to recognize that Plaintiff was not permitted to conduct any discovery and Defendant was not required to respond to any discovery prior to August 29, 2023, pursuant to the express statutory language of Fed.R.Civ.P. 26(d)(1).  Thus, sanctions pursuant Fed.R.Civ.P. 37 are not proper because Defendant did not disobey any valid discovery order pursuant the Federal Rules of Civil Procedure.

It is important to recognize that the Rules of Civil Procedure are established and intended to provide an efficient process that does not unduly prejudice any of the parties.  It is in the interest of justice that cases proceed pursuant to the Rules and without lighting anyone's hair on fire.  In this case, the Complaint was filed by Plaintiff against Defendant

6

on June 12, 2023 and Defendant responded with a Motion to Dismiss on June 29, 2023. Thus, as of August 29, 2023, the pleadings had not yet been finalized. In fact, this Court granted Plaintiff leave to amend its Complaint on August 29, 2023. See *ECF No. 63*. Then, on October 3, 2023, after Plaintiff filed its Third Amended Complaint and Defendant filed its Answer with Counterclaims, only then the parties engaged in a scheduling conference pursuant Fed.R.Civ.P. 26(f) and filed an agreed scheduling order. See *ECF No. 66*. Therefore, at the least, pursuant to Fed.R.Civ.P. 26(d)(1), discovery in this case was not permissible until on or around October 3, 2023. Even then, the pleadings in this case were not completed because Plaintiff filed amotion to dismiss Defendant's counterclaims. In fact, it was not until December 11, 2023, when Plaintiff filed its Answer to the Counterclaims (ECF No. 82) that the pleadings were finalized and the parties had proper notice of all the claims and defenses asserted in this case. As such, any discovery conducted prior to August 29, 2023, was not permissible pursuant Fed.R.Civ.P. 26(d)(1). After all, the Parties did not yet have proper notice of all the claims and defenses being asserted. Any requirement to respond to discovery before the pleadings are finalized and before the Parties engaged in a scheduling conference, is not only inefficient and impermissible under Fed.R.Civ.P. 26(d)(1), but also unduly prejudicial to Defendant.

Thus, sanctions in this case is not proper.

## IV. PLAINTIFF FAILED TO COMPLY WITH THE COURT'S MEET AND CONFER REQUIREMENTS

After Defendant produced documents pursuant to the Court's Order, Plaintiff did not make a good faith effort to resolve any deficiencies. In fact, Plaintiff's effort to meet and confer over Defendant's deficiencies was an email requesting the native file for the sales report produced by Defendant. See *Ex. B*. Then a mere three (3) days later, before Defendant had an opportunity to respond or investigate the existence of such native file, Plaintiff sent a letter to the Court falsely asserting that Defendant refused to provide the additional documents discussed above beyond the native files. In fact, Plaintiff never raised an issue with Defendant regarding to the other documents discussed above,

7

including proof of payment for purchases, date of sales transactions, and more. Instead, Plaintiff blindsided Defendant and filed its letter with the Court falsely accusing Defendant of refusing to provide these documents. Such failure to comply with the Court's meet and confer requirements is not proper.

## V.     CONCLUSION

Based on the foregoing, Defendant respectfully request this Court to deny Plaintiff's Motion.

DATED:  January 3, 2024

By:_____
Louis F. Teran (Admitted *Pro Hac Vice*)
Email: lteran@slclg.com
California Bar No. 249494
SLC Law Group
1055 E. Colorado Blvd., Suite 500
Pasadena, CA 91106
Phone:  818-484-3217 x200

ATTORNEY FOR URZ TRENDZ, LLC.

## CERTIFICATE OF SERVICE

I certify that I filed this brief via the ECF system, which serves this motion on all counsel of record.

      DATED:  January 3, 2024

By:_____

Louis F. Teran (Admitted *Pro Hac Vice)*
Email: lteran@slclg.com
California Bar No. 249494
SLC Law Group
1055 E. Colorado Blvd., Suite 500
Pasadena, CA 91106
Phone:  818-484-3217 x200

ATTORNEY FOR URZ TRENDZ, LLC.

# EXHIBIT A



October 20, 2023

Ms. Jennelle Gonzalez                                    **Email:** jennelle_gonzalez@txs.uscourts.gov
Case Manager to The Honorable Judge Charles Eskridge
United States District Court for the Southern District of Texas
515 Rusk Avenue, Courtroom 9F, Houston, Texas 77002

    Re:    Civil Action No. 4:22-cv-03705; *Spectrum Laboratories, LLC v. Does # 1-10* - Subpoena from Plaintiff Spectrum Laboratories, LLC to URZ Trends, LLC – **Additional Discovery Issues**

Dear Ms. Gonzales:

    As this Court is aware, Plaintiff Spectrum Laboratories, LLC ("Spectrum") has been seeking responsive documents from Defendant URZ Trendz, LLC ("URZ") since May 16, 2023 that (a) identify URZ's sales of Spectrum's Quick Fix product and any counterfeit, and (b) identify how URZ obtained the Quick Fix (legitimate or counterfeit) that it sold.  [*See* Doc. 55, Return of Service].

