IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **SPECTRUM LABORATORIES, LLC.**, an Ohio Limited Liability Company, | § § § § § § § § § § § § | |
| *Plaintiff,* | | CIVIL ACTION NO. 4:22-cv-03705 |
| | | JUDGE CHARLES ESKRIDGE |
| v. | | |
| **URZ Trendz, LLC a/k/a Fly Fresh Smoke; and DOES #1-10,** | | |
| *Defendants.* | | |

**Spectrum's Rule 56(d) Motion to Defer Briefing on URZ's
Summary Judgment Motion until Spectrum Obtains Additional
<u>Discovery or, Alternatively, to Deny the Motion without Prejudice</u>**

In accordance with Fed. R. Civ. P. 56(d), Plaintiff Spectrum Laboratories, LLC ("Spectrum") moves the Court to defer further briefing on the premature motion for summary judgment by defendant URZ Trendz, LLC until Spectrum obtains (a) the results of the discovery including forensic and physical inspections ordered by the Court on February 13, 2024; (b) answers to interrogatories requesting names of individuals with relevant knowledge of URZ's business activities; and (c) the depositions of relevant fact witnesses concerning (i) the documents and information yielded by the Court-ordered inspections, and (ii) URZ's involvement and knowledge about the counterfeiting of Spectrum's *Quick Fix* product. Spectrum does not yet know the names of the URZ witnesses that it will need to depose because it still has not obtained the documents and other discovery subject to the Court's pending inspection order and, additionally, Spectrum

has served interrogatories upon URZ seeking the names of individuals likely to have relevant knowledge. In addition to any relevant individuals identified in fact discovery, Spectrum also will seek a Rule 30(b)(6) deposition of URZ on relevant issues.

URZ's failure to attempt compliance with mandatory Court Procedures also justifies deferring briefing on its untimely and improperly filed motion for summary judgment. Alternatively, the Court should deny URZ's motion without prejudice, subject to refiling after Spectrum obtains the fact discovery needed to oppose the motion.

## I.
## Nature and Stage of the Proceedings

Spectrum brought this case in response to counterfeiting of its popular and trademarked *Quick Fix* product in Texas. Spectrum sues for trademark infringement, counterfeiting, and related causes of action. (ECF #62.)

The case is in fact discovery, with a current fact discovery cutoff of June 12, 2024. (ECF #66.)

Spectrum first sought relevant documents from URZ by subpoena over a year ago, on March 23, 2023. Since then, URZ has behaved like a counterfeiter who was caught. Rather than participate in discovery to clear its name, it obstructed Spectrum's discovery efforts and violated its discovery obligations. (ECF #83 at 2-5.) Following URZ's failure to obey multiple orders compelling production, the Court recently granted Spectrum's motion for sanctions and allowed (a) a third-party ESI vendor to forensically examine URZ's ESI sources for relevant emails and computer files, and (b) a physical examination of URZ's business and storage locations. (ECF #97.) As ordered by the Court, Spectrum

submitted a detailed proposed order "substantially in the form previously submitted by Spectrum" on February 28, 2024. (ECF #100.) URZ objected and moved for reconsideration and summary judgment. (ECF #99, 103.) Briefing is complete on URZ's reconsideration motion. The Court has not yet issued the formal examination order or ruled on URZ's reconsideration motion.

## II.
## Statement of Facts

Spectrum previously set forth the relevant facts in its motion for sanctions (ECF #83 at 2-5.) and its opposition to URZ's motion for reconsideration (ECF #101). The highlights are as follows:

On March 3, 2023, Spectrum issued a document subpoena to URZ and other suspected suppliers of counterfeit product. (ECF #83 at 3; ECF #39.) On March 23, URZ responded with boilerplate objections and refused to produce any documents. (ECF #45-2.). URZ was the only subpoenaed party to resist discovery. After the Court issued a Protective Order—which URZ demanded to respond to the subpoena—URZ claimed that it had zero responsive documents. (ECF #59-2.) This begged the question of why URZ would request a Protective Order if it claimed to have no documents. After Spectrum proved URZ was lying about having no documents with evidence that a private investigator had purchased Quick Fix directly from URZ's retail store, the Court issued its second order compelling URZ to comply with the subpoena. (ECF #63.)

In response, URZ produced just six pages of documents and misrepresented that it had no more responsive documents. (ECF #83-4.) After Spectrum again challenged URZ's

noncompliance, the Court ordered that Spectrum could bring a motion "for necessary, intrusive electronic discovery and/or physical inspection of premises, files, and electronic devices to satisfy completeness of a responsive search." (ECF #80.)

