IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **SPECTRUM LABORATORIES, LLC,** an Ohio Limited Liability Company, | § § § | |
| *Plaintiff,* | § § | CIVIL ACTION NO. 4:22-cv-03705 |
| v. | § § | JUDGE CHARLES ESKRIDGE |
| **URZ TRENDZ, LLC A/K/A FLY FRESH SMOKE; and DOES #1-10,** | § § § § | |
| *Defendants.* | § § | |

## Plaintiff's Motion for Sanctions

In accordance with this Court's July 5, 2024 Order [Dkt. 120], the Court's inherent power, and Fed. R. Civ. P. 37, Spectrum Laboratories, LLC ("Spectrum") moves for sanctions against URZ Trendz, LLC ("URZ") and respectfully shows as follows:

### I.
### NATURE AND STAGE OF THE PROCEEDINGS

Since first receiving Spectrum's document subpoena in March 2023, URZ has tried every conceivable tactic to prevent Spectrum from obtaining URZ's discovery. On May 3, 2024, the Court partially granted Spectrum's Motion for Sanctions, and ordered URZ to submit to ESI discovery. Dkt. 111. The Court ordered that, if the results of the discovery suggested substantial noncompliance by URZ, Spectrum was permitted to move to shift the costs of the discovery. *Id.* URZ refused to permit the ESI discovery, moved for reconsideration, and then moved to stay the ESI order and petitioned for a writ of mandamus overturning the ESI order. Dkt. 115.

On June 21, 2024, the Court denied URZ's motion to stay, ordered URZ to provide an inventory of its ESI-bearing devices by June 24, 2024, and ordered URZ to submit to the ESI collection and preservation by July 6, 2024. *See* Dkts. 112, 118. Despite this Order, URZ refused to comply. Consequently, on June 21, 2024, Spectrum filed an emergency motion to compel and for sanctions [Dkt. 119]. On July 5, 2024, the Court ordered the following:

> For the avoidance of doubt, it is ORDERED that Defendant URZ Trendz, LLC, must fully comply with this Court's prior orders by July 12, 2024. See Dkts 111 & 118.
> No further extension will be allowed. Failure to fully comply will be met with harsh sanctions. Even so, immediate compliance now by URZ Trendz will forestall (or perhaps entirely eliminate) the harshness of sanctions that may be considered.
> It is further ORDERED that Plaintiff Spectrum Laboratories, LLC, is given leave to bring a fulsome motion for sanctions if compliance by URZ Trendz isn't forthcoming by July 12th. In that respect, it may request any well-supported relief. This may include, if appropriate, the striking of defenses and entry of default judgment, along with an award of attorney fees.

Dkt. 120. Spectrum diligently attempted to collect the ESI discovery following the Court's order but was met with resistance from URZ. From May until August, URZ refused to meaningfully confer with Spectrum or to give Spectrum's ESI vendor the basic information needed to plan and execute a proper and efficient ESI collection. *See* Dkts. 119, 120. URZ also sought to unilaterally impose limitations on the ESI collection to further hinder Spectrum's collection efforts.

On August 8, 2024, Spectrum was finally able to conduct a physical inspection and ESI collection. Just two days before, on August 6, URZ informed Spectrum that two of its computers had inexplicably "stopped working." Nonetheless, Spectrum performed the physical inspection on the agreed date, and collected as much ESI data as possible from URZ's suddenly-inoperable computers (within the 24-hour time frame unilaterally imposed by URZ).

URZ continues to block Spectrum's ESI vendor from gaining access to URZ's email accounts, refusing to provide the two-factor authentication necessary to access URZ's Gmail accounts and also refusing to permit the ESI vendor to complete his work on the inoperable computers. Despite only completing some of the ESI work, the initial ESI information collected confirms what Spectrum knew all along: URZ possesses, but refuses to produce, discoverable information.

Spectrum now requests an order for sanctions and for other appropriate relief, including (1) shifting discovery costs; (2) requiring URZ to provide information related to the undisclosed email accounts and to allow Spectrum to complete the attempted ESI discovery; (3) striking URZ's counterclaims and defenses; (4) entering default judgment against URZ; and (5) awarding Spectrum its attorney's fees.

