UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SPECTRUM LABORATORIES, LLC,<br>            Plaintiff,<br><br>v.<br><br>URZ TRENDZ, LLC,<br>            Defendant. | **Case No. 4:22-CV-03705**<br><br>**Hon. Judge Charles Eskridge**<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS**

1

TABLE OF CONTENTS

I. URZ COMPLIED WITH THE COURT'S FORENSIC DISCOVERY ORDER ... 3

   A. URZ Complied With The Order In July 2024 ...................................................... 3

   B. URZ Complied With The Court's Order a Second Time in August 2024 ........... 6

      1) *URZ Made Its Facilities Available For Physical Inspection* ............................ 6

      2) *URZ Produced All Records of Purchases and Sales* ........................................ 7

      3) *URZ Identified All Its Bank Accounts* ............................................................. 7

      4) *URZ Made Its ESI Sources Available For Forensic Copying* ......................... 7

        i. *URZ's Email Accounts That Can Be Accessed Through Web Browser* ........ 8

        ii. *URZ does not own or have access or use the nine other email accounts raised by Spectrum* ................................................................................... 11

        iii. *Email Accounts That Can Only Be Accessed Through a Server* ................ 12

        iv. *Computers, phones, and other hardware* ..................................................... 12

        v. *Database and Software* ................................................................................. 15

II. SANCTIONS ARE NOT APPROPRIATE BECAUSE URZ COMPLIED WITH THE COURT'S FORENSIC DISCOVERY ORDER .......................................... 15

III. CONCLUSION ............................................................................................................ 20

Defendant URZ Trendz, LLC ("URZ") hereby submits this Opposition to the Motion for Sanctions filed by Plaintiff Spectrum Laboratories, LLC ("Spectrum"). Concurrent with this Opposition, URZ submits the Declaration of Louis F. Teran ("Teran Decl.") and the Declaration of Muhammad Mujahid ("Mujahid Decl.").

## I. URZ COMPLIED WITH THE COURT'S FORENSIC DISCOVERY ORDER

### A. URZ Complied With The Order In July 2024

Spectrum erroneously asserts that URZ did not begin complying with the Court's Forensic Discovery Order until August 8, 2024. But, in fact, on June 25, 2024, URZ informed Spectrum by email as follows:

> "Pursuant to the Fifth Circuit's Order denying URZ's Petition for Writ of Mandamus, URZ is ready to proceed with the District Court's discovery order as soon as possible so we can get this out of the way and proceed expeditiously with the other aspects of the case, including trial... URZ is available for the physical inspection to take place after business hours on July 3, July 5, or July 8. Let me know which of the proposed dates works best for you; and let me know how to coordinate your ESI vendor to get the data it requires. Preliminarily, we have 2 computers, 1 server, and 3 cell phones at issue. I look forward to your prompt response." See *Teran Decl.,* Ex. D.

Thus, it cannot be disputed that URZ expeditiously offered three dates (July 3, 5, or 8) for Spectrum to execute the Court's Forensic Discovery Order. In response to said email, Spectrum's attorney erroneously stated as follows:

> "As the first step in complying with the district court's Order, URZ must provide all of the information requested in my May 9, 2024 letter (attached). Please provide the requested information by no later than this Friday, June 28, to comply with the Order and allow us begin the discovery work." See *Teran Decl.,* Ex. E.

Contrary to Spectrum's assertion, there is nothing in the Court's Forensic Discovery Order that requires URZ to first provide a response to the May 9 letter or any other letter. In fact, the process of executing the Court's Order was a concern that was raised with the Court at the Motion Hearing and the Court indicated as follows:

> "THE COURT: I am intending -- there is a specific order. I try not to on some orders. When things are being specifically asked for by parties, and this is

3

> certainly true like when parties want default judgments or anything having to do with like a mortgage dispute. When I've got it, I'm always sort of like, make sure you've asked for the order that you want to live with, that it's clear enough. They've asked for a specific order. And so and when I read it, it seems clear enough to be followed if the parties are cooperating in good faith." See *Teran Decl.,* Ex. C.

