**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **SPECTRUM LABORATORIES, LLC.**, an | § | |
| Ohio Limited Liability Company. | § | |
| | § | |
| *Plaintiff,* | § | **CIVIL ACTION NO. 4:22-cv-03705** |
| | § | |
| **v.** | § | **JUDGE CHARLES ESKRIDGE** |
| | § | |
| **DOES #1-10,** | § | |
| | § | |
| *Defendants.* | § | |

**SPECTRUM'S OPPOSITION TO URZ'S
<u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

{00366325.DOCX}

## TABLE OF CONTENTS

I. NATURE AND STATE OF PROCEEDING ........................................................................... 1

II. BACKGROUND ................................................................................................................... 1

III. SUMMARY OF ARGUMENT ............................................................................................ 3

IV. LAW AND ARGUMENT .................................................................................................... 3

   A.   Legal Standard ................................................................................................................ 3

   B.   The Court should deny judgment to URZ on Spectrum's claim for counterfeiting under the Lanham Act (Count 3). ..................................................................................................... 4

      1.   The timing of URZ's motion is suspect. .................................................................. 5

      2.   Spectrum has stated a facially plausible claim for counterfeiting. ............................ 5

      3.   URZ's argument that the packaging of Quick Fix forecloses its use for urinalysis is nonsensical. ................................................................................................................... 6

   C.   The Court should deny judgment to URZ on Spectrum's claim for trademark infringement under the Lanham Act (Count 1) ............................................................................. 8

   D.   The Court should deny judgment to URZ on Spectrum's claim for common law trademark infringement (Count 6). ....................................................................................... 11

   E.   The Court should deny judgment to URZ on its unlawful use defense. .......................... 14

   F.   The Court should deny judgment to URZ on its unclean hands defense. ........................ 15

V. CONCLUSION ................................................................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amicus Communications, L.P. v. Hewlett-Packard Co., Inc.*,
No. CIV.A.SA–98CA1176PMA, 1999 WL 495921 (W.D. Tex. June 11,
1999) .................................................................................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................4

*Bagby Elevator Co. v. Schindler Elevator Corp.*,
609 F.3d 768 (5th Cir. 2010) ("Texas courts have long held that the
affirmative defense of unclean hands is available only in equity")...................................15, 16

*Bd. of Supervisors for Louisiana State Univ. Agricultural and Mechanical College*
v. *Smack Apparel Co.*,
550 F.3d 465 (5th Cir. 2008) ...........................................................................................9, 10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................................4

*BH Mgmt. Services, LLC v. B.H. Properties, LLC*,
No. 4:22-cv-837, 2023 WL 6323317 (E.D. Tex. Sept. 28, 2023).....................................9, 11

*ConocoPhillips Co. v. In-Depth Compressive Seismic, Inc.*,
No. 4:20-cv-04385, 2021 WL 1854516 (S.D. Tex. May 10, 2021) (Eskridge,
J.).......................................................................................................................................3

*Doe v. MySpace, Inc.*,
528 F.3d 413 (5th Cir. 2008) .............................................................................................3

*Guidry v. Am. Public Life Ins. Co.*,
512 F.3d 177 (5th Cir. 2007) .............................................................................................3

*Hanginout, Inc. v. Google, Inc.*,
54 F. Supp. 3d 1109 (S.D. Cal. 2014)................................................................................14

*Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*,
10 F.4th 422 (5th Cir. 2021) .............................................................................................11, 12

*L.E. Waterman Co. v. Gordon*,
72 F.2d 272 (2d Cir. 1934).................................................................................................9

*Metacluster LT, UAB v. Bright Data Ltd.*,
  No. 2:22-cv-011, 2022 WL 18859434, at *1 (E.D. Tex. Dec. 20, 2022)
  *adopted by* 2023 WL 416417 (E.D. Tex. Jan. 25, 2023) ........................................................7

*Phi Theta Kappa Honor Society v. Honorsociety.org, Inc.*,
  No. 3:22-cv-208, 2023 WL 2531731 (S.D. Miss. Mar. 15, 2023)............................................12

*Priester v. Long Beach Mortgage Co.*,
  No. 4:16-cv-00449, 2017 WL 3671378 (E.D. Tex. Feb. 3, 2017)............................................4

*Smith v. McMullen*,
  589 F. Supp. 642 (S.D. Tex. 1984) ........................................................................................3

*Trojan Batter Co. v. Trojan EV, LLC*,
  No. 4:21-cv-3075 (S.D. Tex. Mar. 28, 2024) (Hanks, J.) ........................................................8

