| | | |
|---|---|---|
| SPECTRUM LABORATORIES, LLC, <br> Plaintiff, | | **Case No. 4:22-CV-03705** |
| v. | | **Hon. Judge Charles Eskridge** |
| URZ TRENDZ, LLC, <br> Defendant. | | **JURY TRIAL DEMANDED** |

## DEFENDANT'S MOTION FOR CLARIFICATION, RECONSIDERATION, AND EXTENSION OF TIME

Defendant URZ Trendz, LLC ("URZ") hereby submits this Motion for Clarification, Reconsideration, and Extension of Time ("Motion"). Concurrent with this Motion, URZ submits the declaration of Louis F. Teran ("Teran Decl.").

## I.     INTRODUCTION

On December 17, 2024, this Court issued a discovery order requiring URZ to provide Plaintiff Spectrum Laboratories, LLC ("Plaintiff") access to multiple email accounts, an external drive, some inoperable systems, and some operable systems. See *Dkt. No. 142.* URZ complied with the Court's order and then filed a Motion for Leave to File a Motion for Summary Judgment. See *Dkt. No. 145.* Then on February 6, 2025, this Court denied URZ's motion and issued another order requiring URZ "to provide the subject 'external drive' and comply with the specific instructions of ℙ1 of the recent, previous Order." See *Dkt. No. 151.*

However, URZ contends that it has fully complied with the Court's Order dated December 17, 2024. See *Dkt. No. 145.* More specifically, URZ explains its compliance in detail in its Motion for Leave to File a Motion for Summary Judgment. See *Dkt. No. 145.* Then in its Order dated February 6, 2025, the Court states as follows:

1

"A recent motion by Defendant has also been reviewed, which explains its perspective on the discovery compliance issues while seeking leave to file a motion for summary judgment."  See *Dkt. No. 151*.

But, the Court does not explicitly hold that URZ was not compliant with the Court's order dated December 17, 2024.  Even more, the Court does not explain whether or how URZ's actions fell short of full compliance with the Court's order.  Nevertheless, the Court's February 6, 2025 Order now requires URZ to comply again with ₱1 of the December 17, 2024 Order (Dkt. No. 142, at 2) and with "Dkt. 150 at 3".  See *Dkt. No. 151*.

Therefore, URZ believes that there is some confusion with URZ's compliance or that there is something ambiguous or vague with the Court's Order dated December 17, 2024.  Thus, URZ hereby files this Motion seeking clarification.  But, URZ does NOT file this Motion with an intent to cause undue delay or burden on Plaintiff.  Instead, URZ files this Motion seeking clarification of the Court's Orders in good faith to fully understand them and to be able to fully comply with the same as URZ intends to do.

Accordingly, URZ hereby respectfully requests this Court to clarify specific portions of the Court's December 17, 2024 Order, as discussed in detail below.  In addition, URZ respectfully requests this Court to reconsider its December 17, 2024 Order based on new evidence.  Finally, URZ respectfully requests this Court to extend the time for compliance with the Court's Orders until after the Court provides the clarifications requested in this Motion.

## II.     URZ REQUESTS CLARIFICATION OF THE COURT'S ORDERS DKT. NO. 151 AND DKT. NO. 142

"The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend."  See *United States v. Philip Morris USA, Inc.,* 793 F.Supp.2d 164, 168 (D.D.C. 2011).  Clarification regarding language used in a court order is a permissible ground for such a motion.  See *Id.*

As discussed in detail below, Defendant hereby requests this Court to clarify its Order issued on February 6, 2025 (Dkt. No. 151) and its Order issued on December 17, 2024 (Dkt. No. 142).

**A.** **Is the Court Ordering URZ To Provide False Verification To The Third-Party Email Account Providers?**

On February 6, 2025, this Court issued an order expressly stating, in relevant part, as follows:

> "Defendant is further ordered to…comply with the specific instructions of ¶1 of the recent, previous Order." See *Dkt. No. 151* (referencing *Dkt. No. 142, ¶1, at 2).*

In addition, on December 17, 2024, this Court issued an order expressly stating, in relevant part, as follows:

> "URZ shall provide the passwords, keys, codes, and all other information necessary for access to each [email] account to the ESI vendor.
> …
> If, following the completion of subparts (i-ii), above, the ESI vendor requires any other access information, URZ shall provide same immediately." See *Dkt. No. 142, ¶1, at 2.*

