IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **SPECTRUM LABORATORIES, LLC,** § | |
| § | |
| *Plaintiff,* § | |
| § | **CIVIL ACTION NO. 4:22-cv-03705** |
| v. § | |
| § | **JUDGE CHARLES ESKRIDGE** |
| **URZ TRENDZ, LLC A/K/A FLY FRESH** § | |
| **SMOKE,** § | |
| § | |
| *Defendants.* § | |

## SPECTRUM'S MOTION FOR ATTORNEYS' FEES AND COSTS

Pursuant to the Court's February 6, 2025 Order (Dkt. 151), Spectrum submits this Motion for Attorneys' Fees and Costs against URZ, all URZ owners individually including Muhammad Ghafoor, and its counsel, Louis Teran.

**I. INTRODUCTION**

The Court has previously ordered URZ six different times to comply with discovery obligations, including providing and preserving ESI discovery, yet URZ has failed to timely and fully comply with those orders.

The Court's February 6, 2025, Order expressly permits Spectrum to seek attorneys' fees and costs incurred in connection with attempting to collect ESI discovery from URZ and its counsel since the May 3, 2024 ESI Order.

URZ and Teran have failed to comply with the February 6, 2025 Order because they still have not: (1) provided "the subject 'external drive'"; or (2) complied with "the specific instructions of ¶1" of the December 17, 2024 Order to provide Spectrum's ESI vendor with access to the email accounts. (Dkt. 151.) URZ and its counsel could have complied with the February 6, 2025 Order with little time and effort, but deliberately failed to do so. URZ and its counsel's failure is a

continuation of their consistent failures to comply with the Court's numerous discovery orders, including but not limited to the Court's May 3, 2024 ESI Order.

Spectrum has incurred substantial fees and costs due to URZ's and its counsel's noncompliance. Spectrum's attorneys' fees of $328,728.95 and costs of $49,649.72 are reasonable given the extent of URZ's and Teran's misconduct. Spectrum's recovery of these fees and costs is appropriate. The Court should grant Spectrum's motion.

## II. NATURE AND STAGE OF PROCEEDINGS

On February 6, 2025, the Court issued its Order terminating the scheduling order in this action and permitting Spectrum to bring motions to recover attorneys' fees and costs and to strike URZ's claims and defenses and enter default judgment against it. (Dkt. 151.) The deadline for compliance was February 21, 2025. (*Id.*) Instead of complying with the Court's Order, URZ and its counsel filed a motion for clarification (Dkt. 152) and wrote a letter to Spectrum alleging perceived deficiencies in Spectrum's discovery responses (Dkt. 155, at 34-38). Spectrum responded, asking whether URZ intended to comply with the Court's February 6 order. (*Id.* at 39.) Instead, URZ and its counsel wrote a lengthy letter to the Court, requesting permission to file a motion to compel *Spectrum's* response to perceived discovery deficiencies. (*Id.*) Spectrum sent a responsive letter to the Court, noting that the deadline for compliance with the Court's order had at this point expired without URZ or its counsel's compliance, and indicating Spectrum's intention to bring the present motion for attorneys' fees and costs.

## III. STATEMENT OF ISSUES REQUIRING RESOLUTION

Spectrum's attorneys' fees of $328,728.95 and costs of $49,649.72 are reasonable and appropriate, especially in light of URZ's dilatory and obstructionist actions. URZ, its counsel Louis

Teran, and Muhammad Usman Ghafoor should be held liable, jointly and severally, for such fees and costs, which were the direct result of their improper actions.

