IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SPECTRUM LABORATORIES, LLC, § § *Plaintiff,* § § v. § § URZ TRENDZ, LLC A/K/A FLY FRESH § SMOKE, § § *Defendants.* § § | CIVIL ACTION NO. 4:22-cv-03705 JUDGE CHARLES ESKRIDGE |

**SPECTRUM'S MOTION FOR TERMINATION SANCTIONS
AND ENTRY OF DEFAULT JUDGMENT**

Plaintiff Spectrum Laboratories, LLC ("Spectrum"), pursuant to Federal Rules of Civil Procedure 37(b) and 37(e) and the Court's February 6, 2025 Order (Dkt. 151), moves this Court for litigation-ending sanctions against Defendant URZ Trendz LLC ("URZ"), for its willful and repeated violations of this Court's discovery orders.

**I. INTRODUCTION**

For over two years, URZ and its counsel have engaged in a non-stop campaign of discovery abuse, repeatedly ignoring this Court's directives, failing to produce ordered discovery, allowing evidence to be destroyed despite the Court's preservation order, and engaging in bad faith conduct to obstruct Plaintiff's ability to obtain relevant evidence that has severely prejudiced Spectrum. Neither the Court nor Spectrum should be forced to "wait on a hope and a prayer" for URZ or its counsel to comply with their discovery and preservation obligations under the Federal Rules of Civil Procedure and the Court's Orders. *See Abarca v. Houston Indep. Sch. Dist.*, No. 4:21-cv-04143, 2023 WL 8461197, at *2 (S.D. Tex. Oct. 16, 2023) (Eskridge, J.) (granting sanctions motion to dismiss suit based on repeated discovery non-compliance).

## II. NATURE AND STAGE OF PROCEEDINGS

Despite URZ's repeated refusals to comply the Court still provided URZ and its counsel one more chance to comply by February 21, 2025. (Dkt. 151.) The Court ordered them to: (1) produce the "external device" and (2) ensure Spectrum's ESI vendor access to all of the email accounts in accordance within Section 1 of the December 17, 2024 Order. (*Id.*) If URZ did not comply by February 21, 2025, the Court allowed Spectrum to move for terminating sanctions. (*Id.*) URZ did not attempt to comply with this final deadline. Spectrum now submits the present motion.

## III. ISSUES REQUIRING RESOLUTION

This Court should grant litigation-ending sanctions against URZ, for its willful and repeated violations of this Court's discovery orders, for its spoliation, for submitting a false affidavit to the Court claiming that ESI it was ordered to preserve did not exist, and for its record of contumacious conduct going back to the very outset of this litigation.

## IV. FACTUAL BACKGROUND

URZ and its counsel have repeatedly refused to comply with at least seven discovery-related orders the past two years: (1) August 29, 2023 Order (Dkt. 63); (2) November 29, 2023 Order (Dkt. 80); (3) February 13, 2024 Order (Dkt. 97); (4) May 3, 2024 discovery order (Dkt. 111); (4) June 21, 2024 Order requiring the preservation of ESI (Dkt. 118); (5) July 5, 2024 Order (Dkt. 120); (6) December 17, 2024 Order (Dkt. 142); and (7) February 6, 2025 Order (Dkt. 151).

Despite its obligations under both the Federal Rules of Civil Procedure and those orders, URZ: (1) has not produced a single email in this case (Dkt. 122; 146), (2) withheld authentication credentials for those emails (*id.*), (3) failed to preserve key evidence including computers and ESI files on those computers (Dkt. 145-1; 146; 146-7), (4) inexplicably allowed two of its computers to become inoperable just before a scheduled forensic inspection (Dkt. 122-4; 122-1, at ¶¶ 6-8),

2

and (5) refuse to provide the external drive that URZ installed on one of the computers on July 29, 2024 at the time that computer was infected with malware and no longer worked. (Dkt. 146 at 16-18; 159 at 11-12.)

Despite URZ's knowledge of the Court's order with a February 21, 2025 deadline for completion, Spectrum confirms that URZ and its counsel did not: (1) produce that "external" HP 256 Flash Drive (or any other "external drive"), and (2) provide Spectrum with names and contact information of each URZ email account holder or do anything else to provide access to any of the email accounts to Spectrum's ESI vendor.

