**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **SPECTRUM LABORATORIES, LLC,** | § § § | |
| *Plaintiff,* | § § | **CIVIL ACTION NO. 4:22-cv-03705** |
| **v.** | § § | **JUDGE CHARLES ESKRIDGE** |
| **URZ TRENDZ, LLC A/K/A FLY FRESH SMOKE,** | § § § § | |
| *Defendants.* | § | |

**SPECTRUM'S OPPOSITION TO URZ's
<u>MOTION FOR RECONSIDERATION</u>**

Plaintiff Spectrum Laboratories, LLC ("Spectrum") respectfully submits this Opposition to Defendant URZ Trendz, LLC's ("URZ") Motion for Reconsideration (Dkt. 174).

## I.    LEGAL STANDARD

Reconsideration under Rule 54(b) and Rule 59(e), "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Fonda v. Retting*, No. 4:22-CV-00501, 2022 WL 3703181, at \*1 (S.D. Tex. Feb. 28, 2022) (citing *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). Courts must exercise this discretion "sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." *Id.* (quoting *SnoWizard*, 921 F. Supp. 2d at 564–65). A motion for reconsideration is not a vehicle to "rehash rejected arguments or introduce new arguments." *Id.* (quoting *LeClerc v. Webb*, 419 F.3d 405, 412 n.13 (5th Cir. 2005)).

Grounds for reconsideration include: "(1) manifest error of fact or law; (2) newly discovered or previously unavailable evidence; (3) manifest injustice; (4) serious misconduct by counsel; or (5) an intervening change in controlling law." *Id.* (quoting *Livingston Downs Racing Ass'n Inc. v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 475–76 (M.D. La. 2002)).

## II.     ARGUMENT

### A.      URZ Doesn't Cite to Any Law Supporting Reconsideration.

First, and tellingly, URZ's motion does not cite to any case law. As such, URZ has not identified any law, whether existing or new, that contradicts the law Spectrum cited in its motion and that the Court determined supported its Order. *See* Dkt. 174. URZ's mere citations to the Federal Rules of Civil Procedure support the Court's findings and conclusion that it can enter terminating sanctions against URZ based on URZ's willful refusal to comply with the Court's eight discovery and spoliation orders. Dkt. 171 at 1. Therefore, URZ did not establish any "manifest error" of law or "an intervening change in law."

URZ argues that the requirements of Rule 37(e) are not met, speculating that the spoliated data could potentially be restored. *See* Dkt. 174 at 15. But this is simply a reframing of arguments the Court has already considered and rejected. At the June 18, 2025 hearing, the Court found that "the record does indicate that much evidence has not been turned over, and it's in a context of a missing flash drive and two inoperable computers," and expressly concluded, "I do find destruction and spoliation of key evidence." *See* Ex. A

at 61:23–62:2. URZ offers no new evidence and no plausible reason to believe that this finding was incorrect.

URZ also ignores that the sanctions were not imposed solely under Rule 37(e), but also under Rule 37(b) for repeated violations of Court orders. The Court found that URZ had failed to comply with at least eight discovery-related orders and that its conduct was willful: "Defendant URZ Trendz, LLC, and its counsel have repeatedly refused to comply with at least eight orders related to discovery … such record of refusal to comply with discovery constitutes willful noncompliance." Dkt. 171 at 1–2. URZ does not offer any new evidence that it complied with any of those orders. Instead, its motion identifies the same arguments the Court has already rejected numerous times. Far from justifying reconsideration, this continued commitment to defiance only confirms that, given the opportunity, URZ would continue to brazenly violate the Court's orders.

**B.** **The Naik Declaration Is Neither New Nor Grounds for Reconsideration.**

URZ again makes the feigned argument it was unable to provide access to its 14 email accounts due to Google's two-factor authentication procedures. *See* Dkt. 174 at 13–15. The Court already rejected this argument. Dkt. 171 at 2. In rejecting this argument the Court stated that "no adequate showing has been made as to intervening change of controlling law, new evidence, or a need to correct clear error or prevent manifest injustice," and further noted that "nothing prevented Defendant and its counsel from timely compliance if that is their actual desire." *See* Ex. A at 29:11–15.