    On September 5, 2023, following a Discovery Hearing held on August 29, 2023, the Court entered a Minute Entry and Order.  [*See* Doc. 63, Minute Entry and Order].  In relevant part, the Minute Entry and Order provided that URZ was to produce "all documents (i) relating to any product that it identifies for sale or marketing with reference to the words "Quick Fix"; (ii) any external communications related to any product sold or marketed by anyone as "Quick Fix," whether by Spectrum, URZ, or any other party; and (iii) any internal communications related to any product sold or marketed by anyone as "Quick Fix," whether by Spectrum, URZ, or any other party. Production must be made by September 22, 2023."  [*See id.*].

    On September 22, 2023, while URZ previously represented that it had no responsive documents, URZ produced six (6) pages of documents in response to this Court's Minute Entry and Order.  [*See* Exhibit A, Defendant – 0001-0006] ("URZ's production").  URZ's production is woefully insufficient and fails to comply with the Court's Minute Entry and Order and thus, yet another follow-up discovery letter is necessary.  Specifically, URZ has failed to comply with the following:

1. **All documents relating to any product that it identifies for sale or marketing with reference to the words "Quick Fix";**

   - URZ produced two purported receipts from SNK for its purchase of approximately 808 Quick Fix products.  However, URZ failed to produce Checks #185 and 186 relating to its payment for such products. [*See* Exhibit A, Defendant – 0001-0002].  Furthermore, while receipts are typically numbered chronologically, SNK's receipts are not. SNK's receipt #652649 is dated March 31, 2022, while SNK's receipt #652650 is dated March 30, 2022.  [*See id.*].



- URZ produced one invoice from Hookah G for its purchase of approximately 1,344 Quick Fix products.  However, URZ failed to produce any documents evidencing any payment to Hookah G.  [*See* Exhibit A, Defendant – 0003].

- URZ produced three pages of what appear to be sales/purchase reports of its sales/purchases to approximately 27 entities relating to approximately 2,431 Quick Fix products.  [*See* Exhibit A, Defendant – 0004-0006].  However, URZ has failed to produce any sales, invoices or payment receipts for such transactions.  [*See id*.].  And the reports are further deficient on their face because they do not provide sales/purchase date—content that would seemingly be standard for a sales/purchase report.  It is for this reason that Spectrum requested that the native files be produced (instead of the six .pdfs provided), a request that has gone unanswered by URZ.

- URZ failed to produce any additional sales receipts to account for all of its sales of Quick Fix.  For example, URZ sold approximately 112 Quick Fix products on March 3, 2023 under Receipt #100006864 yet failed to produce that sales receipt nor any other sales receipts.  [*See* Doc. 59, pp. 9-10].  As the Court will recall, this information was obtained through a private investigator.  [*Id*.].



2. **Any external communications related to any product sold or marketed by anyone as "Quick Fix," whether by Spectrum, URZ, or any other party;**

- No responsive documents have been produced by URZ.



**3.     Any internal communications related to any product sold or marketed by anyone as "Quick Fix," whether by Spectrum, URZ, or any other party.**

- No responsive documents have been produced by URZ.

On October 11, 2023, counsel for Spectrum conferred with counsel for URZ regarding the issues raised by this letter, which resulted in URZ responding on October 16, 2023 that "[t]he documents produced were full (not partial) production of documents ordered by the Court to be produced" and that "[t]here is nothing being withheld." Then, on October 17, 2023, Spectrum requested that URZ produce the native versions of these files, some of which appear to be spreadsheets converted to .pdf. As of the time of this filing, Spectrum has not received a response. To that end, as Judge Eskridge predicted at the Discovery Hearing held on August 29, 2023, URZ's production of documents will mirror that of an onion, where layer after layer will need to be peeled back in order to get to the heart of this dispute.

Spectrum respectfully requests another status conference to compel URZ's compliance and to address its willful disobedience of the Court's order and its discovery obligations, including imposition of appropriate sanctions[1] for URZ's ongoing lack of compliance.

Very truly yours,
*/s/ David Cupar*
David Cupar, Lead Counsel for Plaintiff

---

[1] On June 16, 2023, this Court entered an Order on Spectrum's discovery letter, admonishing URZ that the Court "will not hesitate to impose sanctions for willful disobedience of this order and/or discovery obligations." [*See* Doc. 53, Order].