Just four days before the deadline for Spectrum to move for more extensive e-discovery, URZ produced 47 new pages of responsive documents, which confirmed that URZ again was dishonest when it stated on October 16, 2023 that it had only six pages of responsive documents. (ECF #83 at 5, 83-4 at 3.)

On February 13, 2024, the Court granted Spectrum's request for examination of URZ's relevant data sources by an ESI vendor and a physical inspection of URZ's business. (ECF #97.) Spectrum submitted a proposed order for the examinations on February 28, 2024. (ECF #100.) The Court has not yet entered the order, so the examinations have not yet occurred.

On April 8, 2024, Spectrum served interrogatories upon URZ seeking the names of individuals likely to have relevant knowledge. (Cupar Declaration at ¶ 18, Exhibit 1.) Spectrum intends to depose (a) one or more of the individuals identified in URZ's forthcoming interrogatory answers, (b) any individuals identified in the evidence yielded from the forensic and site inspections ordered by the Court, and (c) a Rule 30(b)(6) designee by URZ. (Cupar Declaration at ¶ 19)

Rather than comply with the discovery examinations caused by its own recalcitrance, URZ has responded with a motion for reconsideration (ECF #99) and motion for summary judgment (ECF #103). Despite being subject to a pending order for ESI examination—the sole purpose of which is to obtain evidence—URZ seeks summary

judgment by repeatedly arguing that Spectrum has "no evidence." (ECF #103 at 7, 8, 21, 23.) Spectrum would have explained this if URZ had complied with its obligation to confer with Spectrum before filing its motion for summary judgment. As explained further below, Spectrum cannot fairly respond to that summary judgment argument until it obtains (a) the evidence resulting from the examinations ordered by the Court, and (b) depositions of URZ witnesses after the examinations are completed.

## III.
## Statement of the Issue

Should the Court postpone briefing on URZ's summary judgment motion to permit discovery when (i) the Court's order requiring examination of URZ's digital and physical records to obtain evidence for Spectrum's case is pending, (ii) Spectrum has been seeking that discovery for over a year, and (iii) Spectrum needs the compelled evidence, names of relevant fact witnesses, and depositions of those fact witnesses to respond to URZ's challenge that Spectrum lacks evidence to support its case?

## IV.
## Standard of Review

A district court's ruling on a Rule 56(d) motion is reviewed for abuse of discretion. *Binh Hoa Le v. Exeter Finance Corp.*, 990 F.3d 410, 413 (5th Cir. 2021).

## V.
## Law and Argument

A. **The Court should defer or deny a summary judgment motion when plaintiff needs discovery to oppose it and has diligently sought the discovery, but has not yet obtained it.**

"Summary judgment is appropriate only where the plaintiff has 'had a full opportunity for discovery.'" *Bailey v. KS Mgmt. Servs., LLC*, 35 F.4th 397, 401 (5th Cir.

2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)). Due process requires courts to "afford the parties a full opportunity to present their respective cases" before ruling on the merits. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (citation and quotation marks omitted). Fed. R. Civ. P. 56(d) therefore protects a plaintiff who needs more discovery to oppose a summary judgment motion. It states:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavit or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Rule 56(d) motions are "'broadly favored and should be liberally granted' because the rule is designed to 'safeguard non-moving parties from summary judgment motions that they cannot adequately oppose.'" *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (quoting *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006)).

To obtain a continuance, the plaintiff must show that (a) the requested discovery pertains to the summary judgment motion, and (b) it has diligently pursued the discovery. *See Binh Hoa Le*, 990 F.3d at 413. "As to the first requirement, the party must explain 'how the additional discovery will create a genuine issue of material fact.'" *Id.* (quoting *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993)).

"Where the party opposing the summary judgment informs the court that its diligent efforts to obtain evidence from the moving party have been unsuccessful, 'a continuance

of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991) (quoting *Sames v. Gable*, 732 F.2d 49, 51 (3d Cir. 1984)).

**B.    Spectrum makes both showings to obtain a continuance on URZ's summary judgment motion, pending further discovery.**

1.    <u>Spectrum seeks discovery that pertains to URZ's summary judgment motion.</u>

The discovery that Spectrum seeks—which is presently subject to a compel order that still needs to be satisfied—is necessary to oppose URZ's summary judgment motion. And Spectrum needs that discovery and URZ's interrogatory responses before conducting depositions of fact witnesses, which is also necessary to oppose URZ's motion.