## II.
## ISSUES REQUIRING RESOLUTION

1. Should the Court sanction URZ for repeatedly disobeying the Court's Orders by requiring it, once again, to fully comply with prior ESI orders and to pay Spectrum's attorneys' fees and vendor costs associated with its efforts to gain URZ's compliance?

2. Should the Court further sanction URZ for repeatedly disobeying the Court's Orders by striking its pleadings and entering a default judgment against URZ?

A district court's enforcement of discovery orders is reviewed under a deferential abuse of discretion standard. *Bennett v. Harford Ins. Co. of Midwest*, 890 F.3d 597, 603 (5th Cir. 2018). Considering the broad discretion given to trial courts on discovery issues, it is "unusual [for an appellate court] to find abuse of discretion in these matters." *Swanner v. United States*, 406 F.2d 716, 719 (5th Cir. 1969). The trial court's decision should be reversed only in an "unusual and exceptional case." *Brown v. Thompson*, 430 F.2d 1214, 1216 (5th Cir. 1970).

## III.
## SUMMARY OF ARGUMENT

As summarized below and detailed herein, URZ continues to refuse to comply with multiple Court orders as to its discovery obligations.

- July 5, 2025 - URZ is ordered to fully comply with the Court's prior orders **by July 12, 2014**.

- Prior to and after this Order, URZ does not respond, or feigns ignorance as to the need for the information, or makes unjustified demands and limitations on Spectrum's ability to conduct the court-ordered ESI collection.

- To at least get the process started, Spectrum acquiesced to URZ's unjustified limitations on Spectrum's ability and scheduled the ESI collection on July 8, 2024.

- Hurricane Beryl struck on July 8, necessitating that the collection be rescheduled, which was then further delayed due to URZ's and its counsel's vacations.

- Spectrum agreed to conduct the ESI collection on August 8, and again acquiesced to URZ's unjustified limitations imposed on Spectrum.

- Two days before the August 8 collection, URZ notified Spectrum that URZ's two computers were inexplicably inoperable.

- Despite the fact that the computers were inoperable, URZ demanded that Spectrum conduct its collection efforts in less than 24 hours.

As of the date of this filing, URZ remains in contempt of the Court's orders, including without limitation: (1) refusing to provide Spectrum the required information to access the two disclosed URZ email accounts; (2) failing to disclose or provide any information to access nine additional URZ email accounts that, from the ESI collection done to date, appear to contain responsive discovery; and (3) refusing to allow Spectrum the required time to fully and adequately attempt collection of the data on the now "inoperable" computers.

## IV.
## STATEMENT OF FACTS

**A.   URZ's initial refusal to comply**

Since URZ was first served with a subpoena requesting documents related to *Quick Fix* in March 2023, URZ has refused to comply with the subpoena and this Court's Orders and obstructed Spectrum's efforts to collect discovery. Spectrum has submitted multiple discovery letters and filed several motions to obtain this. *See* Dkt. 45, Dkt. 83, Dkt. 112, Dkt. 119; *see also* letters dated June 2, July 24, October 20, and December 14, 2023 attached as Exhibits 7 through 10.

URZ's defiance again necessitates this Court's intervention. The following facts are of significance here.

On June 16, 2023, this Court first admonished URZ, stating that "this Court will not hesitate to impose sanctions for willful disobedience of this order and/or discovery obligations." Dkt. 53. On June 29, 2023, URZ moved to dismiss Spectrum's claims against

it, and brazenly accused the Court of allegedly "protecting Plaintiff's [alleged] criminal empire" by permitting third party discovery. Dkt. 56.

On September 5, 2023, the Court again admonished URZ, finding that "URZ hasn't been cooperative or proceeding in accordance with its discovery obligations." Dkt. 63. In the same Order, the Court denied URZ's motion to dismiss and ordered URZ to produce responsive documents to Spectrum's pending requests. *Id.*

On November 29, 2023, the Court admonished URZ a third time and stated Spectrum could bring a motion for relief based on URZ's "discovery abuses and failure by [URZ] to abide by Court order." Dkt. 80. The Court also took "under advisement whether the time is yet appropriate to strike defenses in this action or impose other sanctions." *Id.*

In a hearing on February 13, 2024, the Court again warned URZ that the Court takes compliance with discovery obligations seriously. Dkt. 112-1, 10:22–24. The Court advised URZ's counsel to "admonish his client that any misrepresentations made to the Court about discovery would be taken seriously." Dkts 97, 112-1. These representations included that URZ had produced all responsive documents. Dkt. 112-1, 9:23–10:12. On May 3, 2024, the Court again admonished URZ to comply with the Court's Orders and its discovery obligations, stating URZ's "[f]ailure to comply may result in monetary sanctions or a default judgment against it in Spectrum's favor." Dkt. 111.