In fact, nothing in the Order indicates that any information must be provided ahead of the examination or ESI collection. Nevertheless, URZ offered to cooperate in good faith as follows:

> "I disagree that 'the first step in complying with the Court's order' is responding to your letter. The order expressly requires URZ to make its ESI information and devices available for imaging by your ESI vendor and to make its facilities available for physical inspection. There is nothing in the Order requiring URZ to respond to your letter. Nevertheless, in an effort to cooperate in good faith, I have reviewed your letter and, per your request, we will gather as much of the information you request as we can. However, as I indicated in my email below, URZ is making its facilities available for physical inspection and its ESI devices for imaging by your ESI vendor on July 3, July 5, or July 8. I suggest that we schedule one of those dates so that we can complete this process and move on with the rest of the case including the MSJ and trial." See *Teran Decl.,* Ex. F.

Then, three (3) days later, Spectrum's counsel responded as follows:

> "To make this work for the July 3, 5, and 8 dates you propose, let me know if you and the right person(s) from URZ are available for a call at 3p CT this afternoon with us to go over our May 9 letter (attached) so we can work with you to have all of this completed." See *Teran Decl.,* Ex. G.

Thus, now Spectrum was not just asking for information on its letter, Spectrum was now demanding a meeting with a representative of URZ outside the presence of a court reporter, essentially an illegal deposition. Such is not allowed by the Federal Rules of Civil Procedure and URZ's counsel did not allow such meeting to take place. In addition, Spectrum refused to pick one of the proposed dates for execution of the Order without first receiving the information and meeting it unreasonably demanded. Nevertheless, URZ provided Spectrum with the information requested in the May 9 letter

and Spectrum still refused to pick one of the proposed dates. Instead, Spectrum ran to this Court with its Emergency Motion to Compel falsely alleging that URZ was refusing to comply with the Court's Forensic Discovery Order. See *ECF No. 119*. Before URZ could respond to Spectrum's Motion, the Court denied the motion and ordered that the execution of the Forensic Discovery Order must occur by July 12. But, by this time, July 3 and July 5 had passed so Spectrum finally agreed on July 8 for the execution of the Forensic Discovery Order.

Then, on the morning of July 8, 2024, URZ informed Spectrum that everything was ready and that URZ's representative would be waiting for them for the full execution of the Forensic Discovery Order as was agreed. More specifically, URZ's counsel informed Spectrum's counsel as follows:

> "I have just received confirmation from URZ that everything is set for today at 6pm (Houston Time). Pursuant to the Court's Order and the emails below, URZ will make its facility and ESI sources available for physical inspection and imaging." See *Teran Decl.,* Ex. H.

Then, on the same day, Spectrum's counsel informed that the forensic imaging would not be able to be completed, as follows:

> "Due to Hurricane Beryl, which is still battering Houston, the forensic imaging scheduled for tonight will have to be rescheduled. Our forensic vendor suffered property damage, as have I. The streets are not passable because of flooding and downed trees. Further, power and internet is out or unreliable across the city. Reliable power and internet are a requirement to a successful imaging." See *Teran Decl.,* Ex. I.

Based on said email, it was understood by URZ that the forensic imaging of ESI assets may not take place on July 8 but the physical inspection would proceed as planned. After all, the email from Spectrum's counsel only mentioned the forensic imaging and made no mention of the physical inspection. Therefore, URZ's representative was present at URZ's facility at 6pm on July 8, 2024, waiting for Spectrum's representatives to show up as had been agreed by the parties. See *Mujahid Decl.*, ¶5-13. In fact, URZ's representative remained at URZ's facility until 7:30pm waiting for Spectrum's

representatives to show up, but they never did. See *Id*. In fact, Spectrum never made any indication that the physical inspection would not proceed on July 8. Instead, Spectrum audaciously elected to waste URZ's valuable time and resources, by simply not showing up on the agreed date and time.

The Court's Forensic Discovery Order expressly states that URZ must make its facilities and ESI assets "available" for inspection, searching, and copying. Thus, on July 8, 2024, URZ fully complied with the Court's Order by making its facilities and ESI assets "available" for inspection, searching, and copying. The fact that Spectrum elected not to show up on the agreed date and time, not even for a physical inspection, is not within the control of URZ. The fact remains that on July 8, 2024, URZ coordinated with Spectrum in good faith and complied fully with the Court's Forensic Discovery Order. Even more, as discussed in detail below, URZ further cooperated in good faith by making its ESI assets and facilities available for a second time to Spectrum on August 8, 2024. URZ was not required to do as such since it already complied with the Court's Order on July 8, but URZ chose to do as such in good faith to get this case moving.