*Turner v. Pleasant*,
  663 F.3d 770 (5th Cir. 2011) ..................................................................................................4

*University Loft Co. v. Blue Furniture Solutions, LLC*,
  No. 15-cv-826, 2017 WL 876312 (W.D. Tex. Mar. 3, 2017)......................................10, 12, 15

*Warrior Sports, Inc. v. Wilson Sporting Goods, Co.*,
  No. 22-11285, 2022 WL 16540666 (E.D. Mich. Oct. 28, 2022)............................................7, 8

*Yeti Coolers, LLC v. JDS Indus., Inc.*,
  300 F. Supp. 3d 899 (W.D. Tex. 2018)..................................................................................9, 10

*Yosemite Auto (Shanghai) Co. v. JRS Metals, Inc.*,
  No. 4:15-cv-1641, 2016 WL 4441543 (S.D. Tex. Aug. 23, 2016) .........................................15

*zuMedia Inc. v. IMDb.com, Inc.*,
  No. 23-cv-8472, 2024 WL 4566551 (S.D.N.Y. Oct. 24, 2024)................................................7

**Statutes**

15 U.S.C. § 1057(c) ....................................................................................................................13

Lanham Act.................................................................................................................... *passim*

**Other Authorities**

FEDERAL RULE OF CIVIL PROCEDURE 8(a)(2) ...............................................................................3

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) .................................................................. *passim*

FEDERAL RULE OF CIVIL PROCEDURE 12(c) ........................................................................3, 9, 10

**I.**
**NATURE AND STATE OF PROCEEDING**

Spectrum Laboratories, LLC ("Spectrum") files this Opposition to URZ Trendz, LLC's ("URZ") Motion for Judgment on the Pleadings (ECF 130), which URZ filed after the Court denied URZ leave to file a Motion for Summary Judgment. (ECF 129).

This case remains mired in discovery due to URZ's failure to obey this Court's Orders. In connection with same, Spectrum's Motion for Sanctions, and URZ's Motion to Disqualify, are set for oral hearing on December 13, 2024. (ECF 132). URZ has also filed a Petition for Writ of Mandamus, which is pending at the Fifth Circuit Court of Appeals.

**II.**
**BACKGROUND**

Spectrum will not burden the Court with a full procedural background of this case. However, the procedural background most pertinent to this motion follows.

URZ's involvement in this case began when it refused to respond to a simple document subpoena from Spectrum and misrepresented that it had no responsive documents. (*See* Mot. to Compel, ECF 45; 7/24/23 Discovery Letter to Court). URZ's subsequent repeated failures to comply with discovery and to obey the Court's orders resulted in the Court granting leave for Spectrum to add URZ as a defendant. (Motion to Amend, ECF 48). Almost 20 months later, URZ *still* has not fully complied with its discovery obligations, in violation of its discovery obligations generally, and multiple motions and court orders, and continues to refuse to provide Spectrum with access to its email accounts or to allow Spectrum adequate time to try and recover files from URZ's two computers that suspiciously "stopped working" just days before a Court-ordered ESI exam. (*See generally* Motion for Sanctions, ECF 122). These issues are explored in more detail by Spectrum's pending motion for sanctions (*id.*) and will be addressed at the hearing on December 13, 2024.

URZ first moved to dismiss Spectrum's complaint (a second amended complaint) on June 29, 2023. (ECF 56). The Court denied that motion and granted Spectrum leave to file a third amended complaint. (Order, ECF 63). Spectrum did so on August 30, 2023. (ECF 62). URZ did not move to dismiss that complaint, but instead answered it on September 13, 2023. (Answer, ECF 64). That was over 14 months ago.

While refusing to produce Court-ordered discovery to Spectrum, URZ moved for summary judgment, hoping to avoid production of incriminating evidence in discovery. (Mot. for SJ, ECF 103). However, Spectrum needs and is entitled to discovery from URZ to oppose summary judgment, and the Court correctly denied URZ's motion without prejudice. (Order, ECF 110).

On August 9, 2024, URZ again sought leave to move for summary judgment. (Mot., ECF 121). On October 10, 2024, the Court denied that motion because "It's apparent that a significant question exists at to URZ's compliance with discovery obligations, including this Court's prior ruling regarding ESI inspection and preservation. See Dkt 118. Those issues require resolution first." (Order, ECF 129).