As discussed in URZ's Motion for Leave to File a Motion for Summary Judgment (Dkt. No. 145), URZ provided all passwords and other credentials to access all of the email accounts to Plaintiff's ESI vendor. In fact, such was acknowledged by Plaintiff as follows:

> "In the afternoon of December 18, URZ sent a letter to Spectrum's ESI vendor containing the email accounts and passwords… In the letter, URZ represented that two-factor authentication and other credentials were not needed to access the accounts." See *Dkt. No. 150, at 2.*

Thus, it is undisputed that URZ complied with the Court's order to provide all passwords and credentials to access the email accounts. However, Plaintiff explained that its ESI vendor was unable to gain access to the email accounts because further verification was required, beyond the password and other credentials. Plaintiff explained this as follows:

> "When Spectrum's ESI vendor attempted to collect the accounts, he was confronted with verification requests. See screenshots below as an example:" See *Dkt. No. 150, at 12.*

Said screenshots are shown below:



Therefore, the verification information that was needed to access the email accounts was NOT a password, a two-step authentication code, or any security credential set by URZ or any of the email account owners.  Instead, the verification required came directly from the email account provider.  The pictures above show that the email account provider is Google.  Thus, Google sought a special verification that was NOT a password, or a code set by the account owner.  Instead, Google was seeking a "Verify It's You" verification.  In fact, the screenshot above unambiguously states as follows:

"Google wants to make sure it's really you trying to sign in."

Therefore, this is a security measure established by Google, not URZ or any of the email account owners.  In addition, URZ does not have any ability to control or deactivate the security measures set by Google or any email account provider.  Therefore, there is nothing that URZ or any of the email account owners could have done or can do to lawfully bypass this security measure established by Google.

However, the Court's Order dated February 6, 2025, now orders URZ to comply with Dkt. No. 142, ¶1, at 2, once again.  As such, URZ hereby seeks clarification as to what else is URZ required to do beyond providing all passwords and other credentials to access the email accounts.  In a good faith attempt to understand the Court's Order, URZ turns to Dkt. No. 142, ¶1(b)(iii), at 3, which states as follows:

"If, following the completion of subparts (i-ii), above, the ESI vendor requires any other access information, URZ shall provide same immediately."

4

It is important to note that after URZ provided the credentials to access the email accounts on December 18, 2024, Plaintiff never requested "any other access information" from URZ. Instead, in response to an email from URZ's counsel, Plaintiff's counsel indicated that the email accounts were not accessed because of the verification that was requested by the email provider. See *Dkt. No. 150, at 12.* It is reasonable that Plaintiff's ESI vendor understood the verification step to be required by the email provider, not due to anything that URZ did or could have done. Thus, URZ was never requested to provide "any other access information" as required by Dkt. No. 142, ₱1(b)(iii), at 3. In fact, immediately upon receiving the email from Plaintiff's counsel regarding the verification, URZ's counsel emailed Plaintiff's counsel as follows:

> "I received authorization for me to be the point person for the issue with verification of email accounts. Per my email below, let me know which are the email accounts that still need to be accessed and we can start the process of verifying. I look forward to your prompt response." See *Dkt. No. 150, at 11.*

It is further important to note that Plaintiff never responded to this email seeking the required verification. After all, it is clear that providing such verification would not be proper since it was not the email account owners trying to access the email accounts, rather it was Plaintiff's ESI vendor.

For this reason, URZ hereby seeks clarification as to what else was URZ required to do beyond providing all passwords and other credentials to access the email accounts, especially when "any other access information" was never requested by Plaintiff pursuant to Dkt. No. 142, ₱1(b)(iii), at 3.

Such clarification is important because the Court issued its Order dated February 6, 2025, requiring URZ to repeat its compliance with Dkt. No. 142, ₱1, at 2. See *Dkt. No. 151.* To be clear, although URZ objects with the Court's order, URZ intends to fully comply with the same. Therefore, pursuant to the Court's Order, URZ will provide Plaintiff the passwords and other credentials to access the email accounts for a second time. However, it is reasonably anticipated that, once again as it occurred the first time, Plaintiff's ESI vendor will encounter the same verification required by the email

provider.  More specifically, Plaintiff's ESI vendor will likely encounter the same "Verify It's You" screen shown above.  Thus, URZ hereby requests this Court to clarify what it expects URZ and the other owners of the email accounts to do when this happens.