**IV. FACTS NECESSARY TO THE RESOLUTION OF THE ISSUES**

The record demonstrates that URZ and Teran have violated seven Court Orders regarding the production and preservation of ESI: (1) the Court's August 29, 2023 Order (Dkt. 63); (2) the Court's November 29, 2023 Order (Dkt. 80); (3) the Court's May 3, 2024 Order (Dkt. 97; Dkt. 111); (4) the Court's June 21, 2024 Order to preserve evidence (Dkt. 118); (5) the Court's July 5, 2024 Order (Dkt. 120); (6) the Court's December 17, 2024 Order (Dkt. 142); and (7) the Court's February 6, 2025 Order (Dkt. 151). The 661.05 hours identified in this motion are for hours incurred since May 3, 2024, when the Court issued its first ESI Order. (Dkt. 111.)

Instead of simply complying with the law and producing discovery, URZ and its counsel have spent an astonishing amount of effort, time, and expense resisting discovery. Specifically, URZ and its counsel chose the following path:

- URZ and Teran misrepresented to the Court that URZ did not have any responsive documents pertaining to Quick Fix (Dkt. 83-1). When Spectrum showed that this was false because URZ was selling Quick Fix, URZ then merely produced six pages of responsive documents followed by 47 additional pages, none of which contained any emails or communications (Dkt. 59, 81, 83.)

- URZ and Teran filed two writs of mandamus to the Fifth Circuit challenging the Court's ESI discovery order, the latter of which the Fifth Circuit dismissed without briefing. (*See* Dkt. 112); Ex. C, Docket for Petition filed Nov. 5, 2024.

- URZ and Teran failed to make URZ's computers available to the ESI vendor for inspection by the June 24, 2024 deadline for compliance with the May 3, 2024 ESI Order. (Dkt. 112, 118, 119.)

- Then, when the parties agreed to a new August 8, 2024 inspection date, URZ for the first time stated that its computers no longer worked and one of them was corrupted by a malware virus just days before that inspection. (Dkt. 122-4; 122-1 at ¶¶ 6-8.)

- URZ and Teran moved to disqualify the presiding Judge. (Dkt. 131.)

3

- Spectrum and URZ Trendz, LLC ("URZ") appeared before the Court on Friday December 13, 2024 on Spectrum's Motion for Sanctions. (Dkt. 122.) On December 17, 2024, the Court ordered an Order Granting Motion for Sanctions in Part (Dkt. 142), which ordered that outstanding and additional ESI discovery be completed. URZ has failed to provide access to its 14 email accounts, failed to turn over the external drive, and even resorted to threatening Spectrum's ESI vendor. (Dkt. 146-6; 150.)

- On February 6, 2024 the Court ordered URZ to comply with its previous discovery orders, to "*completion*", by no later than February 21, 2025. (Dkt. 151.) Instead of even *attempting* to comply, URZ filed a motion for clarification repeating its same failed arguments (Dkt. 152), wrote a deficiency letter to Spectrum, and wrote a letter to the Court requesting permission to file a motion to compel. (Dkt. 155.)

**V. LEGAL STANDARD**

"Courts have the authority to issue sanctions for discovery abuses under Rule 26 and Rule 37 of the Federal Rules of Civil Procedure, as well as the court's inherent power to protect against fraud on the judicial process." *Abarca v. Houston Indep. Sch. Dist.*, No. 4:21-CV-04143, 2023 WL 8461197, at *2 (S.D. Tex. Oct. 16, 2023) (Eskridge, J.). "Courts must apply Rule 37 sanctions for failure to comply with a discovery order 'diligently both to penalize those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Id.* (citation omitted).

"[T]he court must order the disobedient party, the attorney advising that party, ***or both*** to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

Furthermore, under Rule 37(b), "[i]f a party or a party's officer, director, or managing agent… fails to obey an order to provide or permit discovery… the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). "'[A] party may be personally liable for reasonable expenses including attorney's fees ***caused*** by the failure to comply with a

4

discovery order.'" *Abarca*, 2023 WL 8461197, at *2 (citing *Batson v Neal Spelce Associates, Inc.*, 765 F.2d 511, 516 (5th Cir 1985) (emphasis in original, internal citation omitted)).