Instead of taking less than an hour to comply with the Court's February 6, 2025 Order, URZ did what it has done throughout this litigation: take hours to prepare and file another motion, this time for "clarification." (Dkt. 152.) That motion exemplifies URZ's dilatory tactics for the past two years – deflect its discovery and preservation responsibilities to blame the Court and Spectrum. The Court simply has required URZ to comply in the same manner as does every other party in civil litigation in America: produce discovery in compliance with the Federal Rules of Civil Procedure and the Court's discovery and preservation orders.

URZ's willful failure to produce and preserve ESI, violations of multiple Court Orders, and its misrepresentations to the Court merit sanctions terminating this suit in favor of Spectrum. The Court should grant this motion.

## V. LEGAL STANDARD

Federal Rule of Civil Procedure 37(b)(2)(A) authorizes courts to impose severe sanctions, including striking pleadings and entering default judgment, when a party violates discovery orders. Courts apply Rule 37 sanctions to "penalize those whose conduct may be deemed to warrant such

a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 753 (1980).

"If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court … only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may … dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e).

The court may grant litigation terminating sanctions based on the following: "(1) the discovery violation was willful and (2) 'a lesser sanction would not have substantially achieved the desired deterrent effect.'" *Timms v. LZM, L.L.C.*, 657 Fed.Appx. 228, 230 (2016) (quoting *United States v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003)). Courts may also consider "'whether the discovery violation prejudiced the opposing party's preparation for trial, and whether the client was blameless in the violation when imposing sanctions." *Id.*

## VI. ARGUMENT

### A. URZ's willful noncompliance the past two years warrants default judgment and termination of its affirmative defenses and counterclaims.

*1. URZ's repeated refusal to comply with seven discovery-related orders constitutes willful noncompliance.*

URZ's repeated discovery violations over the past two years are precisely the type of willful conduct warranting litigation-ending sanctions. *See, e.g.*, *Abarca*, 2023 WL 8461197, at *2 (granting default judgment where party ignored discovery orders, misrepresented compliance, and forced opposing party to incur significant fees); *Calsep A/S v. Dabral*, 84 F.4th 304, 310 (5th Cir. 2023) (affirming default judgment where defendant filed false affidavit, purposely delayed discovery, produced incomplete and manipulated data, and lost electronic evidence in its custody).

4

URZ and its counsel's refusal to comply with seven Court Orders is alone sufficient evidence of bad faith. *See Calsep A/S*, 84 F.4th at 314 (citing *Tech. Chem. Co. v. IG-LO Prods. Corp.*, 812 F.2d 222, 224–25 (5th Cir. 1987) (refusal to comply with multiple Court Orders strong evidence of willful noncompliance)).

In fact, URZ's willful noncompliance is substantially amplified because the Court explicitly issued a warning for compliance or else face litigation ending sanctions. *See Bell v. Texaco, Inc.*, 493 F. App'x 587, 593 (5th Cir. 2012) (party's "repeated failure to comply with discovery orders, even after being warned of the possibility of sanctions" warranted litigation-ending sanctions because it "constituted willful noncompliance"). Therefore, URZ's refusal to comply with the Court's seven discovery-related orders, including after the Court's warning of terminating sanctions, constitutes willful noncompliance.

*2. URZ prevented its computers from being operable just a few days before inspection in willful violation of the Court's ESI preservation order.*

URZ's actions causing the irreparable loss of vital ESI evidence after the Court's ESI discovery and preservation orders further demonstrates its willful noncompliance. The Court issued its order for forensic ESI discovery of URZ's email accounts and devices (Dkt. 111), and its ESI preservation order (Dkt. 118). After much delay, URZ agreed to let Spectrum's ESI expert pick up its computers, but just days before this was to occur, URZ notified Spectrum that the computers had suddenly become inoperable. (Dkt. 159, Ex. E at 3-4.) One computer also became permanently encrypted due to malware added onto that computer just days prior to the inspection, despite the fact that Microsoft provided an update to stop that malware years ago. (*Id.* at 5-6.)

Worse yet, on the encrypted computer, Spectrum's ESI expert was able to identify "unallocated data" that showed thousands of files referencing "Quick Fix" existed on the computer prior to its permanent encryption. (*Id.*) The fatal problem is that because URZ allowed malware

to be added onto that computer, URZ allowed all files on that computer to be permanently encrypted in violation of the Court's ESI preservation order.