The Court should reject the "new" Naik declaration URZ raises for the first time in its motion for two reasons. First, URZ could have raised the arguments set forth in Naik's

declaration earlier, but did not do so. Therefore, Naik's declaration is untimely and improper for a motion for reconsideration. Fed. R. Civ. P. 54(b); *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citing *Russ v. Int'l Paper Co.*, 943 F.2d 589, 593 (5th Cir.1991) ("[A]n unexcused failure to present evidence available at the time ... provides a valid basis for denying a subsequent motion for reconsideration.").

Second, Naik merely makes the incorrect, conclusory statement in his declaration that providing a two-factor authentication would have violated Google's terms and conditions. Dkt. 174-1. There is a target rich environment of reasons Naik's new statement is wrong:

(1) Naik fails to cite to any language in Google's terms and conditions that URZ's compliance with the Court's Order violates those terms and conditions;

(2) Naik ignores that at least 5 of the 14 email accounts are not from Google and does not address, for example, Microsoft's terms and conditions[1];

(3) Naik does not identify any law where compliance with a Court Order to provide two-factor authentication to access an email account previously violated Google's (or any provider's) terms and conditions, whereas Spectrum already cited to other cases allowing two-factor authentication to proceed and calling the process "straightforward" (Dkt. 160 at 8-9);

(4) Naik admits that acting "ethically, responsibly and within the bounds of the law" meets Google's terms and conditions – which is exactly what the Court ordered but what URZ did not do (Dkt. 174-1 at ¶13);

(5) Naik did not dispute that URZ and its personnel had possession, custody or control of those 14 email accounts; and

(6) Because the Court authorized production of those 14 email accounts, and two factor authentication is to prevent only unauthorized access of those email accounts (e.g., a hacker), Naik has provided no basis on how seeking

---

[1] Therefore, URZ has waived any arguments about the Microsoft accounts.

4

discoverable information regarding counterfeiting and infringement out of those email accounts was unauthorized by Google.

The Court should reject this untimely, new, and incorrect argument in Naik's declaration.

### C. The Court Already Rejected URZ' Remaining Arguments.

URZ's remaining arguments are the same ones the Court has already repeatedly rejected and Rule 54(b) does not permit. Instead, URZ again resorts to manufactured confusion about the scope of the Court's Orders—a tactic the Court has already rejected multiple times. *See* Dkt. 152.

The Court rejected URZ's tired and unsupported argument that 12 of the withheld email accounts had no connection to URZ's business. *See* Dkt. 174 at 4; Ex. A at 51:8–15. Of the 14 email accounts, the Court noted that "some are URZ," and that the others "are employees that work at URZ, and they use that as part of their work email," to which URZ's counsel responded: "*I believe that that's correct.*" *Id.* (emphasis added). URZ's own admission at the June 18, 2025 hearing to the Court contradicts its own argument.

The Court also emphasized that, according to its prior orders, any personal information could be redacted, and only URZ-related content would be produced to Spectrum. *See id.* at 52:3–21. Despite that, URZ still never provided access to any of those accounts and never produced a single email in the entirety of the litigation:

> THE COURT: And so -- but in terms of what Spectrum's put at issue here, it's referring to the -- those are the 14 email addresses. And my point is no emails have been produced, like independently and unilaterally, and no access has been allowed to any of those --
>
> MR. TERAN: Right.
>
> THE COURT: -- has been obtained to any of those 14 email accounts.
>
> MR. TERAN: And one thing to --
>
> THE COURT: Correct?
>
> MR. TERAN: That is correct, Your Honor.

*Id.* at 42:5-15. Rather than offer any new evidence, or any other valid basis for reconsideration, URZ instead opts to put the same refuted argument before the Court once more.