URZ's motion is based on its argument that Spectrum lacks evidence to support its claims; thus, it is essential for Spectrum to obtain fact discovery in order to respond to URZ's motion. URZ relies on its assertion that Spectrum has "no evidence" to prove URZ's liability. (*See* URZ MSJ, ECF #103, at 7 ("there is no evidence that Defendant is liable"), 8 ("Defendant makes sufficient showing of the absence of evidence that Defendant has infringed any of Defendant's trademarks"), 8 ("Plaintiff is unable to provide even a shred of evidence to support its claim …"), 21 ("The trademark infringement claim must be dismissed for lack of evidence"), 23 ("Clearly, there is no evidence whatsoever that Defendant has ever sold or offered for sale any counterfeit or infringing product to Royal Fragrances or to anybody else.")).

As detailed in past filings, the discovery that Spectrum seeks—and which the Court has ordered by digital and physical examination—is directed at the very documents, emails,

and computer files that would evidence URZ's involvement in the counterfeiting activities. More specifically, Spectrum seeks documents concerning (a) URZ's purchase and sale of Quick Fix (genuine and counterfeit), and (b) URZ's knowledge about, or participation in, the counterfeiting of *Quick Fix*. (ECF #39, 63.) Spectrum seeks to discover at least the following facts which are essential for opposition to URZ's summary judgment motion:

    a.    communications and records demonstrating URZ's involvement with, and knowledge about, counterfeiting of *Quick Fix*;

    b.    forensic evidence of URZ's deletion of emails and computer files evidencing its involvement with counterfeiting of *Quick Fix*;

    c.    information about the suppliers or sellers of *Quick Fix*, genuine or counterfeit, involved with URZ;

    d.    information about the customers or buyers of *Quick Fix*, genuine or counterfeit, involved with URZ;

    e.    the contents of internal communications URZ has made regarding *Quick Fix* and counterfeiting of *Quick Fix*;

    f.    the contents of any documents and communications possessed by URZ regarding fake, knock-off, imitation, or counterfeit *Quick Fix*;

    g.    communications and records concerning URZ's sale of *Quick Fix*, genuine and counterfeit, including additional URZ invoices or invoice information documenting URZ's sale of genuine or counterfeit *Quick Fix*, beyond what URZ has previously disclosed;

    h.    communications and records concerning URZ's purchase of *Quick Fix*, genuine and counterfeit, including additional URZ invoices or invoice information documenting URZ's purchase of genuine or counterfeit *Quick Fix*, beyond what URZ has previously disclosed;

    i.    whether URZ's *Quick Fix* inventory contains fake, knock-off, imitation, or counterfeit products.

The results of those court-ordered examinations—and the subsequent depositions of URZ's representative(s) and other individuals identified in those documents and URZ's

interrogatory responses—should be dispositive to prove URZ's liability or, at a minimum, create genuine issues of material fact by rebutting URZ's claim that Spectrum has "no evidence" of URZ wrongdoing.

Indeed, since it first received Spectrum's subpoena in March 2023, URZ's behavior has been that of a guilty counterfeiter rather than an innocent victim. URZ not only has resisted discovery at every stage, but also has been caught twice lying to Spectrum and the Court. First, URZ said it had "no responsive documents," but then produced documents after confronted with Spectrum's private investigator evidence that URZ was lying about not selling Quick Fix. (ECF #83 at 4) Second, URZ said the six pages of documents it produced was "everything," but then admitted that was not true when it produced 47 more pages of documents just days before it knew Spectrum would be moving for sanctions. (*Id.* at 4-5.)

URZ has given neither Spectrum nor this Court any reason to believe that it would willingly produce incriminating evidence of its involvement in the counterfeiting. The only possible way to get such evidence from a counterfeiter, such as URZ, is through the type of forensic examinations that this Court has ordered, but not yet completed. *See, e.g.*, *M-I L.L.C. v. Stelly*, No. CV H-09-1552, 2011 WL 12896025, at *3 (S.D. Tex. Nov. 21, 2011) (Ellison, J.) (granting motion to compel forensic imaging); *Balboa Threadworks, Inc. v. Stucky*, No. 05–1157–JTM–DWB, 2006 WL 763668, at *4 (D.Kan. 2006) (allowing forensic imaging when plaintiff claimed the defendant used computers to download copyrighted material); *Cenveo Corp. v. Slater*, No. 06-CV-2632, 2007 WL 442387, at *2 (E.D. Pa. Jan. 31, 2007) (allowing forensic imaging when former employees improperly

used the plaintiff's confidential information, computers, and trade secrets to divert business).