B. **URZ's discovery misconduct continues**

On May 3, 2024, the Court entered an Order permitting extensive ESI discovery and a physical inspection of URZ's premises, and permitting Spectrum to move to shift the

costs of its ESI vendor to URZ if "later production of relevant documents suggests substantial noncompliance." Dkt. 111.

On May 9, 2024, Spectrum sent URZ a letter requesting necessary information to effectuate the ESI inspection. Dkt. 112-2; *see also* Exhibit 1, Declaration of Aaron Hughes at ¶ 4. Spectrum asked for email accounts and passwords, and the number and type of devices. *Id.* Instead of responding, on May 21, 2024, URZ filed a Petition for Writ of Mandamus contending that ESI imaging was not warranted and improper. The Petition was swiftly denied.

On June 10, 2024, Spectrum filed its Motion to Preserve ESI wherein Spectrum requested that the Court order URZ to produce the information previously sought in the May 9 Letter within three days, and to permit forensic copying of that evidence within fifteen days of that Order. Dkt. 112. On June 17, 2024, URZ sought to stay enforcement of the ESI order. Dkt. 115. On June 21, 2024, the Court granted Spectrum's motion and denied URZ's motion to stay. *See* Dkt. 118. URZ still has not provided all of the information requested on May 9, 2024.

Instead, on June 25, 2024, URZ stated that it was "ready to proceed," but also advised that its representatives and/or counsel had planned vacations collectively from July 10, 2024 until August 15, 2024. Exhibit 2, at 10. In response, Spectrum again demanded that URZ respond to Spectrum's May 9 Letter as ordered by the Court and explained that the inspection could not occur until Spectrum's ESI vendor had this information. *Id.* at 9. On June 28, 2024, URZ advised that it "disagreed" that responding to the letter was required but stated URZ would "cooperate in good faith" to obtain as much of the

information as it could, and that the ESI devices were available for inspection on July 3, July 5, and July 8. *Id.* at 7-8.

On July 1, 2024, Spectrum responded asking for a call with URZ's counsel to discuss the information requested in the May 9 Letter so that Spectrum could complete the collection within URZ's suggested timeframe. *Id.* at 6; *see also* Exhibit 1 at ¶¶ 3-6. On July 2, 2024, Spectrum sent another email, again requesting a meet-and-confer between Spectrum and URZ to facilitate the collection of the ESI information within URZ's timeframe. *Id.* at 5.

In response, URZ indicated that it would "likely" have the information requested in the May 9 Letter by the end of the week (July 5). *Id.* at 3-4. URZ offered to send its ESI-bearing devices to Spectrum's vendor on one of the proffered dates for a collection that it "presumed" would take no longer than 1 hour, but only if someone stayed onsite for the collection. *Id.*; Exhibit 1 at ¶ 7. In reply, Spectrum's counsel stated that it could not agree to URZ's proposal because the information requested in the May 9 Letter was required *prior to* any attempt to collect the ESI data. Exhibit 1 at ¶ 7. Spectrum warned URZ if it did not provide the information requested by the May 9 Letter by July 3, 2024, it would seek emergency relief from this Court, including sanctions. *Id.* at 3.

Near close of business on July 3, 2024, after URZ failed (again) to provide the information requested in the May 9 Letter, Spectrum filed its Emergency Motion to Compel and for Sanctions. Dkt. 119. Around that time, URZ provided *some* of the information requested by Spectrum's May 9 Letter, including two email addresses (but not

passwords or other access information), computer types, and cell phone types. Exhibit 2 at 1-2.