**B.   URZ Complied With The Court's Order a Second Time in August 2024**

*(1)   URZ Made Its Facilities Available For Physical Inspection*

The Court's forensic discovery order states as follows:

> "URZ must identify each physical location where it conducts business or stores business records/information. URZ must also make those locations available for physical inspection by Spectrum, provide full access to any business records, and provide assistance to Spectrum in locating and examining such records." See *ECF No. 111*.

In compliance with the Court's Order, URZ identified and made its facilities available for physical inspection by Spectrum in July and again on August 8, 2024. In fact, on August 8, 2024, Spectrum's attorney conducted a full and thorough inspection of URZ's facilities and URZ's business records that lasted almost a full 6 hours. See *Mujahid Decl.,* ¶21-34. It must be noted that in this Motion, Spectrum does not dispute

that it had full access of URZ's facilities and records just as the Court ordered. Thus, URZ has complied with this portion of the Court's order.

### (2) URZ Produced All Records of Purchases and Sales

The Court's forensic discovery order states as follows:

> "URZ must produce all records of purchases and sales of Quick Fix, as it was previously ordered to produce, including all receipts (or other proof of sale records) and payment records (including ACH/wire confirmations, cancelled checks, and bank records)." See *ECF No. 111*.

In compliance with the Court's Order, URZ has produced all records of its purchase and sales of Quick Fix just as the Court ordered. In fact, these records were reviewed and discussed at the motion hearing on February 13, 2024. Even more, it must be noted that Spectrum's Motion does not dispute that URZ produced all records of purchases and sales just as the Court ordered. Thus, URZ has complied with this portion of the Court's order.

### (3) URZ Identified All Its Bank Accounts

The Court's forensic discovery order states as follows:

> "URZ must identify every bank account through which it transacts any business, including the name of the bank and account numbers so that Spectrum may issue subpoenas to those banks to trace payments to others responsible for the counterfeiting or through whom URZ has obtained Quick Fix." See *ECF No. 111*.

In compliance with the Court's Order, URZ identified its bank account information by email on July 3, 2024. See *ECF No. 122-2,* p.3. In fact, it must be noted that Spectrum's Motion does not dispute that URZ produced its bank account information just as the Court ordered. Thus, URZ complied with this portion of the Court's order.

### (4) URZ Made Its ESI Sources Available For Forensic Copying

The Court's forensic discovery order states as follows:

> "URZ must make the following ESI sources available for forensic copying and searching by Spectrum's ESI vendor." See *ECF No. 111*.

7

> b) *URZ's Email Accounts That Can Be Accessed Through Web Browser*

In compliance with the Court's Order, on August 8, 2024, URZ provided Spectrum's ESI vendor its usernames, passwords, and any other credentials to gain access to URZ's two (2) email accounts for copying and searching.  See *Mujahid Decl.,* ¶23.  In its Motion, Spectrum falsely asserts that URZ did not comply with this portion of the Order as follows:

> "On August 13, 2024, Spectrum contacted URZ regarding the ESI discovery that was unable to be collected due to URZ's failure to provide the necessary access information.  Spectrum's ESI vendor could not access the emails accounts because the emails were locked with two-factor authentication.  In order to access the emails, the ESI vendor needed both the password and a separate one-time code sent to a different device within the account holder's control after the password is entered."  See *Motion,* p.12.

However, Aaron Hughes, Spectrum's ESI vendor, expressly declares as follows:

> "On August 10, 2024, I began my attempt to collect URZ's Gmail accounts."  See *Hughes Decl.,* ECF No. 122-2, ¶14.

It is unexplained why Spectrum did not image URZ's email accounts on August 8, 2024, when it was given access.  In fact, on August 8, 2024, URZ's representative provided Spectrum's ESI vendor access to the emails for copying and searching.  See *Mujahid Decl.,* ¶22-23.  Even more, URZ's representative received oral confirmation from Spectrum's ESI vendor that he had access to URZ's emails for copying and searching.  See *Id*.  Furthermore, URZ's representative received oral confirmation from Spectrum's ESI vendor that URZ's emails had been searched and copied on August 8, 2024, pursuant to the Court's Order.  See *Mujahid Decl.,* ¶33.

More important, prior to August 8, 2024, URZ made very clear that all searching and imaging had to be conducted at URZ's facility and on the day agreed on by the parties.  In fact, as discussed above, the parties originally agreed on July 8 for the imaging and URZ informed Spectrum as follows:

> "Pursuant to your email and the Court's Order, URZ is ready and prepared to provide its ESI sources and devices for imaging and to make its facility available for physical inspection on July 8, 2024 at 6pm (Houston time)." See *Teran Decl.,* Ex. J.