URZ responded with a three-pronged attack. First, it petitioned again for a writ of mandamus, seeking to compel this Court to allow URZ to move for summary judgment before Spectrum obtains the Court-ordered discovery to which it is entitled. (URZ's Petition for Writ of Mandamus, *In re URZ Trendz, LLC*, No. 24-20497 (5th Cir.) (filed November 5, 2024)). The Fifth Circuit has not yet acted on that petition. Second, URZ moved to disqualify Your Honor for not allowing URZ to do whatever it wants. (Mot., ECF 131). Third, URZ filed this motion for judgment on the pleadings, which seeks judgment on many, if not all, of the same grounds on which it seeks summary judgment, in an obvious attempt to circumvent the order deferring

summary judgment and despite the pleadings deadline having passed over a year ago. (Mot., ECF 130).

For the reasons explained below, the Court should deny URZ's motion.

**III.**
**SUMMARY OF ARGUMENT**

The Court should deny URZ's motion for judgment on the pleadings (ECF 130). Spectrum has stated valid and facially plausible claims against URZ for counterfeiting and trademark infringement under the Lanham Act. Further, URZ's defenses of unlawful use and unclean hands are not legally correct and not appropriate for judgment on the pleadings when Spectrum's allegations must be presumed true and the pleadings construed in Spectrum's favor. The Court should deny URZ's motion accordingly.

**IV.**
**LAW AND ARGUMENT**

**A.    Legal Standard**

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

When "construing a motion for judgment on the pleadings, the Court is required to assume that the allegations of fact presented by the opposing party are true, and must further view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Smith v. McMullen*, 589 F. Supp. 642, 644 (S.D. Tex. 1984) (citations omitted); *accord Guidry v. Am. Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

Rule 8(a)(2) merely requires a complaint to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." *See ConocoPhillips Co. v. In-Depth Compressive Seismic, Inc.*, No. 4:20-cv-04385, 2021 WL 1854516, at *1 (S.D. Tex. May 10, 2021)

(Eskridge, J.). A complaint need only allege enough facts to move the claim "above the speculative level" and "across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Thus, dismissal is appropriate only if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Determining whether a claim meets this facial plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) (citation omitted).

The "inquiry focuses on the allegations in the pleadings and not whether the plaintiff actually has sufficient evidence to succeed on the merits." *Priester v. Long Beach Mortgage Co.*, No. 4:16-cv-00449, 2017 WL 3671378, at \*3 (E.D. Tex. Feb. 3, 2017) *quoting McCord v. Prudential Ins. Co. of Am.*, No. 1:10-cv-413, 2011 WL 3240486, at \*6 (E.D. Tex. July 1, 2011).

A dismissal for failure to state a claim is "viewed with disfavor and is rarely granted." *Turner v. Pleasant, 663 F.3d 770, 775* (5th Cir. 2011), as revised (Dec. 16, 2011) (*quoting Harrington v. State Farm Fire & Cas. Co.*, 563 F3d 141, 147 (5th Cir. 2009)).

**B.**    **The Court should deny judgment to URZ on Spectrum's claim for counterfeiting under the Lanham Act (Count 3).**

URZ seeks judgment on Spectrum's claim for "counterfeiting" under the Lanham Act (Count 3). URZ contends that, to prove counterfeiting, Spectrum must show that the goods in its federal trademark registration are intended for the same purposes as those to which the infringer applied the counterfeit mark. (*See* Motion for Judgment on the Pleadings ("MJP") at 8-9, ECF 130). URZ's hyper-technical argument is not supported by the law, the registrations, common sense, or the facts alleged.

1.    **The timing of URZ's motion is suspect.**

As a threshold matter, URZ raised this very same challenge over ___**fifteen months ago**___ in its Rule 12(b)(6) motion challenging Spectrum's Second Amended Complaint. (URZ Reply at 2-3, ECF 60). The Court denied that motion and granted Spectrum leave to amend its complaint. (Order at 2, ECF 63). Spectrum filed its Third Amended Complaint on August 30, 2023. (ECF 62). URZ did not challenge Spectrum's Third Amended Complaint as insufficient. Instead, it manifested a full understanding of Spectrum's claims and allegations by filing an answer on September 13, 2023. (ECF 64).

Given that URZ did not re-raise this challenge when Spectrum filed its Third Amended Complaint over 15 months ago, it is obvious that URZ's motion is not bona fide. Instead, it is a vexatious filing designed to run up Spectrum's legal fees, distract from URZ's steadfast refusal to produce the Court-ordered discovery that Spectrum has sought since March 2023, and circumvent this Court's order deferring summary judgment until after URZ complies with the Court's orders. The Court, therefore, should view URZ's motion, and its suspicious timing, with the skepticism that it deserves.