More specifically, when Plaintiff's ESI vendor encounters the "Verify It's You" screen, the email provider will send a numeric code to the phone of the owner of the email account.  That numeric code has to then be entered into the "Verify It's You" screen to verify or explicitly represent to the email provider that it is the owner of the email account, and nobody else, trying to access the email account.  Thus, URZ hereby requests this Court to clarify as to what it expects URZ and the other owners of the email accounts to do when this happens.

URZ and the other owners of the email accounts reasonably interpret this verification requirement established by the email provider as being a clear indication by the email provider that it does not grant permission to access the email accounts that reside in its servers and other equipment to anyone other than the owners of the email accounts.  Thus, URZ and the other owners of the email accounts are reasonably concerned that providing the required verification allows Plaintiff's ESI vendor to access the email accounts and to the email provider's servers or other equipment without the email provider's authorization.  Therefore, URZ and the other owners of the email accounts are reasonably concerned that providing such false verification to allow Plaintiff's ESI vendor into such servers and other equipment will cause the email provider to cancel the email accounts or seek damages against URZ and the other owners of the email accounts.  After all, such verification would be false since it would be Plaintiff's ESI vendor rather than URZ or the other email account owners that would access the email accounts.

Thus, URZ respectfully requests this Court to clarify if it is ordering URZ and the other owners of the email accounts to provide Plaintiff's ESI vendor the numeric code sent by the email provider, thus, misrepresenting or falsely verifying to the email provider that it is the email owner trying to access the email account, when, in fact, Plaintiff's ESI vendor is doing so.

**B.      Is The Court Precluding URZ From Being Represented By Counsel?**

On December 17, 2024, this Court issued an order expressly stating, in relevant part, as follows:

> "URZ shall provide the contact information for the person with care, custody, and control of each email account, and with access to all contemporaneously generated access information necessary to access the accounts." See *Dkt. No. 142, ¶1, at 2-3.*

Then on February 6, 2025, this Court issued an order expressly stating, in relevant part, as follows:

> "Defendant is further ordered to…comply with the specific instructions of ¶1 of the recent, previous Order." See *Dkt. No. 151* (referencing *Dkt. No. 150,* at 3 and *Dkt. No. 142, ¶1, at 2).*

However, Dkt. No. 150 at 3 does not provide any instructions. Instead, Dkt. No. 150 at 2 erroneously states as follows:

> "Further, the vendor had no way to contact a URZ representative with access to the verification codes, because URZ had refused to provide the contact information of those representatives." See *Dkt. No. 150, at 2.*

In fact, on December 19, 2024, URZ's counsel informed Plaintiff's counsel as follows:

> "I received authorization for me to be the point person for the issue with verification of email accounts. Per my email below, let me know which are the email accounts that still need to be accessed and we can start the process of verifying. I look forward to your prompt response." See *Dkt. No. 150, at 11.*

It is important to note that Plaintiff never responded to this email with the information requested. Nevertheless, Plaintiff seems to assert that URZ must provide the names and contact information of the owners of the email accounts so that Plaintiff can contact them directly at any time without the presence of counsel. Even more, Plaintiff seems to indicate that URZ cannot designate its attorney or another representative for this process.

Accordingly, URZ respectfully requests this Court to clarify if the Court's Orders preclude URZ and the other email account owners from being represented by counsel or from designating a representative for purposes of this judicial process.

**C.     Is The Court Ordering URZ to Compel Third Parties To Comply With the Court's Order?**

On December 17, 2024, this Court issued an order expressly stating, in relevant part, as follows:

> "URZ shall provide the contact information for the person with care, custody, and control of each email account… The person(s) shall be available for contact by, and shall coordinate with the ESI vendor until the completion of this order. The person(s) identified pursuant to this paragraph shall cooperate fully with the ESI vendor in providing access information to the email accounts in a timely manner."  See *Dkt. No. 142, ¶1, at 2-3*.

Then on February 6, 2025, this Court issued an order expressly stating, in relevant part, as follows:

> "Defendant is further ordered to…comply with the specific instructions of ¶1 of the recent, previous Order."  See *Dkt. No. 151* (referencing *Dkt. No. 150,* at 3 and *Dkt. No. 142, ¶1, at 2).*

However, both Orders by the Court are explicitly directed at URZ.  But the language in the Court's Order appears to be directed at the "person(s)" identified by URZ.  On the other hand, the letter referenced by the Court's Order (Dkt. No. 150) appears to indicate that it is URZ's responsibility to ensure that said "person(s)", who are third-parties to this action, comply with the Court's Order.