"Awarding attorney's fees and expenses is viewed by the Fifth Circuit as one of the least severe remedies afforded by Rule 37(b)." *Trenado v. Cooper Tire & Rubber Co.*, 274 F.R.D. 598, 600 (S.D. Tex. 2011) (citing *Chilcutt v. United States*, 4 F.3d 1313, 1322, 1320 n.17 (5th Cir. 1993)). Consistent with that evaluation, a finding of bad faith is not required for an award of attorneys' fees under Rule 37. *See NRT Texas LLC v. Wilbur*, No. 4:22-CV-02847, 2024 WL 233229, at *5 (S.D. Tex. Jan. 22, 2024). Rather, Rule 37 encourages courts to be vigilant in policing discovery abuses by requiring an award of expenses when a party lacks substantial justification for resisting discovery. *Id.*

The Fifth Circuit approves of the "lodestar method" to calculate attorney's fees, which involves multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work. *Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002) (citing *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999)). To support an award of Rule 37 sanctions the affidavit of counsel can serve as proof of the amount to be awarded. *Id.* (citing *Shipes v. Trinity Indus.*, 987 F.2d 311, 323–24 (5th Cir.), *cert. denied*, 510 U.S. 991 (1993)); *Trenado*, 274 F.R.D. at 601.

District courts in Texas have applied the lodestar method to award prejudiced parties high amounts of attorneys' fees and costs based on the other party violating discovery orders. *See, e.g., Kostic v. Texas A&M Univ.-Commerce*, No. 3:10-CV-2265-M, 2015 WL 9997211, at *9 (N.D. Tex. Dec. 28, 2015) (awarding $433,745 in attorneys' fees for discovery violations); *Thermotek, Inc. v. Orthoflex, Inc.*, No. 3:10-CV-2618-D, 2016 WL 6330429, at *11 (N.D. Tex. Oct. 27, 2016) (awarding $247,556 in fees and costs based on discovery violations); *Hoffman v. L & M Arts,* No.

5

3:10-CV-0953-D, 2015 WL 3999171, at *8 (awarding $202,477 in fees for discovery violations); *Miller v. Raytheon Co.*, No. 3:09-CV-440-O, 2013 WL 6838302, at *12 (N.D. Tex. Dec. 27, 2013) (awarding $141,484 in fees); *Wherley v. Schellsmidt*, No. 3:12-CV-0242-D, 2014 WL 3513028, at *7 (N.D. Tex. July 16, 2014) (awarding $71,695 in fees); *Fabela v. City of Farmers Branch, Tex.*, No. 3:10-CV-1425-D, 2013 WL 2655071, at *9 (N.D. Tex. June 13, 2013) (awarding $194,125 in fees and $75,000 in costs for discovery violations).

## VI. ARGUMENT

### A. The 661.05 hours Spectrum's counsel spent are reasonable.

Spectrum presents the declarations from its lead counsel, David B. Cupar, and from local counsel, D. Ryan Cordell Jr., as support to identify the 661.05 hours Spectrum's attorneys spent on dealing with URZ and Teran's repeated refusals to comply with the Court's ESI and preservation orders. Ex. A, Declaration of David Cupar, ¶¶ 9-11; Ex. B-1, Declaration of D. Ryan Cordell Jr.; Ex. B-2, Hicks Thomas Billing Records for Fees and Costs.

The 661.05 hours Spectrum's counsel spent is reasonable based on the circumstances. URZ and its counsel have engaged in a persistent pattern of obstruction, delaying discovery and forcing Spectrum to incur unnecessary legal expenses since May 3, 2024. As disclosed in detail in Spectrum's prior August 8, 2024 Motion for Sanctions (Dkt. 122), and Opposition to URZ's Motion for Leave to File Summary Judgment and Cross-Motion for Sanctions (Dkt. 146), URZ and its counsel have willfully refused to comply with discovery obligations, including failing to provide access to relevant ESI materials, obstructing the discovery process, and making misrepresentations to the Court. *See also* Section IV, *supra*. There is no justification for URZ and Teran's refusal to comply, or the 661.05 hours they caused Spectrum's counsel to work based on that non-compliance.