Worst of all, the record shows URZ and Teran have ***never*** provided any evidence of: (1) the steps it took to comply with the Court's ESI preservation order (Dkt. 118), (2) why the first computer became encrypted with malware on the eve of forensic discovery, or (3) why the second computer also became inoperable on the eve of forensic discovery. (Dkt. 159, Ex. E at 3-4.) The fact that URZ and Teran have never provided any such evidence further shows willful noncompliance. *See Calsep A/S,* 84 F.4th at 312 (affirming finding of willful spoliation warranting default judgment based on offending party's failure to convincingly rebut evidence such as timing of data loss and nature of missing files). Therefore, this is a second, independent basis to show URZ and Teran's willful noncompliance.

*3. URZ wrongly hid or destroyed the USB drive inserted on July 29, 2024 into the computer that became encrypted.*

The ESI expert determined that someone inserted a USB drive into the malware encrypted computer on July 29, 2024, just days before the computer became entirely encrypted on August 1, 2024. (*Id.*; Dkt. 146-7.) The Court ordered URZ to produce this USB drive and to cooperate with the ESI vendor to provide access to URZ's email accounts, as required by the May 3, 2024 order. (Dkt. 111.)

Rather than comply, URZ submitted a demonstrably false declaration to the court, claiming that the USB drive did not exist. (Dkt. 145-1.) In this affidavit, Muhammed Ghafoor, owner of URZ, asserted that based on his own curious Google search there was no such thing as an HP removable flash drive, and the ESI expert must have mistaken URZ's printer to be a removable flash drive. (*Id.*) Those statements in Ghafoor's declaration are false. The ESI expert's report of September 30, 2024, which had been served on URZ well before the submission of Ghafoor's

6

declaration, identified the serial number of the removable drive, along with identifying that deice as a "Hp_Flash 256" along with the local path of that drive in question:



(Dkt. 159, Ex. E at 10, 13, 14.) The existence of this removable drive is not speculative, and the drive is not a printer. From looking at the data from the computer above it can be seen that: (1) the drive was a type 2 removable drive (i.e., not a printer) (*See* 146-7, ¶¶ 9-13); (2) was inserted into the computer on July 7, 2024 at 3:38 AM CST (9:38 AM UTC); (3) that the drive contained local paths to a POS system and associated paths to "Documents", "OneDrive" files, and "Music" files, among others; and (4) had a specific serial number of "0xbe22b59a". (Dkt. 159, Ex. E at 10, 13, 14.) Much like a fingerprint on a weapon, there is no dispute from the evidence that this was a memory drive inserted once on that date and time with that specific serial number. The simple truth is that URZ either destroyed that drive or is hiding it from the Court and Spectrum.

After the court again ordered that URZ comply, this time to "*completion*" and by no later than February 21, 2025 (Dkt. 151), URZ did not even attempt to comply, and instead engaged in its usual dilatory tactics. URZ took this brazen action even despite the court's admonition to URZ that it must either comply or face sanctions for attorney's fees, costs and default judgment. URZ's

refusal to provide this drive—combined with its bad-faith denial of its existence despite evidence from the encrypted computer—serves as a third, independent basis demonstrating URZ's willful noncompliance.

### *4. URZ has refused to produce a single email or access any email account used by URZ.*

URZ's refusal to produce a single email or access to any of the 14 email accounts, and its feigned confusion over the meaning of the Court's order only further evinces URZ's bad faith and willful noncompliance. The order required URZ to provide the ESI vendor with access to the emails, including "the name of the email provider, the username and password, and **any other information *or assistance* needed to access and copy the accounts.**" (Dkt. 111 (emphasis added).) Such an order (1) unambiguously requires cooperation through multi-factor authentication or any other technical difficulties that may occur and (2) contemplates that such issues may occur and therefore requires URZ to provide information and assistance to the ESI vendor as required to resolve multi-factor authentication or any other technical difficulties.

There is nothing unusual or improper about a court ordering a party to provide credentials or access to email or other accounts, and when they do so such an order is clearly directed to the emails within those accounts; until access to those emails is procured in a usable format, the party subject to that order has not complied. *See, e.g., Timms*, 657 Fed.Appx. at 229 n.2, 231 (upholding litigation-terminating sanctions against party who turned over phone with inaccessible messages in response to discovery order because "the order covered the text messages" and "the onus was on [her] to provide the messages in a consumable form independent of any difficulties she encountered"); *Wittern Group, Inc. v. Palliparamban*, No. 4:24-cv-00151-RGE-SBJ, 2024 WL 5103332, at *7 (S.D. Iowa Nov. 8, 2024) ("The requirement to provide credentials for accounts

unambiguously requires cooperation in permitting access across multi-factor authentication protections.").