URZ also argues, once again, that the USB drive referenced in the Court's order, identified as an "HP Flash 256," does not exist. *See* Dkt. 174 at 10–11. But this flawed argument was unsuccessfully attempted by URZ's counsel at the June 18, 2025 hearing. *See* Ex. A at 24:7–26:23. As the Court correctly found: "We don't know where the USB drive is, and there's been no good explanation for that." *Id.* at 61:2–3. URZ offers no new evidence or legal basis to revisit that ruling.

URZ once again asserts that it fully complied with the Court's orders concerning its computers, despite admitting that it allowed those computers to become inoperable two days before they were to be inspected. *See* Dkt. 174 at 11–12. But this argument also was raised, among other times, during the June 18, 2025 hearing, and was once again rejected. As URZ's counsel admitted at the hearing, "Two days before that new date, that's when

the computers went down. And as soon as I learned about it from my client, I emailed Defendant's (sic) counsel. I indicated computers are inoperable; we don't know why." *See* Ex. A at 21:10–14. Based upon the full record, and further bolstered by this admission from URZ, the Court found URZ's assertion unpersuasive: "I find that there's sufficient evidence to say that … the two computers that were allowed to become inoperable prior to inspection … weren't preserved, and that there's an external drive that communicated with the computers that hasn't been preserved." *Id.* at 60:4–10.

URZ seizes on the Court's statement that it "has continued its offending conduct during the entirety of this pending litigation" to argue that this is contradicted by the record because Plaintiff could not definitively prove ongoing counterfeit sales. *See* Dkt. 174 at 9-10 (quoting Dkt. 171 at 3). URZ misses the point. The Court did not enter terminating sanctions based on the merits of the underlying claims; it imposed sanctions because of URZ's persistent failure to comply with discovery obligations and repeated violations of the Court's orders. As the Court expressly found, "the relief requested by Plaintiff is reasonable, necessary, and appropriate in light of the abject disregard by URZ of its discovery obligations and its flouting of the orders of this Court." *See* Dkt. 171 at 3.

Likewise, the Court's order did not turn on any finding about the validity of Spectrum's trademark; it turned on URZ's unwavering refusal to comply with no fewer than eight discovery-related orders, which the Court found to be willful. *See* Ex. A at 60:14–19. Through that conduct, URZ deprived the Court and Plaintiff of any meaningful opportunity to reach the merits. That is what prompted the sanctions, and URZ's continued attempt to muddy the issue only underscores that reconsideration is unwarranted.

Reconsideration is not warranted where the Court has already heard and rejected the arguments presented based on a full record. URZ's motion should be denied.

## VII. CONCLUSION

For the foregoing reasons, the Court should deny URZ's motion for reconsideration in its entirety.

DATED: July 7, 2025

Respectfully submitted,

By: */s/ David B. Cupar*
    David B. Cupar (*pro hac vice*)
    *Attorney in Charge*
    Ohio Bar No. 71622
    dcupar@mcdonaldhopkins.com
    Matthew J. Cavanagh (*pro hac vice*)
    Ohio Bar No. 79522
    mcavanagh@mcdonaldhopkins.com
    **MCDONALD HOPKINS LLC**
    600 Superior Avenue, East
    Suite 2100
    Cleveland, Ohio 44114
    Telephone: 216.348.5400
    Facsimile: 216.348.5474

By: */s/ D. Ryan Cordell, Jr.*
    Courtney Ervin
    Texas Bar No. 24050571
    SDTX No. 611093
    cervin@hicks-thomas.com
    D. Ryan Cordell, Jr.
    Texas Bar No. 24109754
    SDTX No. 3455818
    **HICKS THOMAS LLP**
    700 Louisiana St., Suite 2000
    Houston, Texas 77002
    Telephone: 713.547.9100
    Facsimile: 713.547.9150

    **ATTORNEYS FOR PLAINTIFF**
    **SPECTRUM LABORATORIES, LLC**

## CERTIFICATE OF WORD COUNT

In accordance with Section 18(c) of the Court's procedures, I certify that this document contains 1766 words, exclusive of the caption, signature block and certificates of service and conference.

*/s/ David B. Cupar*

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2025 a true and correct copy of this Opposition was served on all counsel of record via the Court's ECF Noticing System.

*/s/ David B. Cupar*