If URZ were innocent, then it would embrace the forensic exam as likely to exonerate it. On February 13, 2024, URZ's counsel represented that they are "fine with" the forensic exam because they "have nothing to hide." (Transcript of Feb. 13, 2024 hearing at 41:4-17 (ECF #96).) The exact opposite appears more evident by the day. Instead, taking the extreme, longshot tack of moving for reconsideration and summary judgment to try and avoid the forensic examination further demonstrates that URZ knows that the examination would bear fruit for Spectrum. URZ did not even contact Spectrum in order to make a good faith effort to resolve disagreement before filing its surprise motion for summary judgment. URZ is desperate to try anything—no matter how extreme or unlikely to succeed—to avoid Spectrum obtaining the incriminating evidence likely to be exposed by the forthcoming examinations. The Court should order those examinations to proceed and permit Spectrum to obtain depositions of URZ witnesses after all documents, emails, and computer files are obtained.

In sum, the digital and physical examinations ordered by the Court are likely to yield evidence of URZ's involvement in the counterfeiting, or evidence of destruction of digital evidence by URZ. Similarly, the depositions of URZ witnesses that Spectrum will seek—after it is confident that it has obtained all of URZ's relevant emails, computer files, and other documents—is likely to yield further evidence of URZ's guilt. With that documentary and testimonial evidence, Spectrum should then be in a position to rebut URZ's claim that Spectrum has no evidence. Without it, Spectrum is unfairly handicapped in opposing

summary judgment. URZ's motion for summary judgment is premature because Spectrum is still conducting fact discovery, and a compel order is pending.

    2.    <u>Spectrum has diligently pursued the discovery that it needs to oppose URZ's summary judgment motion.</u>

As this Court is well aware, Spectrum has been diligent in seeking this discovery for over a year with multiple discovery letters and motions. Again, Spectrum's motion for sanctions (ECF #83) and opposition to URZ's motion for reconsideration (ECF #101) detail all of those discovery efforts by Spectrum.

**C.    The Court should defer briefing or deny without prejudice URZ's motion for summary judgment because URZ has not attempted to comply with this Court's procedures.**

The Court should also defer briefing or deny URZ's motion without prejudice because URZ failed to comply with Section 17(a) and (c) of the Court's Procedures. URZ made no attempt whatsoever to confer with Spectrum or seek agreement on disputed matters before filing the motion for summary judgment, as required by Section 17(a) of the Court's Procedures. URZ's motion for summary judgment is accordingly devoid of the certificate of conference required under this rule. Likewise, URZ has not made any attempt to schedule mediation or a settlement conference, as required by Section 17(c) of the Court's Procedures. Accordingly, there is no joint report declaring success or impasse, which is required by the Court's Procedures before consideration of a motion for summary judgment. URZ's failure even to attempt compliance with this Court's procedures justifies deferring briefing or denying without prejudice URZ's motion for summary judgment.

# VI.
## Conclusion

For the foregoing reasons, the Court should grant this motion.

DATED: April 10, 2024

Respectfully submitted,

By: */s/ David B. Cupar*
David B. Cupar (*pro hac vice*)
*Attorney in Charge*
Ohio Bar No. 71622
dcupar@mcdonaldhopkins.com
Matthew J. Cavanagh (*pro hac vice*)
Ohio Bar No. 79522
mcavanagh@mcdonaldhopkins.com
**MCDONALD HOPKINS LLC**
600 Superior Avenue, East
Suite 2100
Cleveland, Ohio 44114
Telephone: 216.348.5400
Facsimile: 216.348.5474

By: */s/ Courtney Ervin*
Courtney Ervin
Texas Bar No. 24050571
SDTX No. 611093
cervin@hicks-thomas.com
D. Ryan Cordell, Jr.
Texas Bar No. 24109754
SDTX No. 3455818
rcordell@hicks-thomas.com
**HICKS THOMAS LLP**
700 Louisiana St., Suite 2000
Houston, Texas 77002
Telephone: 713.547.9100
Facsimile: 713.547.9150

**ATTORNEYS FOR PLAINTIFF
SPECTRUM LABORATORIES, LLC**

## CERTIFICATE OF CONFERENCE

I certify that Spectrum conferenced with URZ on April 8, 2024 via telephone about the issues raised in this motion. The parties were unable to resolve the dispute and URZ communicated its opposition to this motion to Spectrum during that conference. Spectrum confirmed URZ's opposition by electronic mail the same day.

/s/ D. Ryan Cordell, Jr.
D. Ryan Cordell, Jr.

## CERTIFICATE OF WORD COUNT

In accordance with Section 18(c) of the Court's procedures, I certify that this document contains 2,839 words, exclusive of the caption, signature block and certificates of service and conference.

/s/ D. Ryan Cordell, Jr.
D. Ryan Cordell, Jr.

## CERTIFICATE OF SERVICE

Service of this document on counsel of record was accomplished automatically through the Court's Notice of Electronic Filing on this, the 10th day of April, 2024.

/s/ D. Ryan Cordell, Jr.
D. Ryan Cordell, Jr.