On July 5, 2024, the Court once more ordered URZ to comply with its discovery obligations and allow Spectrum to conduct the previously-ordered ESI collection. Dkt. 120. "For the avoidance of doubt, it is ORDERED that [URZ] must fully comply with the Court's prior orders by July 12, 2024." *Id.* Later that day, Spectrum again requested the information in its May 9 Letter, and again requested a call between URZ and Spectrum to coordinate the collection efforts. Exhibit 3 at 7-8. URZ, ignoring the conference request, confirmed the inspection date and that all passwords/pins for the devices would be provided during the inspection, but insisted all imaging take place at URZ and after business hours. *Id.* at 6-7. Spectrum reluctantly agreed to the onsite collection on July 8. Exhibit 3 at 7-8.

On July 8, 2024, Hurricane Beryl made landfall and caused significant property damage and widespread power outages. *See id.* at 5. Consequently, Spectrum requested that the collection and inspection be postponed until July 12, 2024 given the extent of the damage following the storm. Exhibit 3 at 4-5. Spectrum also stated the collection would require reliable internet at URZ's facility and again requested URZ's full response to its May 9 Letter to facilitate the complete ESI collection. *Id.*

On July 10, 2024, URZ responded and (inaccurately) contended it had provided all information requested in the May 9 letter. *Id.* at 3-4. URZ also sought confirmation of its compliance with the Court's Order, save for exceptions it characterized as Spectrum's ESI vendor's fault. *Id.* On July 11, 2024, Spectrum provided a list of the missing information,

including the hard drive sizes and operating systems of each computer, PIN codes, usernames, passwords, and encryption keys for all devices. *Id.* at 2-4.

On July 12, 2024, the Court's deadline for URZ's compliance with its most recent discovery order, URZ's counsel responded that he would not provide the necessary passwords: "*I refused to accept possession or knowledge of URZ's email passwords to pass on to you. . . . There is no valid reason for me to be responsible for securing highly confidential passwords from inadvertent disclosure.*" *Id.* at 1-2.

On July 22, 2024, having provided URZ ample time to recover from the impact of Hurricane Beryl, Spectrum again sought availability for the ESI collection and inspection, as well as the missing information. Spectrum further advised URZ that it would again seek relief from the Court if the ESI collection was not completed by August 2, 2024. Exhibit 4 at 6. On July 25, 2024, URZ responded, stating that both counsel and client are on vacation and promised to attempt to coordinate the collection upon return. *Id.* at 5.

On July 29 and July 30, 2024, Spectrum supplied dates that its ESI vendor was available to conduct the collection. *Id.* On July 31, 2024, URZ finally agreed to August 8, 2024 for the date of collection and inspection. *Id.* at 5.

Then on August 6, 2024, URZ informed Spectrum that its two computers "stopped working" the week prior and offered to deliver them along with the subject cell phones to the ESI vendor, but expected a same-day turnaround for the imaging of all devices. Exhibit 5 at 7-8. Spectrum agreed it would send a courier to pick up the devices, but demanded more than one day for the imaging. Exhibit 5 at 6-7. URZ refused, arguing it could not allow the cell phones subject to the order to stay in the ESI vendor's possession (on the

basis that the Order is "not a seizure order") but would leave the inoperable computers with the ESI vendor for one day only. Exhibit 5 at 5-6.

When Spectrum pointed out the dubious nature of the claim that URZ's computers suddenly became inoperable just days before their Court-ordered, scheduled inspection, URZ responded that it was Spectrum's fault for failing to conduct the inspection during Hurricane Beryl, saying:

> What is dubious is that we originally agreed on a July date to conduct this inspection and you decided to abort on the morning of the agreed date in July. . . *The notion that the roads were not passable is not entirely true* because URZ's representatives were at URZ's facility ready to facilitate the inspection and ESI imaging last month on the agreed date. … *It is also dubious that you could not conduct the inspections the day after or the day after that purportedly because your ESI vendor had suffered storm damage.*

*Id.* at 3-4. URZ again demanded a one-day time limitation for Spectrum's ESI vendor to image URZ's computers. *Id.* at 3. Spectrum agreed to attempt the single-day collection, subject to a full reservation of rights. *Id.*

On August 8, 2024, the ESI vendor imaged URZ's phones and Spectrum's counsel inspected URZ's business records. Exhibit 1 at ¶ 4. During the remainder of the 24-hour period, Spectrum's ESI vendor attempted to image URZ's computers. *Id.* at ¶¶ 5–13. However, the computers were severely damaged and only one of the computers could be imaged. *Id.* Spectrum requested that URZ preserve the computers for further analysis. Exhibit 5 at 1. Spectrum's ESI vendor could not image the two email accounts because URZ's did not provide the second step of the two-step authentication process. Exhibit 1 at ¶¶ 14.