This was further reiterated in another email as follows:

> "URZ has just confirmed that it is ready for the inspection and ESI imaging to take place pursuant to the Court's Order on Monday, July 8, 2024 at 6 pm, as I indicated in my prior email. All the devices will made available at that time along with all passwords, pins, or anything thing else needed for full access. As was previously discussed, **the ESI imaging or collection must be done on-site**. The devices cannot be removed from the site. Your ESI vendor will be able to stay there for as long as it takes to complete the imaging process. Since this will take place after business hours, there is no preference on which device to image first. Your ESI vendor can choose how to proceed with imaging." See *Teran Decl.,* Ex. K.

Thus, URZ did not impose any time constraints so long as all imaging was completed within URZ's facility on the agreed date. Since Spectrum failed to show up on July 8 and everything was re-scheduled to August 8, 2024, Spectrum's counsel confirmed that the imaging and inspection would proceed as had been agreed on for July 8. In fact, Spectrum's counsel emailed as follows:

> "For the avoidance of doubt, I presume the time and terms for the ESI collection the same as in your prior correspondence? (except the difference in date)." See *Teran Decl.,* Ex. L.

Therefore, pursuant to the Court's Order, URZ made its emails and other ESI assets available for searching and imaging on July 8, 2024 and then again on August 8, 2024. Even more, Spectrum's ESI vendor was given access to URZ's emails on August 8, 2024, for searching and imaging. But, now, Spectrum wishes to gain access to URZ's email again because its ESI vendor purportedly did not image them on August 8 as agreed by the Parties and unilaterally wished to image them on August 10 instead. Furthermore, Spectrum's ESI vendor claims that August 10 is the first time it attempted to access URZ's email, when, in fact, he orally confirmed to URZ's representative that he had

9

access and had imaged said emails on August 8, 2024.  See *Mujahid Decl.,* ¶23 and 33.

But most concerning about this matter is that Spectrum now seeks URZ's "two-factor" or "multi-factor" code which not only grants access to URZ's emails, but also grants access to URZ's email settings.  This would allow Spectrum to have unrestricted access to URZ's emails at any time and in perpetuity.  Even more, with access to the settings, Spectrum can add tracking mechanisms to track future emails that URZ receives and sends.  Such unrestricted access is not justified and has not been granted by this Court.  This is equivalent to getting the keys to URZ's emails rather than mere access for copying and searching.  In fact, the whole purpose of requiring Spectrum's ESI vendor to search and copy URZ's emails on August 8, 2024, as ordered by this Court, was so that such would be done within the presence of URZ's representative as a check to prevent Spectrum from walking out with the keys.

Even more, Spectrum wishes the "two-factor" or "multi-factor" code to be passed to Spectrum's ESI vendor through URZ's attorney.  This after URZ's counsel expressly informed Spectrum that he would not take possession of such information.  More specifically, URZ's counsel informed Spectrum of this before August 8, 2024, so as to place Spectrum on notice:

> "Just to clarify your comment regarding email passwords, our response to your May 9 letter indicates that the passwords would be provided by URZ's representative directly to your ESI expert on July 8, the day that the imaging was scheduled to take place.  This is so because I refused to accept possession or knowledge of URZ's email passwords to pass on to you.  I do not want to be responsible for securing said passwords.  I wish to prevent said confidential information from being disclosed inadvertently by me or someone in my office.  I do not wish to receive said passwords or any passwords so I decided that it would be best for URZ's representative to provide it directly to your ESI vendor in-person, as indicated in my response to your May 9 letter.  There is no valid reason for me to be responsible for securing said highly confidential passwords from inadvertent disclosure."  See *Teran Decl.,* Ex. M.

In addition, the facts show that on August 8, 2024, Spectrum's ESI vendor was provided the passwords and access to URZ's two emails as required by the Court's Order.  [Mo Decl].  In fact, Spectrum's ESI vendor declares as follows:

10

> "I was then provided with the passwords and email account information for two Gmail accounts." See *Hughes Decl.,* ECF No. 122-1, ₱4.

At no time on August 8, 2024, did Spectrum or Spectrum's ESI vendor allege or complain that they did not have access to URZ's emails for copying and searching. As such, URZ fully complied with this portion of the Court's Order.