2.    **Spectrum has stated a facially plausible claim for counterfeiting.**

Assuming all of Spectrum's allegations are true, viewing them in a light most favorable to Spectrum, and deferring all fact questions until summary judgment or trial, Spectrum has stated a more than facially plausible claim for counterfeiting under the Lanham Act. Spectrum's complaint establishes that it owns a federal trademark registration for QUICK FIX that covers "synthetic urine." (Ex. 1 to 3d Am. Compl., ECF 62-1). And Spectrum's complaint alleges that URZ sold a counterfeit version of Spectrum's "Quick Fix" synthetic urine product. (3d Am. Compl. ¶ 10 (identifying "Quick Fix" as a "synthetic urine product"), ¶ 13 (alleging that the counterfeit product "bears a counterfeit Quick Fix Mark"), ¶ 16 (alleging that the counterfeit product "duplicates that

Quick Fix mark" and "contains synthetic urine"), ¶ 35 (alleging that URZ has "counterfeited, or assisted with counterfeiting the Quick Fix products" and/or "sold ... the Counterfeit Products"). Thus, even assuming URZ is correct about the law (despite no court in the Fifth Circuit applying the Lanham Act in this strict manner), Spectrum has alleged that URZ sold counterfeited goods that are the same goods identified by Spectrum's registration, namely "synthetic urine."

### 3.  URZ's argument that the packaging of *Quick Fix* forecloses its use for urinalysis is nonsensical.

URZ focuses on the registration's statement that the intended use of *Quick Fix* urine is "for urinalysis." URZ contends that Spectrum failed to state a claim because it claims *Quick Fix* is not for "urinalysis." (MJP at 11-12). This is nonsensical. Spectrum's QUICK FIX registration states that the *Quick Fix* synthetic urine product is intended "for urinalysis." And Spectrum alleges that URZ counterfeited that very *Quick Fix* synthetic urine product with the QUICK FIX mark on it. (3d Am. Compl. ¶¶ 13, 16, 35). Thus, Spectrum has plausibly alleged that URZ counterfeited a synthetic product for "urinalysis," namely *Quick Fix*.

URZ responds that *Quick Fix* (genuine or counterfeited) cannot be "for urinalysis" because the genuine and counterfeit boxes refer to the product as "novelty." (MJP at 12-13). Spectrum's *Quick Fix* product is "synthetic urine," so it obviously may be, and in fact is, used for urinalysis, regardless of the box identifying it as a "novelty" product. This is especially so because the pleadings must be construed in Spectrum's favor at this stage. URZ cites nothing in the pleadings that renders counterfeit *Quick Fix* unusable for urinalysis if the box describes it as "novelty." Those two facts are not mutually exclusive. Indeed, the U.S. Patent and Trademark Office recently approved a renewal of Spectrum's QUICK FIX trademark—the registration that identifies "urinalysis" as the intended use. And the "specimen" that Spectrum provided to the U.S. Patent & Trademark Office ("USPTO") (which is required to show use of the trademark consistent with the

goods' description) is the exact *Quick Fix* box that Spectrum alleges URZ counterfeited—the box that describes the product as "novelty synthetic urine." (*See* Specimen, att'd as **Ex. 1**) *See zuMedia Inc. v. IMDb.com, Inc.*, No. 23-cv-8472, 2024 WL 4566551, at *4 (S.D.N.Y. Oct. 24, 2024) (stating that USPTO requires specimen "showing the mark as actually used in commerce on or in connection with the goods or services identified" and considering specimen in deciding motion to dismiss). The Court may take judicial notice of the USPTO's records and consider them at the pleadings stage. *See Metacluster LT, UAB v. Bright Data Ltd.*, No. 2:22-cv-011, 2022 WL 18859434, at *1 (E.D. Tex. Dec. 20, 2022) *adopted by* 2023 WL 416417 (E.D. Tex. Jan. 25, 2023). Thus, the USPTO itself views the *Quick Fix* box's description of the product as "novelty" as consistent with the "urinalysis" use identified in Spectrum's registration. This forecloses URZ from asserting this defense; it does not trigger judgment in URZ's favor on the pleadings.

Moreover, URZ's theory is contrary to the common sense that Courts must apply in deciding such issues. URZ claims that an accused counterfeiter can stop a lawsuit at the pleading stage with self-serving arguments that it did not intend customers to use the counterfeited product in the same manner that the owner described in the registration. Not only does this violate the legal tenet that the plaintiff's allegations are assumed true, but it also would lead to the nonsensical result that a counterfeiter could escape liability with the self-serving testimony that it did not intend the counterfeited product to be used for the same purposes as the registrant. The law rightly grants no such immunity to an infringer, let alone at the pleading stage.