Therefore, URZ respectfully requests this Court to clarify if the Court's Order requires URZ to compel said third-parties to comply with the Order or if the Order is, instead, directed at said third-parties rather than URZ.

**D.     Is The Court Ordering URZ to Produce an "External Drive" That It Does Not Possess or Exist?**

The Court's Order dated December 17, 2024, states as follows:

"URZ shall locate, preserve, and turn over to the ESI vendor the external drive identified as 'HP Flash 256' which was plugged into URZ's Dell Inspiron 3459 system on July 29, 2024." See *Dkt. No. 142, ⁋4, at 6.*

Thus, pursuant to the Court's December 17, 2024 Order, URZ provided the declaration of Muhammad Usman Ghafoor, a representative of URZ, who expressly declared as follows:

"After a thorough and diligent search, I did not find any external drive that was branded or identified with the 'HP' brand or mark and that was in the possession, custody, or control of URZ on or around July 29, 2024." See *Dkt. No. 145-1, ⁋4, at 10.*

Even more, Mr. Ghafoor declared that a Google search indicates that "an 'HP Flash 256' device does not exist." See *Dkt. No. 145-1, ⁋5, at 11.* Further, Mr. Ghafoor provided evidence that the "HP Flash 256" identified in the Court's Order is a printer, not an external drive. See *Dkt. No. 145-1, ⁋9, at 11.*

Thus, based on URZ's diligent search, it has been unable to locate an "external drive" identified as "HP Flash 256". Nevertheless, on February 6, 2025, the Court Ordered URZ to "provide the subject 'external drive'." See *Dkt. No. 151.*

Accordingly, URZ respectfully requests this Court to clarify as to how URZ can produce such "external drive" when it does not have such device in its possession, custody, or control. Even more, how can URZ provide such device when it does not exist?

## III. URZ REQUESTS RECONSIDERATION OF THE COURT'S ORDERS BASED ON NEW EVIDENCE INDICATING THAT URZ DID NOT INFRINGE OR COUNTERFEIT THE ASSERTED TRADEMARKS

A district court has inherent power to reconsider its orders. See *Fernandez-Vargas v. Pfizer*, 522 F.3d 55 (1st Cir. 2008). Courts will find justification for reconsidering orders where there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice. See *Louisville/Jefferson County Metro Government v. Hotels.com, L.P.*, 590 F.3d 381 (6th Cir. 2009). A grant of reconsideration is appropriate where the court has

9

misapprehended the facts, a party's position, or the controlling law. See *Fed. R. Civ. P. 59(e)*. See also *Barber v. Colorado Dept. of Revenue*, 562 F.3d 1222 (10th Cir. 2009).

In the present case, Plaintiff alleges that URZ infringed or counterfeited its asserted trademarks. See *Complaint.* Thus, in discovery, URZ propounded the following Request for Production of Documents:

> "REQUEST NO. 78: Any and all DOCUMENTS that support YOUR allegation that PROPOUNDING PARTY infringed/counterfeited any of the TRADEMARKS." See *Teran Decl.,* Ex. A.

In addition, URZ propounded the following interrogatory:

> "INTERROGATORY NO. 24: Identify all facts that support YOUR allegation that PROPOUNDING PARTY infringed/counterfeited any of the TRADEMARKS." See *Teran Decl.,* Ex. B.

In response to these discovery requests, Plaintiff did not produce any documents whatsoever and instead asserted baseless objections followed by this statement:

> "As stated in Spectrum's complaint, URZ and its attorney's evasive response to Spectrum's subpoena (including denying sale of Quick Fix), and URZ's ongoing refusal to produce complete sales information for Quick Fix sales and purchases provides Spectrum with more than enough information to believe that URZ is an active and willful participant in the counterfeiting of Quick Fix. Additionally, URZ's defense in this action that it is legally allowed to counterfeit Quick Fix because it is allegedly 'unlawful' further evidences that URZ is counterfeiting or selling counterfeit Quick Fix." See *Teran Decl.,* Ex. B, p.2.

Then, on February 4, 2025, URZ's counsel sent a meet and confer letter to Plaintiff's counsel seeking the information requested by URZ's discovery requests. See *Teran Decl.,* Ex. C. Unfortunately, on February 11, 2025, Plaintiff's counsel responded with an audacious refusal to provide any facts or evidence whatsoever that support Plaintiff's allegations in this action. See *Teran Decl.,* Ex. D.