If URZ's claims that it did not counterfeit Spectrum's products and infringe Spectrum's trademarks were true, URZ could have presumably demonstrated so with little expense and effort by simply participating in good faith in discovery from the outset of this litigation. Similarly, URZ most recently had the opportunity to substantiate its claims with little expense and effort by simply providing Spectrum's ESI vendor with: (1) the "external device"; and (2) two-factor authentication to access URZ's email accounts. In both cases, URZ and its counsel have refused.

Further, the 661.05 hours Spectrum's lawyers spent defending Spectrum based on URZ and Teran's violation of ESI and preservation orders since May 3, 2025 is consistent with other findings by Texas district courts. *See, e.g., Kostic*, 2015 WL 9997211, at *9; *Thermotek,* 2016 WL 6330429, at *11; *Hoffman,* 2015 WL 3999171, at *8; *Miller*, 2013 WL 6838302, at *12; *Wherley*, 2014 WL 3513028, at *7; *Fabela*, 2013 WL 2655071, at *9 (all awarding lodestar fees and costs for violation of discovery orders).

Therefore, the 661.05 hours from Spectrum's lawyers are reasonable.

**B.** **Spectrum Counsel's Hourly Rates Are Reasonable**

Spectrum counsel's hourly rates are also reasonable. The Cupar Declaration identifies the hourly billing rates for each McDonald Hopkins attorney for the work performed since May 3, 2024. Ex. A, Cupar Dec., ¶¶ 10, 13-19. For the McDonald Hopkins attorneys—David Cupar, Matthew Cavanagh, and Benjamin Foote-Huth—each are intellectual property attorneys whose 2024 billing rates are at or below the mean 2022 billing rates for attorneys with the same experience. *Id.* at ¶¶ 14-16 (citing Ex. 5, 2023 AIPLA Economic Survey at 28, 32). Courts have found the AIPLA Economic Survey as evidence supporting reasonable hourly rates. *Mathis v. Spears*, 857 F.2d 749, 755–56 (Fed. Cir. 1988) (billing rates "generally corresponded to those presented in the [AIPLA] surveys and were [thus] reasonable in view of those surveys" was, "as

the law makes clear," appropriate); *Jepson, Inc. v. Makita USA, Inc.*, No. CV 90–4312–GHK, 1994 WL 543226, at *11 (C.D. Cal. May 27, 1994) (such surveys are perhaps "the best way" to determine the reasonableness of billing rates); *Marctec, LLC v. Johnson & Johnson*, No. 07–cv–825–DRH, 2010 WL 680490, at *11 (S.D. Ill. Feb. 23, 2010), *aff'd*, 664 F.3d 907 (Fed. Cir. 2012) (weighing reasonableness of attorneys' fees against those in AIPLA survey); *Bendix Commercial Vehicle, Sys., LLC v. Haldex Brake Prods. Corp.*, No. 1:09 CV 176, 2011 WL 871413, at *3 (N.D. Ohio Mar. 1, 2011) (attorneys' fees sought by plaintiffs not appropriate with those in AIPLA survey). Therefore, the billing rates for the McDonald Hopkins lawyers are reasonable.

Likewise, the billing rates for the Hick Thomas attorneys Courtney Ervin and D. Ryan Cordell, Jr. are reasonable. Based upon the analysis of Geoffrey L. Harrison in his attached declaration and the facts and case law cited therein, Ervin and Cordell's rates and hours in this litigation are reasonable given their experience and the facts of this case. Ex. B, Declaration of Geoffrey L. Harrison.