Furthermore, courts routinely order parties to cooperate with multi-factor authentication when providing access to email or other accounts. *See, e.g.*, *id.* (ordering cooperation with multi-factor authentication as a part of forensic discovery); *Prudential Insurance Company of America v. Kowalski*, No. 3:21-cv-00541, 2024 WL 4653136, at *9 ("In each of these orders and hearings, the Court has 'require[d] Ms. Kowalski to do a very straightforward thing: provide her credentials and cooperate in the required multifactor authentication'").

Furthermore, it is common for courts to order persons to provide access to accounts that they have used for business purposes, or to sanction them when they refuse to cooperate. *Klipsch Group, Inc. v. ePRO E-Commerce Limited*, 880 F.3d 620, at *628 (2nd Cir. 2018) (affirming spoliation finding where 32 of 36 custodians refused to permit access to their accounts on private messaging system offending party claimed were primarily used for personal communication).

To date, URZ has <u>never</u> (1) produced a single email or (2) provided the names or contact information for any of the 14 email accounts despite the Court's seven Court Orders. This is a fourth, independent basis of URZ and Teran's willful noncompliance.

B.     **The Court attempted lesser sanctions but to no effect.**

The Court has already warned URZ multiple times, yet URZ's behavior has only gotten worse. As the Fifth Circuit has recognized, "lesser sanctions would not serve the best interests of justice" where a party has demonstrated a clear record of delay and contumacious conduct. *See Brown*, 664 F.3d at 77; *In re Taxotere (Docetaxel) Products Liability Litigation*, 966 F. 3d 351, 360 (5th Cir. 2020) (quoting *In re Deepwater Horizon (Barrera)*, 907 F.3d 232, 236 (5th Cir. 2018)) (granting litigation terminating sanctions where party "consistently failed to comply with

the court's [discovery] order" and, as such, it was "unclear what lesser sanctions could have been appropriate following the district court's warnings and second chances").

Warnings of the potential consequences of non-compliance, especially explicit warnings of potential litigation terminating sanctions, can "allow a court to jump straight to litigation ending sanctions." *Calsep A/S,* 84 F.4th at 316; *see also, e.g.*, *Vikas WSP, Ltd. v. Econ. Mud Prods. Co.*, 23 F.4th 442, 455–56 (5th Cir. 2022) ("[T]he failure of express warnings could allow the court to find that a lesser sanction would not substantially achieve the desired deterrent effect.") (citation and quotation marks omitted)); *Bell*, 493 F. App'x at 593 ("At that time, the court again warned Plaintiffs that their case would be dismissed as a punitive sanction if they continued to ignore court orders. This warning had no apparent effect on Plaintiffs' behavior in the litigation. We conclude that the district court did not abuse its discretion in determining that Plaintiffs' previous failure to adhere despite the imposition of less drastic sanctions indicated that additional monetary sanctions would not have ensured compliance.").

URZ has defied the court's orders no fewer than seven times. The Court has repeatedly warned URZ of the potentially severe results of its non-compliance. On February 13, 2024, the Court warned Teran and URZ of the serious consequences of discovery violations:

> So again, I take it very seriously, and I see what the problems are when parties' clients are not adequately counseled about what their obligations are going to be. And **so if URZ doesn't understand what the potential consequences are for complying with federal discovery, now that order can be reviewed and they can understand that it can be quite severe indeed.**

(Dkt. 96, 57:20-58:1) (emphasis added). Then, on July 5, 2024 the Court warned URZ that there would be no further extensions and that harsh sanctions, possibly including default judgment and an award of attorneys' fees, would follow if URZ did not fully comply:

10

> For the avoidance of doubt, it is ORDERED that Defendant URZ Trendz, LLC, must fully comply with this Court's prior orders by July 12, 2024. See Dkts 111 & 118.
>
> No further extension will be allowed. Failure to fully comply will be met with harsh sanctions. Even so, immediate compliance now by URZ Trendz will forestall (or perhaps entirely eliminate) the harshness of sanctions that may be considered.
>
> It is further ORDERED that Plaintiff Spectrum Laboratories, LLC, is given leave to bring a fulsome motion for sanctions if compliance by URZ Trendz isn't forthcoming by July 12th. In that respect, it may request any well-supported relief. This may include, if appropriate, the striking of defenses and entry of default judgment, along with an award of attorney fees.