The very next day, despite having failed to fully comply with the ESI order, URZ sought leave to file for summary judgment. Dkt. 121. Spectrum opposes that motion in a separate contemporaneous filing.

On August 13, 2024, Spectrum contacted URZ regarding the ESI discovery that was unable to be collected due to URZ's failure to provide the necessary access information. Exhibit 6 at 5-6. Spectrum's ESI vendor could not access the emails accounts because the emails were locked with two-factor authentication. *Id.*; Exhibit 1 at ¶ 14. In order to access the emails, the ESI vendor needed both the password *and* a separate one-time code sent to a different device within the account holder's control after the password is entered. *Id.* URZ failed to respond to Spectrum's request to coordinate a time for URZ to provide this one-time code directly to the ESI vendor to enable him to gain access the email account. Spectrum also raised the issue of the arbitrary time limit URZ imposed on the ESI vendor's collection because, due to the damage to the computers, at least one week would be required to access the data. Exhibit 6 at 5-6.

On August 14, 2024, URZ feigned confusion as to why Spectrum's ESI vendor needed access to the emails "again," and demanded information about why it would take a week to obtain the data from the inoperable computers. *Id.* at 3-5. Spectrum demanded that URZ withdraw its motion for leave to file summary judgment, which URZ refused to do before receiving additional information. *Id.* at 3-4.

Finally, on August 19, 2024, URZ then argued that Spectrum returned the computers "in what appears to be a much different condition than when it was given to [the] ESI vendor," and audaciously implied that the data could not be retrieved because of the ESI

vendor's inspection—despite the fact these computers were admittedly inoperable prior to the collection. *Id.* URZ has no basis for this accusation and it is wrong. Exhibit 1, at ¶¶ 5-14. Spectrum is **again** seeking the Court's intervention because of URZ's longstanding and inexcusable refusal to comply with the Court's numerous prior orders.

## V.
## LAW AND ARGUMENT

A.  **Preliminary ESI Discovery Results Indicate Substantial Noncompliance.**

As described above, Spectrum could only perform limited ESI discovery to this point. Specifically, Spectrum has only been able to pull data from cellular phones that URZ uses for business purposes. Tellingly, even this limited data reveals that URZ has failed to comply with prior discovery orders, and possesses, but has not produced, discoverable information.

First, the phone data revealed responsive documents involving *Quick Fix* that URZ failed to produce. *See* Exhibit 1 at ¶ 16. These documents consist of invoices ranging from September 2022 until June 2024.

Second, the phone data revealed unproduced, responsive communications. These communications are "WhatsApp" messages from October 2022 until June 2024 relating to *Quick Fix* products. *See id.* URZ has maintained all along that it possessed no responsive communications, which is demonstrably false. *See* Dkt. 112-1, 9:23–10:12

Third, the phone data revealed numerous responsive photographs that URZ failed to produce. *See* Exhibit 1 at ¶ 16. These photographs depict *Quick Fix* advertisements and accounting documents, and even *Quick Fix* displayed on shelves.

Fourth, URZ's business phones contain at least nine other email accounts that appear to be used in URZ's business. *See id.* URZ failed to disclose these email accounts as required by the Court-ordered ESI inspection. Spectrum has not been provided access to these email accounts.

This responsive information is solely from the phones provided by URZ. Clearly, URZ failed to search the phones for responsive information. Spectrum has not yet been able to fully access URZ's emails or computer data due to URZ's obstructionism. Given what was discovered on the phones and URZ's concerted efforts to avoid discovery thus far, the ESI examination (once completed) is almost certain to produce more unproduced discovery. URZ has clearly failed to substantially comply with the Court's orders.