        *c)    URZ does not own or have access or use the nine other email accounts raised by Spectrum*

In its Motion, Spectrum falsely asserts as follows:

> "Fourth, URZ's business phones contain at least nine other email accounts that appear to be used in URZ's business. URZ failed to disclose these email accounts as required by the Court-ordered ESI inspection. Spectrum has not been provided access to these email accounts." See *Motion,* p.14.

First, the phones provided by URZ were NOT "business phones", they were personal phones of URZ's representatives. Only one of the phones provided by URZ is owned, controlled, or managed by URZ. In fact, this was made clear to Spectrum ahead of August 8, 2024, as follows:

> "All passwords to devices will be provided directly by the corresponding owners of said devices to your ESI representative in-person. Note that URZ does not own some of these devices so it could not provide the passwords. The passwords will be provided by the corresponding owners of the devices directly to your ESI vendor in person upon imaging." See *Teran Decl.,* Ex. M.

Even more, Spectrum fails to present any evidence whatsoever that any of these emails, which were purportedly linked the phones of some of URZ's representatives, were used by URZ to conduct business in any way whatsoever. In fact, the only two (2) emails that URZ uses to conduct business were provided to Spectrum, as discussed above.

In addition, it must be noted that while Spectrum's Motion alleges that there are "at least nine other email accounts", Spectrum's ESI vendor merely declares as follows:

> "I also discovered that the URZ phones are linked to numerous other email accounts." See *Hughes Decl.,* ECF No. 122-1, ₱16.

As such, Spectrum fails to present any evidence that the phones were linked to "at least nine other email accounts". Nevertheless, Spectrum fails to present any evidence whatsoever that any of these emails were used to conduct any of URZ's business.

Accordingly, URZ complied with the Court's Order.

          d)     *Email Accounts That Can Only Be Accessed Through a Server*

URZ does not own or use any email accounts that can only be accessed through a private server. In fact, Spectrum does not even allege that such email exists. Thus, URZ complied with this portion of the Court's order.

          e)     *Computers, phones, and other hardware*

In compliance with the Court's Order, on August 8, 2024, URZ provided Spectrum's ESI vendor several phones and two computers one which operates as a server and contains all of URZ's sales and purchase data. Spectrum's ESI vendor was able to successfully image the phones. See *Hughes Decl.,* ECF No. 122-1, ¶4. Even more, Spectrum's ESI vendor was able to image URZ's computer/server. But, Spectrum's ESI vendor was unable to image the second computer. In fact, on August 5, 2024, URZ informed Spectrum that its two (2) computers had stopped working for no clear reason. [Aug 6 email]. But, the computers were working perfectly fine on July 8 when Spectrum was originally suppose to image them. However, as of August 6, the computers stopped working unexpectedly. To provide some remedy for the issue, URZ proposed the following:

> "If this is agreeable, I can coordinate with URZ to deliver the two computers and the cell phones to your ESI vendor first thing in the morning of Thursday, August 8. The courier would wait until the cell phones are completely imaged first and then return the cell phones to URZ. But your ESI vendor can keep the two computers for the full day for complete imaging. We can then arrange URZ to pick the computers up at the end of the day or the day after." See *Teran Decl.,* Ex. N.

Therefore, URZ offered to deliver the computers to the office of Spectrum's ESI vendor, solely at URZ's expense. The delivery would be in the morning, not after

business hours, and it would allow Spectrum's ESI vendor and his full team of computer experts to properly image the computers using their special tools in their laboratory. Amazingly, Spectrum rejected URZ's offer. Thus, URZ then agreed to allow Spectrum's ESI vendor to go to URZ's facility on August 8, as had been previously agreed. Then, URZ agreed that if Spectrum's ESI vendor cannot image the computers at URZ's facility, then he could take the computers to his laboratory until the end of the next business day which was a Friday.

Therefore, despite the Court's Order not being a seizure order, URZ, in good faith, allowed Spectrum's ESI vendor to take the computers to his laboratory for thorough imaging and searching. It now seems that by taking the computers to his laboratory, Spectrum's ESI vendor was able to fully image the computer/server but the other was "severely damaged". See *Motion,* p.11. Nevertheless, URZ has fully complied with the Court's Forensic Order by making its computers available to Spectrum's ESI vendor. The fact that Spectrum's ESI vendor was able to image only one of the computers, does not make URZ in violation of the Court's order. After all, URZ did not control whether the ESI vendor selected by Spectrum was skilled and experienced enough to do his job successfully.