In the end, how Spectrum's registrations should be interpreted, the scope of Spectrum's trademark rights based on the goods' descriptions, how Spectrum uses its marks, and how the products are used (both the genuine and counterfeit products) are fact-intensive inquiries that require fact discovery and evidence and cannot be decided on the pleadings. *See Warrior Sports,*

*Inc. v. Wilson Sporting Goods, Co.*, No. 22-11285, 2022 WL 16540666, at *2-3 (E.D. Mich. Oct. 28, 2022) (denying Rule 12(b)(6) motion based on defendant's claim that its accused goods are different from those identified in registration's goods' description because the questions require "historical and evidentiary fact-probing inquiries" that cannot be answered conclusively on the pleadings). Indeed, URZ's citation to dictionary definitions (from outside the pleadings) for "novelty" simply confirms that the issue cannot be decided within the four corners of the pleadings, let alone dispositively.

Although URZ also challenges whether Spectrum's Q-Clock registration matches the *Quick Fix* product, the Court need not reach that issue because the counterfeiting of the QUICK FIX mark (addressed above) is enough to sustain Count 3. Regardless, judgment on the pleading as to the Q-Clock registration would be improper because it also presents fact issues that require more developed facts that are not appropriate for decision on the pleadings. *See Warrior Sports*, 2022 WL 16540666, at *2-3.

Because Spectrum has stated a plausibly facial claim for counterfeiting under the Lanham Act, the Court should deny URZ's motion for judgment on Count 3.

## C. The Court should deny judgment to URZ on Spectrum's claim for trademark infringement under the Lanham Act (Count 1).

URZ seeks judgment on Spectrum's trademark infringement claim (Count 1) by arguing that the goods' descriptions in Spectrum's federal registrations "are not related to the accused goods." (MJP at 13.) This argument is meritless, legally and factually.

Legally, trademark infringement does <u>not</u> require that the goods described in the federal registrations be identical to the accused goods. *See Trojan Batter Co. v. Trojan EV, LLC*, No. 4:21-cv-3075, at *14 (S.D. Tex. Mar. 28, 2024) (Hanks, J.) ("the remedies of the owner of a registered trademark are not limited to the goods specified in the certificate, but extend to any goods on which

the use of an infringing mark is likely to cause confusion") (*quoting Continental Motors Corp. v. Continental Aviation Corp*., 375 F.2d 857, 861 (5th Cir. 1967)). For example, in affirming that the WATERMAN trademark for pens was infringed by defendant's use of WATERMAN for razor blades, the renowned Judge Learned Hand stated: "It is now well settled in this country that a trademark protects the owner against not only its use upon the articles to which he has applied it, but upon such other goods as might naturally be supposed to come from him." *L.E. Waterman Co. v. Gordon*, 72 F.2d 272, 273 (2d Cir. 1934).

The law remains the same throughout the U.S., including in the Fifth Circuit, where courts must consider and weigh the similarity of the goods as *just one* of the several non-exhaustive "likelihood of confusion" digits or factors. *See Bd. of Supervisors for Louisiana State Univ. Agricultural and Mechanical College* v. *Smack Apparel Co*., 550 F.3d 465, 478 (5th Cir. 2008) (identifying eight digits of confusion). The digits of confusion are all fact-based, and thus not appropriate for disposition on a Rule 12(c) motion. *See Yeti Coolers, LLC v. JDS Indus., Inc.*, 300 F. Supp. 3d 899 (W.D. Tex. 2018) ("Whether these [alleged] facts will ultimately be enough to prove a likelihood of confusion is not the inquiry at this stage, the Court's task is only to consider whether YETI's allegations are sufficient to make it more than merely speculative that the company might be entitled to relief.").

"At the motion to dismiss stage, the court—without having to consider each factor—asks only whether there are sufficient facts to state a plausible claim of consumer confusion." *BH Mgmt. Services, LLC v. B.H. Properties, LLC*, No. 4:22-cv-837, 2023 WL 6323317, at *3 (E.D. Tex. Sept. 28, 2023) *quoting Varsity Spirit LLC v. Varsity Tutors, LLC*, No. 3:21-cv-432, 2022 WL 1266030, at *6 (N.D. Tex. Apr. 28, 2022).