Essentially, after months of extensive discovery on URZ, Plaintiff has been given access to URZ's bank accounts, Plaintiff has physically inspected every inch of URZ's facilities from top to bottom, Plaintiff has thoroughly inspected each and every one of URZ's records, and Plaintiff has thoroughly inspected URZ's cell phones and computers.

Despite such extensive discovery against URZ, Plaintiff is entirely unable to provide a single fact or document that supports its allegations that URZ infringed or counterfeited the asserted trademarks.  Even more, the best that Plaintiff can provide is a mere hunch improperly based on URZ's lawful assertion of its rights pursuant to the Federal Rules of Civil Procedure.  More specifically, Plaintiff bases its allegations on URZ's proper objections made to Plaintiff's subpoena and on URZ's counterclaims in this action.  Such amounts to nothing more than a baseless hunch, not facts or evidence that support Plaintiff's allegations.  It is unimaginable that Plaintiff continues with its allegations despite its inability to provide any supporting facts after months of such extensive discovery and investigation of URZ.  Plaintiff's inability to produce any facts that support its allegations at this stage of this action indicates that Plaintiff is now proceeding with this case against URZ in bad faith.

Accordingly, URZ respectfully requests this Court to reconsider its discovery orders based on this new evidence that Plaintiff is unable to produce any facts or evidence that support its allegations.  In the interest of justice, this Court must demand Plaintiff to meet its burden of proof required for the type of forensic discovery that this Court has ordered.  Before, proceeding with its discovery orders, this Court must demand Plaintiff to produce some facts or evidence that supports Plaintiff's allegations that URZ infringed or counterfeited the asserted trademarks.  After all, courts have routinely held that "mere skepticism that an opposing party has not produced all relevant information" and "a mere desire to check that the opposition has been forthright in its discovery responses" are not sufficient reasons to warrant drastic discovery measures like forensic examination.  See *NOLA Spice Designs, LLC v. Haydel Enterprises, Inc*., 12-cv-2515, 2013 WL 3974535, at *2 (E.D. La. Aug. 2, 2013) (quoting John B. v. M.D. Goetz, Jr., 531 F.3d 448, 459-60 (6th Cir. 2008) and *Memry Corp. v. Kentucky Oil Technology, N.V*., 04-cv-3843, 2007 WL 832937, at *3 (N.D. Cal. Mar. 19, 2007)).  Even more, the Supreme Court has held that "discovery sought upon suspicion, surmise, or vague guesses [was] called a fishing bill and [would] be dismissed."  See *Carpenter v. Winn*, 221 U.S. 533, 540 (1911).

**IV.     URZ REQUESTS THIS COURT TO EXTEND THE TIME FOR COMPLIANCE WITH ITS FEBRUARY 6, 2025, ORDER UNTIL AFTER THE RESOLUTION OF THIS MOTION**

The Rules provide that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time…with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires." See *Fed.R.Civ.P. 6(b)(1)(A)*. The Court "has discretion to grant timely requests for extensions [under Rule 6(b)(a)]. See *Woodruff v. McPhie,* 593 F.Supp.2d 272, 276 (D.D.C. 2009).

In the present case, the Court's Order dated February 6, 2025, requires URZ's compliance by February 21, 2025. See *Dkt. No. 151.* However, good cause exists to extend such date of compliance based on the requests for clarification discussed above. More specifically, based on the foregoing, the Court's Order is ambiguous and requires clarification so that URZ can fully comply with the same as it intends to do. Without resolution of this Motion or without the requested clarification of the Court's Order, URZ does not fully understand how to comply, especially since URZ contends that it has already complied with the Court's Order dated December 17, 2024.

Accordingly, URZ respectfully requests this Court to extend the time for compliance with the Court's Order, until after the resolution of this Motion. More specifically, until after the Court provides the clarifications requested above.

**V.     CONCLUSION**

Based on the foregoing, URZ respectfully requests this Court to clarify its Orders dated February 6, 2025, and December 17, 2024, as discussed in detail above. Secondly, URZ respectfully requests this Court to reconsider its orders based on the new evidence presented above. Finally, URZ respectfully requests this Court to extend the time for compliance with the  Orders until after the Court provides the clarifications requested above.

DATED:  February 13, 2025

By:_____

Louis F. Teran (Admitted *Pro Hac Vice)*
Email: lteran@slclg.com
California Bar No. 249494
SLC Law Group
1055 E. Colorado Blvd., Suite 500
Pasadena, CA 91106
Phone:  818-484-3217 x200

ATTORNEY FOR URZ TRENDZ, LLC.