Furthermore, the District Court for the Western District of Texas recently approved a blended hourly rate of $551 as reasonable. *Human Power of N Company v. Bryan*, No. A-21-CV-811-ADA, 2023 WL 9007814, at *5 (W.D. Tex. Dec. 4, 2023). Applying the same such calculation to the work performed by the attorneys in this case—dividing $328,728.95 by 661.05 hours—we arrive at an effective rate of approximately $497.28 per hour, which is even more favorable than the court-approved rate in *Human Power of N Company*.

### C.   Fees against URZ's Principal Ghafoor and Counsel Teran Are Appropriate

Sanctions against URZ's counsel, Louis Teran, and its principal, Muhammad Ghafoor, are warranted given their direct and willful roles in obstructing discovery, violating multiple court orders, and engaging in sanctionable misconduct.

Under Rule 37(b)(2)(C), an attorney advising a party who disobeys a discovery order can be personally liable for reasonable attorneys' fees and costs caused by the failure to comply. Teran has repeatedly misrepresented URZ's compliance to this Court, withheld critical discovery, and devised obstructionist tactics that have prolonged these proceedings. His conduct goes beyond zealous advocacy and into outright defiance of this Court's discovery orders. Teran personally refused to provide necessary access to URZ's ESI, failed to disclose custodians for 14 email accounts, and intentionally imposed unreasonable 24-hour deadlines that made compliance impossible. (Dkts 146, at 5-7; 146-1; 146-7, ¶¶ 28, 30, 31, 33, 36-38.) His threats of litigation against Spectrum's ESI vendor were not only baseless but calculated to intimidate a third party from complying with a Court-ordered process. (*Id.*) The record shows that Teran knowingly and deliberately obstructed discovery, making personal sanctions against him both necessary and appropriate.

Likewise, URZ's principal, Muhammad Usman Ghafoor, has willfully disregarded his obligations under multiple court orders. Public business records demonstrate that Ghafoor is the sole member and director of URZ. Ex. D. It follows then that Ghafoor has custody and control over all of URZ's devices and accounts. Ghafoor knew all about the Court's December 17, 2024 Order because he block cited to it in his declaration:

> 2. I am a representative of URZ and I have personal knowledge of the matters set forth below, and if called as a witness, I would and could competently testify thereto.
>
> 3. Section 4(a) of the Order states as follows:
> "URZ shall locate, preserve, and turn over to the ESI vendor the external drive identified as 'HP Flash 256' which was plugged into URZ's Dell Inspiron 3459 system on July 29, 2024"

(Dkt. 145-1, at 10-11.) Because Ghafoor not only cited, but block quoted, the Court's December 17, 2024 Order in his declaration as "representative of URZ", he had knowledge of that Order,

9

including producing the external drive, and the "names and contact information" of each of the email account holders in Section 1 of that Order. In fact, Ghafoor, as principal of URZ, had possession, custody or control of, for example, the "URZTRENDS@GMAIL.COM" email account, and knew that he had to provide his employees' name and contact information based on his knowledge of the December 17, 2024 Order; he simply chose not to do so. (*See* Dkt. 122-2.) Therefore, Ghafoor was complicit in ensuring that URZ would not comply with the Court's December 17, 2024 Order by the December 20, 2024 deadline, or the Court's subsequent deadline of February 21, 2025 in the Court's February 6, 2025 Order.

Ghafoor's personal wrongdoing as a principal on behalf of URZ goes back to the beginning of this litigation. As the individual with ultimate control over URZ's business records and data, Ghafoor has engaged in a pattern of deception—initially claiming that URZ possessed no relevant documents, then revising that representation to claim it had only six pages of documents, and later producing only 47 additional pages, despite being under repeated court orders to disclose more. (Dkts 59, 81, 83.) His role in the spoliation of two URZ computers—devices that became "inoperable" just days before a scheduled forensic inspection—is particularly egregious. Ex. E, Expert Report of Aaron Hughes and Attachment 4 thereto. The ESI expert's analysis of unallocated data in the computer that was corrupted by a malware virus showed that there were "tens of thousands of hits to Quick Fix references" in the now inaccessible data. (Dkt. 146-7, ¶ 44); Ex. E.