(Dkt. 151.) Indeed, Teran himself stated at the December 13, 2024 hearing that he and URZ understood these ESI "forensic" discovery orders as sanctions:

```
        THE COURT:  And so what -- I have entered orders
saying you now need to fully comply but --
        MR. TERAN:  No, the -- I believe that the forensic
discovery order was a sanctioned order.
        THE COURT:  Okay.  So the -- to get -- the
intention to getting what I thought was at the discovery
needed, I entered it as -- and it's going to happen this way
with the forensic.
        MR. TERAN:  Yeah.  That was a sanctioned order.
        THE COURT:  Okay.
        MR. TERAN:  I believe Your Honor specifically
identified that as a --
        THE COURT:  Okay.
        MR. TERAN:  -- sanctioned order.
```

(Dkt. 143 at 16.) Thus, Teran repeatedly acknowledge that the ESI "forensic discovery" was a lesser sanctioned already imposed on URZ.

On February 6, 2025, the Court again explicitly warned URZ of the possibility of litigation terminating sanctions if it did not fully comply by February 21, 2025. (Dkt. 151.) Nonetheless, URZ did *nothing* to attempt compliance with the Court's clear instructions.

In the face of such brazen defiance of the Court's Orders and warnings, no further warnings or lesser sanctions will compel URZ to comply. Because of this unfortunate reality, the Court should grant the sanction of default judgment against URZ and thereby deter future bad actors from choosing a similar path.

    **C.    Spectrum has been irrevocably prejudiced by URZ's willful violations.**

When a defendant's discovery violations prevent the opposing party from obtaining evidence that is relevant and important for proving the plaintiff's claims at summary judgment or trial, such violations are sufficient to establish prejudice warranting litigation-terminating sanctions. *Calsep A/S*, 84 F.4th at 314-15.

As set forth above, URZ's discovery violations have destroyed or spoliated key evidence *after* the Court ordered its preservation and production. URZ's destruction, spoliation and refusal to produce key evidence includes: (1) the first computer that became encrypted just before inspection; (2) the second computer that became inoperable just before inspection; (3) the memory drive inserted into the first computer just before it became encrypted but has never been produced; (4) not one email having been produced; and (5) not one of the 14 email accounts being accessible to Spectrum's ESI expert. *Timms*, 657 Fed.Appx. at 230 ("'discovery violation prejudiced the opposing party's preparation for trial" is basis for termination sanctions).

Furthermore, despite forcing Spectrum to file two motions to compel (Dkt. 45, 119), write multiple letters to the Court, and file what is now six motions for sanctions (Dkt. 83, 119, 122, 146, 159, and the present motion), URZ has still not produced a single email in the entirety of this

12

litigation. There can be little doubt on this record that Spectrum has been severely prejudiced by URZ's discovery violations.

**VII. CONCLUSION**

For the foregoing reasons, Spectrum respectfully requests that the Court:

1. Enter default judgment in favor of Spectrum on:

    a) Count 1: Federal Trademark Infringement;

    b) Count 2: Unfair Competition;

    c) Count 3: Federal Trademark Counterfeiting in Violation of Section 32 of Lanham Act [15 U.S.C. §1114(a)], as under the '892 Registration

    d) Count 4: Federal Trademark Dilution of the Quick Fix Mark and Q-Clock Mark

    e) Count 5: Unfair and Deceptive Trade Practices;

    f) Count 6: Common Law Trademark Infringement and Unfair Competition;

    g) Count 7: State Trademark Dilution and Injury to Business Reputation; and

    h) Count 8: Common Law Passing Off or Palming Off/Unfair Competition.

2. Strike URZ's affirmative defenses of:

    a) Failure to State a Claim;

    b) Laches;

    c) Trademark Noninfringement;

    d) Trademark Invalidity;

    e) Estoppel;

    f) Waiver;

    g) Unclean Hands;

    h) Failure to Mitigate Damages;

    i) No Constructive Notice of Trademark;

    j) Innocent Infringement; and

    k) Fraud on the USPTO.

3. Strike URZ's counterclaims of:

    a) Declaration of Invalidity for Trademark Registration No. 4453892;

    b) Declaration of Invalidity for Trademark Registration No. 5791421; and

    c) Fraud on the USPTO During the Procurement of the Trademark Registrations.