**B.      Why Sanctions are Appropriate.**

Under Fed. R. Civ. P. 37, the Court may "issue further just orders," including a list of available sanctions and "impos[ing] other appropriate sanctions" when a party disobeys a discovery order. Fed. R. Civ. P. 37. The Court also has the inherent power to impose sanctions for "bad faith conduct occurring during litigation." *Tex. v. Thirteen Pallets of Indus. Oilfield Hoses & Five Pallets of Blowout Preventers*, 519 F. Supp. 3d 409, 413 (S.D. Tex. 2021) (Eskridge, J.).

Specifically, Rule 37(b)(2)(A) provides that where a party "fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders," including: (1) "striking the pleadings in whole or in part;" and (2) rendering "a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi). Additionally, a court may "order the disobedient party, the attorney advising that party, or

both to pay the reasonable expenses, including attorney's fees, caused by the failure" to obey the court's prior orders. Fed. R. Civ. P. 37(C). Sanctions under Rule 37 are appropriate in the presence of certain factors, such as "willful disobedience, gross indifference to the right of the adverse party, deliberate callousness, or gross negligence." *Dorsey v. Acad. Moving & Storage, Inc.*, 423 F.2d 858, 860 (5th Cir. 1970).

To enter a default judgment based on a party's refusal to comply with the court's discovery order, the court must conclude that: "(1) the refusal to comply results from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct[;] (2) the violation of the discovery order [is] attributable to the client instead of the attorney[;] (3) the violating party's misconduct substantially prejudice[d] the opposing party[;] and (4) a less drastic sanction would not substantially achieve the desired deterrent effect." *Moore v. CITGO Refining and Chemicals Co., L.P.*, 735 F.3d 309, 316 (5th Cir. 2013).

Here, URZ has willfully and flagrantly disobeyed virtually all of the Court's multiple orders, wasting the Court's and Spectrum's resources. *See, e.g.*, Dkt. 46, Dkt. 63, Dkt. 120. From the beginning, URZ has delayed these proceedings and obfuscated the truth as to the documents in its possession. URZ initially maintained that it had *no* responsive documents. Only, after being twice compelled to produce documents, it produced *six* pages of documents. Later, in response to another motion for sanctions, URZ produced an additional *forty-seven* pages. Now, the limited returns of ESI discovery from URZ's phones demonstrate URZ is continuing to withhold responsive documents and communications.

URZ has had over a year of multiple chances and still refuses to comply with the Court's discovery orders. The Court issued its most recent Order on July 5, 2024, stating unequivocally that URZ "must fully comply with this Court's prior Orders," and the "[f]ailure to fully comply will be met with harsh sanctions." Dkt. 120. URZ has not fully complied (again) and harsh sanctions are warranted. URZ deserves no more chances. URZ's willful discovery abuses support imposing severe sanctions under Rule 37. *See Calsep A/S v. Dabral*, 84 F.4th 304, 313 (5th Cir. 2023) ("[D]iscovery delays are serious, especially when they are part of pattern.").

Further, the blame for the significant delay and the associated expense lies squarely at URZ's feet and not its counsel's. URZ did not provide the necessary information for the ESI collection, which was solely in URZ's possession, not its counsel's. URZ's suddenly inoperable computers were in URZ's custody and control, not its counsel's. Moreover, the Court ordered URZ to preserve the ESI at issue more than a month before the computers suddenly became inoperable (in addition to URZ's independent duty to preserve evidence). Dkt. 118. There is no evidence that URZ's willful discovery violations were at the direction of its counsel. To the contrary, the limited ESI discovery performed so far demonstrates that URZ knew of the Court's orders. The Court's ESI discovery order was found on URZ's owner's phone. Photographs of Spectrum's Subpoena and URZ's Responses to Spectrum's Discovery Requests were also found on URZ's phones. *See* Exhibit 1 at ¶ 16.