More concerning about this matter, is the fact that URZ's computers were returned with loose screws. See *Teran Decl.,* Ex. O. Even more, when asked about the loose screws, Spectrum's counsel failed to provide an explanation and simply responded as follows:

> "Spectrum has been working in good faith with URZ to obtain its compliance with the Court's numerous orders. It is clear that further email communications will not productive, which is why Spectrum filed its motion for sanctions." See *Teran Decl.,* Ex. P.

But now, in this Motion and for the first time, Spectrum's ESI vendor seems to acknowledge that he did not merely image the computers as was ordered by this Court. Instead, Spectrum's ESI vendor took the computers apart without authorization from URZ or this Court. More specifically, Spectrum's ESI vendor declares as follows:

13

> "In most cases, where possible, proper forensic methodology employs the use of 'dead' examination. This refers to the fact that neither the system, nor the drive, are booted into the drive's operating system. This generally requires removal of the drives where possible. This was performed in accordance with standard forensic methodology." See *Hughes Decl.,* ECF No. 122-1, ¶12.

This seems to be an acknowledgement that Spectrum went beyond mere imaging and searching of URZ's computers. Instead, Spectrum took it upon itself to take URZ's computers apart without authorization. In fact, URZ handed the computers in a condition that they were not operating properly. But Spectrum returned the computers completely "fried". In fact, Spectrum's attorney described it as follows:

> "In short, the computer is **fried** and it will take days for Mr. Hughes to run the processes he can to see if he can get the computer to power up and then, if the computer will power up, to see what, if any, information can be retrieved." See *Teran Decl.,* Ex. Q.

Thus, it is no longer that URZ's computers are merely not working properly, it is now that URZ's computers are "fried". However, Spectrum's ESI vendor was able to image one of the computers. But now that computer is "fried" and the data is completely gone, irretrievable.

But, even more concerning is that Spectrum's ESI vendor now, for the first time, asserts that URZ's computers were "infected by the 'Wannacry' ransomware." See *Hughes Decl.,* ECF No. 122-1, ¶8. Online information on such "Wannacry ransomware" indicates as follows:

> "The WannaCry attack works by infecting PCs and spreading between machines by itself without requiring user intervention or social engineering…
>
> This method ensures the WannaCry malware is not written to the device's disk in an unencrypted form, which hides it from traditional antivirus programs. In addition to encrypting the victim's files, the attack also scans for visible file shares and infects any systems connected to them, which enables it to rapidly spread across networks…
>
> WannaCry attackers typically issued a demand for victims to pay either $300 or $600 in bitcoin within a week of their device being attacked." See *Teran Decl.,* Ex. B.

14

That which is notable here is that Spectrum's ESI vendor makes this assertion without evidence and without presenting a copy of any such demand for payment that is typical with the "Wannacry ransomware". In fact, it must also be noted that Spectrum's counsel does not even address this "Wannacry ransomware" in Spectrum's Motion. Therefore, URZ does not cover this matter in further detail here. But it must be noted that the presence of such "Wannacry ransomware" does not justify the need to take URZ's computers apart and then return said computers in "fried" condition.

Nevertheless, the fact remains that URZ fully complied with the Court's Forensic Discovery Order by making its ESI assets, including its computers available to Spectrum for searching and copying. Thus, URZ complied with this portion of the Court's order.

  f)  *Database and Software*

URZ's database and software was provided to Spectrum's ESI vendor within URZ's computer server which Spectrum's ESI vendor was allowed to take to his laboratory for a full day for imaging and searching. In fact, Spectrum's opposition does not dispute that URZ provided its database and software just as the Court ordered. Thus, URZ complied with this portion of the Court's order.

## II. SANCTIONS ARE NOT APPROPRIATE BECAUSE URZ COMPLIED WITH THE COURT'S FORENSIC DISCOVERY ORDER

With its Motion, Spectrum seeks sanctions pursuant Fed.R.Civ.P. 37 for disobedience of the Court's Forensic Discovery Order. See *Motion,* p.14. However, as discussed above in detail, the evidence shows that URZ complied with every aspect of he Court's Forensic Discovery Order. Thus, sanctions are not appropriate.