URZ has not cited a single case in which a court decided that the goods were so dissimilar that likelihood of confusion was foreclosed, let alone at the pleadings stage. Indeed, URZ's assertion directly contradicts Fifth Circuit precedent that "[n]o single [confusion] factor is dispositive, and a finding of a likelihood of confusion need not be supported by a majority of the factors." *Bd. of Supervisors*, 550 F.3d at 478. Thus, even if the goods were dissimilar (which they are not), Spectrum still could prove infringement at trial by presenting evidence favoring the other digits of confusion. *See University Loft Co. v. Blue Furniture Solutions, LLC*, No. 15-cv-826, 2017 WL 876312, at *7 (W.D. Tex. Mar. 3, 2017) (rejecting defendants' Rule 12(c) argument that marks are so dissimilar that confusion is not possible because "no single factor is dispositive").

Spectrum has more than stated a plausible case of likelihood of confusion by pleading that URZ intentionally copied Spectrum's *Quick Fix* synthetic urine product and trademarks with intent to confuse. (3d Am. Compl. ¶ 10, 16, 17, 32-33, 35, 38, 40, 47, ECF 62). Spectrum's complaint also provided photographs that show the accused product is an exact duplicate of Spectrum's genuine product with exact duplicates of Spectrum's trademarks on the packaging (*id.* ¶ 17 and ECF 62-3 (photos)), which alone makes its likelihood of confusion allegation facially plausible. *See Yeti*, 300 F. Supp. 3d at 905-906 (relying on photographs of accused infringing products attached to complaint as making a likelihood of confusion allegation more than speculative). Spectrum's complaint provides further allegations that favor other digits of confusion, including allegations that support strength of Spectrum's marks (3d Am. Compl. ¶ 11, 13) and actual confusion (*id.* ¶ 19 (URZ's counterfeits confused a Texas retailer), 39)).

Although the Q-Clock registration does not identify synthetic urine, the goods it identifies, *e.g.*, "chemical compositions and agents for detoxifying medial and clinical urine samples," covers "chemicals" related to "urine." Thus, the registered goods are similar enough to synthetic urine

(also a chemical) to state a facially plausible case of infringement, especially in light of the other confusion factors that Spectrum's allegations favor.

In the end, URZ's position that selling exact duplicates of Spectrum's *Quick Fix* product with duplicates of Spectrum's trademarks on them would not confuse customers is meritless, let alone arguing it is impossible for Spectrum to prove confusion between those visually identical products based on the pleadings alone. Because likelihood of confusion is a fact-based inquiry, Spectrum has alleged more than enough facts to plead a plausible and non-speculative claim for infringement, and thus it is not proper to decide the likelihood of confusion question on the pleadings. *See Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 430 (5th Cir. 2021) (reversing district court dismissal of trademark claim under Rule 12(b)(6)); *BH Mgmt.*, 2023 WL 6323317, at *3 (denying Rule 12(b)(6) motion).

**D.    The Court should deny judgment to URZ on Spectrum's claim for common law trademark infringement (Count 6).**

URZ next argues that Spectrum failed to properly plead ownership of common law (aka, unregistered) trademarks under Count 6. Again, the fact that URZ answered Spectrum's third amended complaint over 15 months ago and did not raise this challenge then strongly belies URZ's brand new claim of a pleading defect. Nonetheless, Spectrum pleaded ownership of common law rights to its QUICK FIX and Q-Clock marks well beyond mere speculation. (*See* 3d Am. Compl. ¶8-10, 77).

Acknowledging that Spectrum pleaded "ownership," URZ claims Spectrum needed to do more: plead detailed facts supporting "seniority" and "market penetration"—fact issues that are sometimes, but not always, at issue in a trademark dispute and that may impact the scope of plaintiff's trademark rights. (MJP at 17). URZ relies entirely on decisions from within the Ninth Circuit. Courts within the Fifth Circuit, however, do not require a plaintiff to specifically plead

those underlying fact issues, but merely require a plaintiff to plead ownership of a legally protectable mark and infringement, which Spectrum has done. *See Adler*, 10 F.4th at 426 (requiring plaintiff to plead only that "plaintiff possesses a legally protectable trademark"); *Phi Theta Kappa Honor Society v. Honorsociety.org, Inc.*, No. 3:22-cv-208, 2023 WL 2531731, at *4 (S.D. Miss. Mar. 15, 2023) ("plaintiff must show ownership of a legally protectable mark"); *Univ. Loft*, 2017 WL 876312, at *5 (same).