Courts have found the timing of data loss, the information contained in unallocated space, and the circumstances surrounding the data loss to be powerful evidence of intentional spoliation. *See, e.g.*, *First Sr. Financial Group LLC v. Watchdog*, No. 12–cv–1247, 2014 WL 1327584, at *7 (E.D. Pa. Apr. 3, 2014) (imposing sanctions because unallocated space of defendant's computer indicated relevant information was destroyed); *Folino v. Hines*, No. 17-1584, 2018 WL 5982448,

10

at *3 (W.D. Pa. Nov. 14, 2018) ("Finally, the timing of the destruction of the data on the Devices—at the conclusion of the parties' negotiation of an offer to settle by Plaintiff contingent on Defendant Ly's willingness to have a forensic examination performed on those same Devices—evinces bad faith."); *Goldrich v. City of Jersey City*, No. 15-885, 2018 WL 4489674, at *1–2 (D.N.J. Sep. 19, 2018) (imposing sanctions because claim that 'virus' wiped data was false).

Courts recognize spoliation as a grave offense warranting severe sanctions, including personal liability, particularly where the evidence was under a court-ordered preservation duty. *Calsep, Inc. v. Intellgient Petroleum Software Sols.*, LLC, No. 4:19-CV-1118, 2021 WL 1729169, at *4 (S.D. Tex. Apr. 29, 2021), *report and recommendation adopted sub nom.*, 2021 WL 3493153 (S.D. Tex. Aug. 6, 2021). Ghafoor's actions deprived Spectrum of critical data relating to URZ's sales and infringement activities, causing irreparable prejudice to Spectrum's case.

Ghafoor's personal involvement also includes non-compliance with the June 21, 2024 preservation Order (Dkt. 118), by failing to safeguard crucial ESI. For example, when Spectrum's vendor was able to identify that someone at URZ inserted an HP drive into one of URZ's computers that then had malware on the eve of inspection, Ghafoor submitted a false declaration through Teran to the Court on December 22, 2024. (Dkt. 145-1.) In that declaration, he states under oath that he couldn't find what an HP Flash 256 drive was when he ran a Google search, and that the device inserted into that computer must have been a printer, not a memory drive. (*Id.* at ¶ 5.) That is demonstrably false. Spectrum's own ESI vendor prepared and served a September 30, 2024 Report three months earlier where he identified that it was a drive:

> On July 29, 2024 an external drive was plugged in to the system.
>
> This drive is identified by the system as "HP Flash 256". This drive was not mentioned, nor was it presented for inspection. I have included a list of the activity logged by that external drive to this report, as 'Electronic Attachment 4'.

11

Ex. E. Encryption of the computer by the malware virus was completed just days later. (*Id.*) ("The encryption process ran through August 1, 2024 - again based on the same 'modified/accessed/created' operating system metadata."). The data entries for the flash drive identifies it as "Drive Type 2", which corresponds to removable memory devices such as thumb or flash drives:

> 10. The system identifies the device volume as "HP Flash 256", and the device drive type as "Drive Type 2". This device type is known to be a designation for a 'Removable Storage Media' (for example: USB storage, Floppy, etc.). This has already been presented in my prior expert report as "Electronic-Attachment-4-202406-Hicks-Spectrum-URZ-1004-HP_Flash-Thumbdrive.csv". I have included it with this affidavit as "01-Electronic-Attachment-4-202406-Hicks-Spectrum-URZ-1004-HP_Flash-Thumbdrive.csv".
>
> 11. This attachment was generated from analysis of "LNK" files. These are very important artifacts used by forensic analysts in researching external drive usage, as well as file movement.
>
> 12. Because of the volume label, and the very specific designation as a removable storage device (not a printer), we know that it is a removable storage device, and not a printer as Mr. Ghafoor states.