4. Allow Spectrum post-judgment to file post-judgment briefing for damages and for those reasonable attorneys' fees and costs incurred in this litigation beyond those fees and costs already requested by the Court in the February 6, 2025 Order;

5. Enter a prohibitive permanent injunction against URZ and their agents, servants, employees and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from:

    a) advertising, marketing, promoting, offering for sale, distributing, or selling all infringing products;

    b) using the infringing Quick Fix Mark and Q-Clock Mark on or in connection with any of Urz' goods;

    c) using the Quick Fix Mark and Q-Clock Mark or any other copy, reproduction, colorable imitation, or simulation of Spectrum's Quick Fix Mark and Q-Clock Mark on or in connection with any of Urz' goods;

    d) using any trademark, name, logo, design, or source designation of any kind on or in connection with Urz' goods or services that is a copy, reproduction, colorable

  imitation, or simulation of, or confusingly similar to any of Spectrum's trademarks, trade dresses, names, or logos;

 e) using any trademark, name, logo, design, or source designation of any kind on or in connection with URZ's' goods that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Spectrum, or are sponsored or authorized by Spectrum, or are in any way connected or related to Spectrum;

 f) using any trademark, name, logo, design, or source designation of any kind on or in connection with URZ's goods that dilutes or is likely to dilute the distinctiveness of Spectrum's trademarks, trade dresses, names, or logos;

 g) passing off, palming off, or assisting in passing off or palming off URZ's goods as those of Spectrum, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

6. Enter a mandatory Permanent Injunction against URZ and their agents, servants, employees and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise requiring the following:

 a) URZ be ordered to cease offering for sale, marketing, promoting, and selling and to recall all Counterfeit Products, or any other goods bearing the infringing Quick Fix Mark and/or Q-Clock Mark or any other confusingly similar imitation of Spectrum's Quick Fix Mark and/or Q-Clock Mark that are in URZ' possession or have been shipped by URZ or under their authority, to any customer, including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also

       to deliver to each such store or customer a copy of this Court's order as it relates to said injunctive relief against URZ; and

   b) URZ be ordered to deliver up for impoundment and for destruction, all products, promotional materials, advertisements, flyers and website designs, or other materials in the possession, custody or under the control of URZ that are found to copy, steal, counterfeit, adopt, infringe, or dilute Spectrum's Quick Fix Mark and/or Q-Clock Mark or that otherwise unfairly compete with Spectrum and its products.

7. Impose any further relief the Court deems just and proper.

DATED: March 7, 2025                    Respectfully submitted,

                                              By: */s/ David B. Cupar*
                                                   David B. Cupar (*pro hac vice*)
                                                   *Attorney in Charge*
                                                   Ohio Bar No. 71622
                                                   dcupar@mcdonaldhopkins.com
                                                   Matthew J. Cavanagh (*pro hac vice*)
                                                   Ohio Bar No. 79522
                                                 mcavanagh@mcdonaldhopkins.com
                                                 **MCDONALD HOPKINS LLC**
                                                 600 Superior Avenue, East
                                                 Suite 2100
                                                 Cleveland, Ohio 44114
                                                 Telephone: 216.348.5400
                                                 Facsimile: 216.348.5474

                                              By: */s/ D. Ryan Cordell, Jr.*
                                                   Courtney Ervin
                                                 Texas Bar No. 24050571
                                                 SDTX No. 611093
                                                 cervin@hicks-thomas.com
                                                 D. Ryan Cordell, Jr.
                                                 Texas Bar No. 24109754
                                                 SDTX No. 3455818
                                                 rcordell@hicks-thomas.com
                                                 **HICKS THOMAS LLP**
                                                 700 Louisiana St., Suite 2000
                                                 Houston, Texas 77002
                                                 Telephone: 713.547.9100
                                                 Facsimile: 713.547.9150

                                                 **ATTORNEYS FOR PLAINTIFF SPECTRUM LABORATORIES, LLC**

## CERTIFICATE OF WORD COUNT

In accordance with Section 18(c) of the Court's procedures, I certify that this document contains 4047 words, exclusive of the caption, signature block and certificates of service and conference.

*/s/ David B. Cupar*

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2025 a true and correct copy of this Response was served on all counsel of record via the Court's ECF Noticing System.

*/s/ David B. Cupar*