Spectrum has been severely prejudiced due to URZ's persistent misconduct. After almost a eighteen months, Spectrum is still incurring significant attorneys' fees chasing URZ's documents evidencing the sale and/or distribution of counterfeit *Quick Fix*

products. Had URZ responded to the subpoena served in March 2023 as required, this entire sideshow could have been avoided. Instead, Spectrum still has not been able to fully conduct the Court ordered ESI collection due to URZ's continued pattern of gamesmanship, which has prejudiced Spectrum's ability to obtain documents relevant to its claims. Moreover, with URZ's two computers now "inoperable"—which occurred after URZ's compliance with the Court's most recent order was required—Spectrum may never get the discovery to which it is entitled. The significant prejudice Spectrum has suffered due to URZ's conduct warrants severe sanctions.

Perhaps fearing sanctions, URZ has incredibly accused Spectrum's ESI vendor of allegedly causing a loss of data. URZ acknowledged its computers are "inoperable." Spectrum's ESI vendor took appropriate measures to retrieve any available data on the inoperable computers in the 24-hour period URZ would permit the collection. Exhibit 6 at 1-2. No data could be retrieved from one computer during the limited period of time. Exhibit 1, at ¶ 10. But, given adequate time, the ESI vendor is optimistic some data can be retrieved. Exhibit 1, at ¶ 15. But URZ has refused the request for a longer time to inspect the computer. Exhibit 6 at 1-2.

C. **URZ's pattern of avoiding discovery and violating this Court's discovery orders justify sanctions of the highest severity. This Court has previously imposed lesser sanctions, yet clearly, URZ is not deterred. What Sanctions are appropriate.**

Spectrum respectfully requests an order granting the following sanctions:

1. that, within 24 hours, URZ provide to Spectrum all the information required to collect each of the eleven email accounts and cooperate in allowing Spectrum access, including (without limitation) timely providing the two-step authentication information;

2. that Spectrum's ESI vendor be allowed to collect URZ's two inoperable computers and keep the computers until he can complete his collection efforts, including efforts to determine the reason the computers are inoperable and obtain any data that can be retrieved;

3. that URZ pay all costs of Spectrum's ESI vendor incurred to date, which amount shall be submitted to the Court within five business days;

4. that URZ pay all subsequent costs of Spectrum's ESI vendor incurred to obtain URZ's compliance with the ESI discovery ordered by the Court;

5. that URZ pay the attorneys' fees incurred by Spectrum to date relating to URZ's failure to comply with its discovery obligations, which amount shall be submitted to the Court within five business days;

6. that URZ fully and timely cooperate in obtaining all of the ESI discovery subject to the Court's prior orders;

7. that URZ's defenses and counterclaims be stricken with prejudice; and

8. that Spectrum be granted default judgment against URZ.

## VI.
## CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Spectrum respectfully requests that the Court grant this Motion and order the relief requested in this Motion, as set forth above and in the proposed order accompanying this Motion. Spectrum further seeks all further relief, in law and equity, to which it is entitled.

DATED: August 30, 2024                  Respectfully submitted,

By: */s/ David B. Cupar*
    David B. Cupar (*pro hac vice*)
    *Attorney in Charge*
    Ohio Bar No. 71622
    dcupar@mcdonaldhopkins.com
    Matthew J. Cavanagh (*pro hac vice*)
    Ohio Bar No. 79522
    mcavanagh@mcdonaldhopkins.com
    **MCDONALD HOPKINS LLC**
    600 Superior Avenue, East
    Suite 2100
    Cleveland, Ohio 44114
    Telephone: 216.348.5400
    Facsimile: 216.348.5474

By: */s/ Courtney Ervin*
    Courtney Ervin
    Texas Bar No. 24050571
    SDTX No. 611093
    cervin@hicks-thomas.com
    **HICKS THOMAS LLP**
    700 Louisiana St., Suite 2000
    Houston, Texas 77002
    Telephone: 713.547.9100
    Facsimile: 713.547.9150

**ATTORNEYS FOR PLAINTIFF SPECTRUM LABORATORIES, LLC**

## CERTIFICATE OF WORD COUNT

In accordance with Section 18(c) of the Court's procedures, I certify that this document contains 4,703 words, exclusive of the caption, signature block and certificates of service and conference.

*/s/ Courtney Ervin*
Courtney Ervin

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2024, a true and correct copy of this Response was served on all counsel of record via the Court's ECF Noticing System.

*/s/ Courtney Ervin*
Courtney Ervin