In requesting sanctions, Spectrum makes audacious allegations without presenting any supporting evidence. More specifically, Spectrum asserts, "the phone data [it collected from URZ] revealed responsive documents involving Quick Fix that URZ failed to produce." See *Motion,* p.13. Then, Spectrum asserts, "the phone data revealed unproduced, responsive communications. These communications are 'WhatsApp' messages from October 2022 until June 2024 relating to Quick Fix products." See *Motion,* p.13. Then, Spectrum asserts, "the phone data revealed numerous responsive

15

photographs that URZ failed to produce. These photographs depict Quick Fix advertisements and accounting documents." See *Motion*, p.13. However, it must not go unnoticed that despite making such egregious assertions, Spectrum fails to produce a single piece of supporting evidence. More specifically, Spectrum fails to produce a single communication, photograph, or document that is consistent with Spectrum's allegations. Essentially, Spectrum's allegations are unfounded. Thus, there is no evidence whatsoever that URZ withheld any document or information or that URZ failed to comply with the Court's Forensic Discovery Order.

But, it is important to note that such pattern of making baseless assertions is customary for Spectrum and its attorney. After all, at the Motion Hearing, Spectrum's counsel made the following audacious false representation to this Court:

> "MR. CUPAR [PLAINTIFF's COUNSEL]: -- don't hold me too much to it. But generally speaking what happened was Royal Fragrances -- in short, what I think I can represent here correctly is that they they pointed the finger at URZ and said that they received, either directly or indirectly, their orders from --
> THE COURT: That URZ had sold to Royal Fragrances.
> MR. CUPAR: -- URZ and that included counterfeit, I believe. Yeah, that's right."
> See *Teran Decl.,* Ex. C, p.38.

Such representation by Spectrum's counsel to the Court was blatantly false. In fact, Royal Fragrances provided Spectrum a sworn affidavit identifying its suppliers and URZ was NOT one of them. The sworn affidavit of Royal Fragrances unambiguously states as follows:

> "9. As the invoices attached as Exhibit A show, the only business from which [Royal Fragrances] has purchased Quick Fix are: Supreme Imports LLC, Elite Wholesale, and MWI Wholesale. There are no other businesses or individuals from whom [Royal Fragrances] has purchased or received Quick Fix." See *Teran Decl.,* Ex. A, ⁋9.

Clearly, Spectrum's counsel blatantly and audaciously lied to this Court. Now, Spectrum's counsel is up to his improper tactics again by making assertions that the phone data collected revealed information. But Spectrum's counsel fails to provide any supporting evidence.

After all, it must be noted that this case started by Spectrum describing its products to this Court as synthetic urine used for scientific purposes. More specifically, Spectrum represented to this Court as follows:

> "Plaintiff Spectrum sells a synthetic urine product called QUICK FIX. Synthetic urine has beneficial uses, including for medical research, urinalysis calibration, product and material testing, and animal repellent/lure." See *ECF No. 29*.

But, despite such representation by Spectrum's counsel, Spectrum actually sells synthetic urine or fake pee for the falsification of urine drug tests. In fact, Spectrum's synthetic urine is advertised as follows:

> "What is synthetic urine? - Synthetic urine, also known as fake urine or fake pee, resembles the chemical structure and physical properties of real human urine…
>
> Fake pee is mostly used to pass urine tests that a person, prank, or sports event organizer can order. In most of these cases, getting caught with traces of toxins in the body can have far-reaching consequences. Instead of facing problems, many people opt to use Quick Fix Synthetic Urine or the larger 3oz Quick Fix Synthetic Urine 6.3 plus bottle. Submitting fake pee instead of human urine is widely considered to be one of the most effective ways to pass urine tests that you would otherwise fail.
>
> If you recently consumed toxic substances, such as nicotine, Quick Fix is the best synthetic urine kit to help you pass. It is indistinguishable from human urine, even at a molecular level." See *ECF No 64*, p.29 (Ex. C).

Thus, Spectrum is in a business that is far from medical research. Instead, Spectrum is in the business of selling fake pee in violation of Texas Health & Safety Code §481.133 which makes distribution of such products a criminal offense punishable by imprisonment as a Class A misdemeanor. In other words, Spectrum is a criminal enterprise seeking protection from this Court under the false representation that it is in the medical research business.