As to seniority, URZ acknowledges that Spectrum alleges it is the "senior user of the marks." (MJP at 17.) URZ contends that Spectrum has a heightened burden to plead "facts as to when it started to use the marks and in connection with which goods or services." (*Id.*). URZ, however, does not cite any case holding that such detailed factual allegations must be made in the complaint, let alone a case dismissing a trademark claim on that basis. There is especially no need for Spectrum to plead the specific dates of first use for each mark because there is no question that Spectrum used its marks prior to URZ counterfeiting them. This, after all, is a counterfeiting case where Spectrum alleges that URZ duplicated Spectrum's trademarks and product specifically to fool customers. It is not a situation where URZ adopted a similar trademark, and the parties dispute whether that mark is too similar and who used its mark first. One can only counterfeit preexisting marks.

As to market penetration, URZ does not cite any caselaw within the Fifth Circuit requiring that a plaintiff specifically plead that it has obtained "market penetration" in the relevant regions. And Spectrum has looked but not found any case from within this Circuit supporting such a requirement.

Rather than asserting a seniority challenge or market penetration defense to counterfeiting, URZ's defense—for over a year—has been its outright denial of being involved in or responsible

for the counterfeiting of *Quick Fix*. URZ does not contend that it adopted any of Spectrum's marks before Spectrum penetrated the Texas market. URZ claims it never used the marks at all—period. If URZ had any doubts or concerns about seniority or market penetration, it could have and would have served discovery requests seeking detailed information about when Spectrum first used each mark, where, and in connection with what goods. The fact that URZ never sought such discovery, despite having over a year of discovery time, further confirms that these are not real issues in the case. URZ's belated seniority and market penetration challenges are needless busywork to try and deflect attention away from its ongoing violations of this Court's discovery orders. The Court should reject them accordingly.

Nonetheless, while unnecessary, Spectrum's trademark registrations, attached to and incorporated in the complaint, do further establish dates of first use and market penetration for the QUICK FIX and Q-Clock marks. The registrations state the dates of first use:  by at least 12/31/1999 for the QUICK FIX mark, *see* ECF 62-1, and by at least 4/30/2017 for the Q-Clock mark, *see* ECF 62-2. Those registrations provide Spectrum with constructive use of the marks throughout the U.S., including Texas. *Amicus Communications, L.P. v. Hewlett-Packard Co., Inc.*, No. CIV.A.SA–98CA1176PMA, 1999 WL 495921, at *4 n.42 (W.D. Tex. June 11, 1999) ("After registration, the application filings, whether based on actual use or on intent to use, become **nationwide** 'constructive' use of the mark for priority. 15 U.S.C. § 1057(c).") (emphasis added).

Moreover, Spectrum has pleaded that URZ counterfeited Spectrum's marks in Texas. (3d Am. Compl. ¶ 5). Obviously, no one would counterfeit marks unless they are recognized and popular in the region where they are sold. Thus, when construing the complaint in a light most favorable to Spectrum, it is more than reasonable to infer from Spectrum's allegations of

counterfeiting that the Spectrum marks have seniority and market penetration in Texas, otherwise there would be no reason for URZ to have counterfeited those marks in Texas.

Thus, Spectrum has pleaded ownership of valid trademarks beyond the speculative level. If the Court, however, believes that Spectrum needed to plead dates of first use and market penetration with more detail, then Spectrum requests leave to add those allegations to its complaint by amendment. This is a simple matter—and a suggestion that URZ's counsel rejected during the meet-and-confer call—because the California case on which URZ relies endorsed a simple allegation that the mark has "achieved market penetration through the United States and, at a minimum, in California" as sufficient. *See Hanginout, Inc. v. Google, Inc.*, 54 F. Supp. 3d 1109, 1136 (S.D. Cal. 2014). Spectrum can easily add such a truthful allegation with respect to Texas, but respectfully submits that it is unnecessary, especially given that URZ has had no issue litigating the case for over a year based on the current pleading.

**E.    The Court should deny judgment to URZ on its unlawful use defense.**

URZ seeks judgment in its favor on its first and second counterclaim, which seek declarations of invalidity of Spectrum's trademarks based on URZ's allegations of unlawful use. (MJP at 18). The Court already addressed this issue, and the parties' respective arguments, when Spectrum moved for judgment in its favor on this defense under Rule 12(b)(6). (ECF 67, 74, 77, 78). The Court ruled then that the defense "require[s] discovery to properly resolve," and will be "aided by development of the factual record." (Order at 2, ECF 78). The Court should deny URZ's motion for the same reason now: the defense cannot be decided on the pleadings and requires discovery.