(Dkt. 146-7.) In fact, Spectrum's ESI vendor went so far as to identify the specific serial number for that drive — "0xbe22b59a" — in the September 30, 2024 Report, and again in the January 13, 2025 Expert Affidavit:

## Attachment 1

"01-Electronic-Attachment-4-202406-Hicks-Spectrum-URZ-1004-HP_Flash-Thumbdrive.csv"

| 2024-07-29T09:22:12.95951 9+00:00 | Creation Time | LNK | Windows Shortcut | File size: 4096 File attribute flags: 0x00000010 Drive type: 2 Drive serial number: 0xbe22b59a Volume label: Hp_Flash 256 Local path: E:\\NEW USERS\\EndlessPOS-T1 Link target: <My Computer> E:\\NEW USERS\\EndlessPOS-T1 | olecf/olecf_automatic_destinations/lnk | OS:/Users/Admin/AppData/Roaming/Microsoft/Windows/Recent/AutomaticDestinations/f01b4d95cf55d32a.automaticDestinations-ms | - |

(*Id.* (highlight added).) URZ's own computer record of an HP 256 "Drive Type 2" removable drive, with Model Number "HP x900W" and Serial Number "0xbe22b59a", contradicts Ghafoor's false, unsupported declaration that this was not a drive entered into that computer. (*Id.*)

Both Teran and Ghafoor acted in bad faith, employing deliberate and coordinated tactics to prevent Spectrum from obtaining relevant discovery, violating seven court orders in the process.

Courts do not require a showing of bad faith to impose personal sanctions under Rule 37(a) and (b), but even if such a showing were required, Teran and Ghafoor's actions exceed mere negligence and rise to the level of willful, contumacious misconduct. Their continued refusal to provide access to ESI, blatant misrepresentations to the Court, and calculated efforts to frustrate discovery are precisely the type of conduct for which personal sanctions are designed.

Given the extent of their obstructionist conduct, this Court should hold Teran and Ghafoor personally liable for Spectrum's attorneys' fees and costs along with URZ incurred from May 3, 2024, through the present.

## VI. CONCLUSION

For the foregoing reasons, Spectrum respectfully requests that this Court grant this Motion for Attorneys' Fees and Costs against URZ, Muhammed Usman Ghafoor, and its counsel, Louis Teran, and enter such further relief as this Court deems just and proper.

13

DATED: March 7, 2025                    Respectfully submitted,

By: */s/ David B. Cupar*
    David B. Cupar (*pro hac vice*)
    *Attorney in Charge*
    Ohio Bar No. 71622
    dcupar@mcdonaldhopkins.com
    Matthew J. Cavanagh (*pro hac vice*)
    Ohio Bar No. 79522
    mcavanagh@mcdonaldhopkins.com
    **MCDONALD HOPKINS LLC**
    600 Superior Avenue, East
    Suite 2100
    Cleveland, Ohio 44114
    Telephone: 216.348.5400
    Facsimile: 216.348.5474

By: */s/ D. Ryan Cordell, Jr.*
    Courtney Ervin
    Texas Bar No. 24050571
    SDTX No. 611093
    cervin@hicks-thomas.com
    D. Ryan Cordell, Jr.
    Texas Bar No. 24109754
    SDTX No. 3455818
    rcordell@hicks-thomas.com
    **HICKS THOMAS LLP**
    700 Louisiana St., Suite 2000
    Houston, Texas 77002
    Telephone: 713.547.9100
    Facsimile: 713.547.9150

**ATTORNEYS FOR PLAINTIFF SPECTRUM LABORATORIES, LLC**

## CERTIFICATE OF WORD COUNT

In accordance with Section 18(c) of the Court's procedures, I certify that this document contains 3681 words, exclusive of the caption, signature block and certificates of service and conference.

            */s/ David B. Cupar*

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2025 a true and correct copy of this Response was served on all counsel of record via the Court's ECF Noticing System.

            */s/ David B. Cupar*