It is also very important to note that from the start of this case URZ represented and produced evidence to show that its sales of Quick Fix products amount to less than

$10,000. Nevertheless, Spectrum repeatedly spewed false representations that URZ is a large distributor of counterfeit Quick Fix products. Now, Spectrum spent almost 6 hours thoroughly inspecting every inch of URZ's facilities and reviewed every one of URZ's records. In addition, Spectrum was given access to URZ's bank accounts, cell phones, emails, and computers. But, Spectrum has come out empty handed. Spectrum is unable to produce any evidence whatsoever that shows URZ sold more than it represented from the start of this case. More important, Spectrum is unable to produce any evidence whatsoever that the Quick Fix products that URZ did sell were counterfeits. It must not be overlooked by this Court that Spectrum has come out empty handed.

Even more important, it must be noted by this Court that in the process of executing the Court's Forensic Discovery Order, Spectrum went beyond mere copying and searching URZ's computers. Instead, Spectrum took URZ's computers apart, "fried" them, and returned them to URZ in a completely useless state with all the data completely gone. Nevertheless, Spectrum now makes a dubious allegation that one of URZ's computers was infected with a virus since 2017. Such is nonsensical. But when URZ's counsel inquired as to what was actually done to URZ's computers, Spectrum's counsel improperly responded as follows:

> "Spectrum has been working in good faith with URZ to obtain its compliance with the Court's numerous orders. It is clear that further email communications will not productive, which is why Spectrum filed its motion for sanctions." See *Teran Decl.,* Ex. P.

In fact, to date, Spectrum refuses to provide details as to what it did to URZ's computers. Such is dubious and must not be overlooked.

More egregious, Spectrum seeks sanctions against URZ because URZ refused to turn over its second computer to Spectrum for a period of seven (7) days. Somehow, Spectrum erroneously interprets the Court's Forensic Discovery Order to be a seizure order when, in fact, nothing in the Court's Order indicates it to be as such. Even more, Spectrum wishes to seize URZ's second computer without justification and after it already took apart URZ's other computer/server, fried it, and returned it without any data.

18

In fact, URZ requested a copy of the data that Spectrum extracted from URZ's computer/server as follows:

> "More important, given that your ESI vendor was able to retrieve URZ's sales data from the Inspiron computer, please provide us with a copy thereof. As you can imagine, URZ is in dire need of said data and now your ESI vendor is the only one that has possession of this data. Please confirm that you will provide us with a copy of said data promptly." See *Teran Decl.*, Ex. O.

But, to date, Spectrum still refuses to provide such copy leaving URZ completely without its data. Instead, Spectrum's counsel improperly responded as follows:

> "Spectrum has been working in good faith with URZ to obtain its compliance with the Court's numerous orders. It is clear that further email communications will not productive, which is why Spectrum filed its motion for sanctions." See *Teran Decl.*, Ex. P.

Such is not proper, especially since it is unknown exactly what data was taken from URZ's computer/server.

In addition, Spectrum wishes to sanction URZ because URZ failed to provide Spectrum access to its emails for a second time after Spectrum's ESI vendor had already been given access on August 8, 2024. Even more, Spectrum now wishes more than just mere access for searching and copying. Instead, Spectrum erroneously interprets the Court's Forensic Discovery Order to require URZ to essentially turn over its keys to its email accounts giving Spectrum the power to change URZ's email settings and install tracking processes that will monitor URZ's emails in perpetuity. Such is not permissible pursuant to the Court's Forensic Discovery Order. Assuming, arguendo, that Spectrum's ESI vendor failed to search and image URZ's emails on August 8, 2024, when he was given such access, then such constitutes waiver. See *U.S. v. Young,* 872 F.3d 742, 747 (5th Cir. 2017) (Waiver is the 'intentional relinquishment or abandonment of a known right). After all, the parties planned and agreed that all of URZ's ESI assets would be searched and imaged on August 8, 2024, and on said date Spectrum's ESI vendor was given access to URZ's emails for searching and copying. Spectrum cannot now return and demand a do-over because its ESI vendor forgot to search and image URZ's emails

when he was supposed to.

Accordingly, sanctions against URZ are not proper since URZ has complied with the Court's Forensic Discovery Order.

### III. CONCLUSION

Based on the foregoing, URZ respectfully requests this Court to deny Spectrum's motion for sanctions.

DATED:  September 20, 2024

By:_____

Louis F. Teran (Admitted *Pro Hac Vice)*
Email: lteran@slclg.com
California Bar No. 249494
SLC Law Group
1055 E. Colorado Blvd., Suite 500
Pasadena, CA 91106
Phone:  818-484-3217 x200
 ATTORNEY FOR URZ TRENDZ, LLC.