The Court should further deny URZ's motion for the reasons that Spectrum offered in its briefing on its motion to dismiss, including that the unlawful use defense has never been recognized in the Fifth Circuit, Spectrum's product has lawful uses, no government or law

enforcement agency has declared Spectrum's product illegal, and the QUICK FIX mark is incontestable. (*See* Spectrum MTD at 6-10, ECF 67). Moreover, fact issues regarding legality foreclose judgment for URZ at this stage, especially because URZ bears the burden of proof on its defense, and Spectrum's denial that its product is illegal must be accepted as true (*see* Answer ¶ 16-18, 21-22, ECF 82). *See Univ. Loft Co.*, 2017 WL 876312, at *5 n.4 ("At a preliminary stage it is plainly improper for a court to consider cancellation of a mark, as it would turn on numerous factual questions, and the facts are not yet before the court.").

Lastly, URZ's arguments rely heavily on allegations from its own Counterclaim and exhibits to its Counterclaim. (*See* Mot. 20-21). But Spectrum denied those allegations and denied that at least two of the advertisements attached to URZ's counterclaim (Ex. C and F) were Spectrum's. (*See* Spectrum Answer ¶¶ 6-19, ECF 82). So those URZ allegations and documents are treated as false and cannot be considered. Because *Quick Fix* must be assumed legal at this stage based on Spectrum's denials, the defense cannot prevail on the pleadings.

The Court should deny URZ's motion seeking judgment on the unlawful use defense.

## F.    The Court should deny judgment to URZ on its unclean hands defense.

URZ seeks judgment on its unclean hands defense based on its argument that Spectrum sells an illegal product. (MJP at 22-23). The Court should deny this request for at least four reasons.

First, as a legal matter, URZ does not cite any case that applied the unclean hands defense to immunize counterfeiters from civil liability based on the trademarked product being illegal, and URZ does not offer any compelling reasons for doing so here.

Second, the unclean hands defense is merely a defense to "equitable relief," and thus it has no bearing on Spectrum's request for money damages. *See Bagby Elevator Co. v. Schindler Elevator Corp.*, 609 F.3d 768, 774 (5th Cir. 2010) ("Texas courts have long held that the affirmative defense of unclean hands is available only in equity"); *see also Yosemite Auto*

*(Shanghai) Co. v. JRS Metals, Inc.*, No. 4:15-cv-1641, 2016 WL 4441543, at \*8 (S.D. Tex. Aug. 23, 2016) ("the unclean hands doctrine is an affirmative defense to equitable relief").

Third, URZ cannot benefit from an unclean hands defense because, assuming Spectrum's allegations are true (as required at this stage), URZ is a willful counterfeiter. That dirties URZ's hands (as does URZ's multiple violations of discovery orders), making it ineligible for an unclean hands defense in equity. *See Bagby Elevator Co.*, 609 F.3d at 774 (the "clean hands doctrine requires that one who seeks equity, does equity") (*quoting Dunnagan v. Watson*, 204 S.W.3d 30, 41 (Tex. App. 2006)).

Fourth, Spectrum's answer denies that its product is illegal, the Court must accept that denial as true at this stage, and the assumed *legality* of the product defeats URZ's unclean hands defense because URZ bases it entirely on its allegation of illegality.

## V.
## CONCLUSION

For these reasons, the Court should deny URZ's motion.

DATED: December 2, 2024                    Respectfully submitted,

By: */s/ David B. Cupar*
    David B. Cupar (*pro hac vice*)
    *Attorney in Charge*
    Ohio Bar No. 71622
    dcupar@mcdonaldhopkins.com
    Matthew J. Cavanagh (*pro hac vice*)
    Ohio Bar No. 79522
    mcavanagh@mcdonaldhopkins.com
    **MCDONALD HOPKINS LLC**
    600 Superior Avenue, East
    Suite 2100
    Cleveland, Ohio 44114
    Telephone: 216.348.5400
    Facsimile: 216.348.5474

By: */s/ Courtney Ervin*
    Courtney Ervin
    Texas Bar No. 24050571
    SDTX No. 611093
    cervin@hicks-thomas.com
    **HICKS THOMAS LLP**
    700 Louisiana St., Suite 2000
    Houston, Texas 77002
    Telephone: 713.547.9100
    Facsimile: 713.547.9150

**ATTORNEYS FOR PLAINTIFF SPECTRUM LABORATORIES, LLC**

## **CERTIFICATE OF WORD COUNT**

In accordance with Section 18(c) of the Court's procedures, I certify that this document contains 4,948 words, exclusive of the caption, signature block and certificates of service and conference.

*/s/ Courtney Ervin*
Courtney Ervin

## **CERTIFICATE OF SERVICE**

Service of this document on all counsel was accomplished automatically through the Court's Notice of Electronic Filing on December 2, 2024.

*/s/ Courtney Ervin*
Courtney Ervin