UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SPECTRUM LABORATORIES, LLC,
                    Plaintiff,

v.

URZ TRENDZ, LLC,
                    Defendant.

**Case No. 4:22-CV-03705**

**Hon. Judge Charles Eskridge**

**JURY TRIAL DEMANDED**

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF MONETARY JUDGMENT PURSUANT TO DEFAULT JUDGMENT

Defendant URZ Trendz, LLC ("Defendant") hereby submits this Opposition to the Motion for Entry of Monetary Judgment Pursuant to Default Judgment ("Motion") filed by Plaintiff Spectrum Laboratories, LLC ("Spectrum").

## I.    THIS COURT LACKS JURISDICTION SINCE AN APPEAL IS PENDING

A Default Judgment that issues exact relief, including injunctive relief, fees, and costs, was entered by this Court on November 26, 2025.  See *ECF No. 176*.  Such Default Judgment is final and appealable.  See *Recreational Properties, Inc. v. Southwest Mortg. Service Corp.,* 804 F.2d 311, 313 (5th Cir. 1986) ("The appeal of a default judgment, therefore, as a final judgment under 28 U.S.C. § 1291, is governed by Fed.R.App.P. 4.").  In fact, the Default Judgment is directed at all of the claims, affirmative defenses, and counterclaims filed by all the parties in this action.  As such, there are no claims to be resolved against any party.  Essentially, everything has been resolved and all relief has been awarded by the Default Judgment.  After all, the default judgment issues relief in the form of an injunction, attorneys' fees, and costs against URZ, just as Spectrum prayed in its pleadings.

1

After the Default Judgment, URZ timely filed a Notice of Appeal on December 16, 2025. See *ECF No. 181.* Therefore, this Court lacks jurisdiction to address Spectrum's Motion. See *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."). See also *In re Fort Worth Chamber of Commerce,* 100 F.4th 528, 536 (5th Cir. 2024) ("The filing of a timely and sufficient notice of appeal transfers jurisdiction over matters involved in the appeal from the district court to the court of appeals. The district court is divested of jurisdiction to take any action with regard to the matter except in aid of the appeal."). See also *Winchester v. United States Atty. for S.D. of Tex.,* 68 F.3d 947, 950 (5th Cir.1995) ("[A] perfected appeal divests the district court of jurisdiction."). Therefore, this Court has already been divested of its jurisdiction over this case, especially Spectrum's Motion.

Accordingly, this Court must deny Spectrum's Motion based on lack of jurisdiction.

## II.     SPECTRUM'S MOTION IS AN UNTIMELY MOTION TO ALTER OR AMEND THE JUDGMENT

If this Court believes that it still has jurisdiction over this case or Spectrum's Motion, then it must deny the same based on its untimely filing.

In fact, at best, Spectrum's Motion is nothing more than a motion to alter or amend the Default Judgment pursuant to Fed.R.Civ.P. 59 which requires such motion to be filed no later than 28 days of entry of judgment. See *Fed.R.Civ.P. 59(b).* However, in the present case, the Default Judgment was filed on November 26, 2025, but Spectrum did not file its Motion until January 2, 2026. Thus, Spectrum's Motion is NOT timely since it was filed 37 days, which is more than 28 days, after the Default Judgment was entered. Accordingly, even if this Court believes it has jurisdiction, Spectrum's Motion must be denied as being untimely.

## III.    SPECTRUM CANNOT RECOVER DAMAGES THAT IT DID NOT PLEAD

Fed.R.Civ.P. 54(c) expressly states as follows:

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.  Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."  See *Fed.R.Civ.P. 54(c)*.

This case involves a default judgment, thus, Spectrum cannot recover anything that differs or exceed what it plead.  In fact, Spectrum's Third Amended Complaint pleads the following relief:

"WHEREFORE, Spectrum prays that:
(i) Defendants and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Defendants, or in concert or participation with Defendants, and each of them, be found to be violation the rights of Spectrum by infringing, unlawfully counterfeiting and/or illegally using Spectrum's trademarks.
(ii) Defendants and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from Defendants, or in concert or participation with Defendants, and each of them, enjoined from:
   a. advertising, marketing, promoting, offering for sale, distributing, or selling the Counterfeit Product;
   b. using the infringing Quick Fix Mark and Q-Clock Mark on or in connection with any of Defendants' goods;
   c. using the Quick Fix Mark and Q-Clock Mark or any other copy, reproduction, colorable imitation, or simulation of Spectrum's Quick Fix Mark and/or Q-Clock Mark on or in connection with any of Defendants' goods;
   d. using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendants' goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to any of Spectrum's trademarks, trade dresses, names, or logos;
   e. using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendants' goods that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Spectrum, or are sponsored or authorized by Spectrum, or are in any way connected or related to Spectrum;

3

f. using any trademark, name, logo, design, or source designation of any kind on or in connection with Defendants' goods that dilutes or is likely to dilute the distinctiveness of Spectrum's trademarks, trade dresses, names, or logos;

g. passing off, palming off, or assisting in passing off or palming off Defendants' goods as those of Spectrum, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint; and

h. advertising, promoting, offering for sale, or selling the Counterfeit Product or other similar goods.

(iii) Defendants be ordered to cease offering for sale, marketing, promoting, and selling and to recall all Counterfeit Products, or any other goods bearing the infringing Quick Fix Mark and/or Q-Clock Mark or any other a confusingly similar imitation of Spectrum's Quick Fix Mark and/or Q-Clock Mark that are in Defendants' possession or have been shipped by Defendants or under their authority, to any customer, including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each such store or customer a copy of this Court's order as it relates to said injunctive relief against Defendants;

(iv) Defendants be ordered to deliver up for impoundment and for destruction, all products, promotional materials, advertisements, flyers and website designs, or other materials in the possession, custody or under the control of Defendants that are found to copy, steal, counterfeit, adopt, infringe, or dilute any of Spectrum's trademarks or that otherwise unfairly compete with Spectrum and its products;

(v) Defendants be compelled to account to Spectrum for any and all profits derived by Defendants from the sale or distribution of the Counterfeit Products;

(vi) Spectrum be awarded all damages caused by the acts forming the basis of this Complaint;

(vii) Based on Defendants' knowing and intentional use of a stolen, counterfeited, reproduction and/or imitation of Spectrum's Quick Fix Mark and/or Q-Clock Mark, the damages awarded be trebled and the award of Defendants' profits be enhanced as provided for by 15 U.S.C. § 1117(a);

(viii) Defendants be required to pay to Spectrum the costs and reasonable attorneys' fees incurred by Spectrum in this action pursuant to 15 U.S.C. §1117(a) or any other applicable law;

(ix) Based on Defendants' willful and deliberate infringement and/or dilution of Spectrum's Quick Fix and/or Q-Clock Mark, and to deter such conduct in the future, Spectrum be awarded punitive damages;

(x) Spectrum be awarded prejudgment and post-judgment interest on all monetary awards; and

(xi) Spectrum be granted such other and further relief as the Court may deem just and appropriate." See *ECF No. 62.*

4

As such, Spectrum has plead much relief, most of which was awarded by this Court in the Default Judgment.  However, in its Motion, Spectrum seeks to recover its lost profits or statutory damages.  See *Motion*.  The problem is that Spectrum did NOT plead for such relief.  Therefore, Spectrum cannot, as a matter of law, recover its lost profits or statutory damages.

In fact, statutory damages in counterfeiting cases are exclusively governed by 15 U.S.C. § 1117(d).  However, Section 1117(d) was not plead by Spectrum.  In fact, the phrase "1117(d)" does not appear anywhere in Spectrum's Third Amended Complaint.  See *ECF No. 62*.  Instead, Spectrum's Third Amended Complaint merely prays for "the damages awarded be trebled and the award of Defendants' profits be enhanced as provided for by 15 U.S.C. § 1117(a)."  There is no reference to Section 1117(d).  Therefore, statutory damages cannot be awarded as a matter of law pursuant to Fed.R.Civ.P. 54(c).

Secondly, Spectrum's Motion seeks to recover its own lost profits.  See *Motion*.  However, Spectrum's Third Amended Complaint does not plead for the recovery of its own lost profits.  In fact, the phrase "lost profits" is not found anywhere in Spectrum's Third Amended Complaint.  Instead, Spectrum's Third Amended Complaint prays for the following:

> "Defendants be compelled to account to Spectrum for any and all profits derived by Defendants from the sale or distribution of the Counterfeit Products."  See *ECF No. 62,* p.26.

Therefore, Spectrum's Third Amended Complaint seeks to recover only Defendant's profits derived from the sale of counterfeiting goods.  Spectrum's Third Amended Complaint does *NOT* seek to recover its own lost profits.  Therefore, Spectrum cannot recover its own lost profits as a matter of law pursuant to Fed.R.Civ.P. 54(c).

Even more, 15 U.S.C. § 1117(a) expressly states as follows:

> "In assessing profits the plaintiff shall be required to prove defendant's sales only."  See *15 U.S.C. §1117(a)*.

However, nothing in Spectrum's Motion provides any information whatsoever about URZ's profits or sales.  In fact, nothing in the declaration of Spectrum's expert opines or provides any information whatsoever about URZ's profits or sales.

Therefore, even if this Court decides to disregard its lack of jurisdiction and the untimeliness of Spectrum's Motion, this Court must still deny Spectrum's Motion because it seeks recovery that it has never plead in this case.

## IV.   <u>SPECTRUM CANNOT RECOVER DAMAGES FOR WHICH THERE IS NO SUFFICIENT BASIS</u>

Although defendants are deemed to have admitted the allegations set forth in a plaintiff's complaint in light of a default judgment, the Court must review the pleadings to determine whether the complaint presents a sufficient basis for relief.  See *Mishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975).  The Fifth Circuit looks to Fed.R.Civ.P. 8 case law for guidance in determining whether a complaint is sufficient.  See *Wooten v. McDonald Transit Assocs., Inc*., 788 F.3d 490, 498 (5th Cir. 2015).  Fed.R.Civ.P. 8(a)(2) requires a pleading to contain "a short and plain statement showing pleader is entitled to relief."  See *Id*.  The purpose of this requirement is to give a defendant fair notice of what the claim is and the grounds upon which it rests.  See *Id*. (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)*).  The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  See *Id*.  Detailed factual allegations are not required, but the pleading must be more than an "unadorned, the defendant-unlawfully-harmed me accusation."  See *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In the present case, Spectrum asserts a claim of counterfeiting against URZ for use of a "counterfeit mark".  See *ECF No. 62*, p.13-15.  The term "counterfeit mark" is defined in 15 U.S.C. §1116(d)(1)(B)(i) as follows:

> "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed…"

Essentially, Spectrum's counterfeiting claim can stand only if URZ used the same registered mark in connection with the same registered goods as it appears in the trademark registrations.  In fact, it is established that:

> "In this context, the mark used by [the defendant] was counterfeit if:  (1) it was a non-genuine mark identical to [the plaintiff's] mark; [and] (2) *[the plaintiff's] mark was registered on the Principal Register for use on the same goods to which [the defendant] applied the mark*;..."  See *State of Idaho Potato Com'n v. G.T. Terminal Packaging, Inc.,* 425 F.3d 708, 721 (9th Cir. 2005) (citing *McCarthy on Trademarks and Unfair Competition §25:15* and referencing *15 U.S.C. §§1116(d)(1)(B)(i)*).  Emphasis Added.  See also *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.,* 658 F.3d 936, 946 (9th Cir. 2011) ("Section 1116(d) requires that the mark in question be (1) a non-genuine mark identical to the registered, genuine mark of another, where (2) *the genuine mark was registered for use on the same goods to which the infringer applied the mark."* Emphasis added).

Even more, in a Joint Statement on Trademark Counterfeiting Legislation, Congress explained the definition of "counterfeit mark" as follows:

> "The definition of 'counterfeit mark' in this Act reaches only instances in which the mark is used in connection with goods or services for which the mark is registered on the principal register of the U.S. Patent and Trademark Office and in use…  In addition, because this act is intended to reach only the most egregious forms of trademark infringement, it does not affect cases in which the defendant uses a registered mark in connection with goods and services for which the mark is not registered.  Under the Lanham Act, a plaintiff can sometimes obtain relief against a defendant who uses a mark in connection with goods or services that are 'related' to those for which the mark is registered.  For example, a plaintiff with a federal registration for use of the mark 'Hopscotch' on typewriters might have a Lanham Act remedy against a defendant who used that mark to identify typing paper, even though the plaintiff had not registered that mark for use in connection with typing paper.  Under the present act, however, the use of the mark 'Hopscotch' on typing paper would not count as the use of a 'counterfeit mark'."  See *Senate-House Joint Explanatory Statement on Trademark Counterfeiting Legislation,* 130 Cong.Rec. H12076, H12078 (Oct. 10, 1984).

Thus, counterfeiting applies only when the mark is registered for use on the same goods in which the infringer applied the mark.  In the present case, Spectrum alleges Counterfeiting of its Trademark Registration No. 4,453,892 ("the '892 Registration") for the "QUICK FIX" mark.  See *ECF No. 62*, p.13-15].  The '892 Registration identifies the following registered good:

> "Chemical compositions and agents, namely, synthetic urine for use in urinalysis" under International Class 001 which is reserved for "Chemicals for use in industry, science and photography, as well as in agriculture, horticulture and forestry".  See *ECF No. 62-1*, Ex. 1].  See also *Nice Agreement, Eleventh Edition*, version 2022 (NCL 11-2022).

However, Spectrum's Third Amended Complaint defines the "Counterfeit Product" as follows:

> "The Counterfeit Product duplicates the Quick Fix Mark… and contains ***synthetic urine, a heater pad, plastic bottle, and an instructions pamphlet**...*" See *ECF No. 62*, ⁋16].

Additionally, Exhibit 3 to the Third Amended Complaint shows a picture of the "Counterfeit Product" which is labeled as "***Novelty** Synthetic Urine*".  See *ECF-62-3*, Ex. 3.  The term "novelty" has been addressed by the Texas Supreme Court as follows:

> "For instance, the third definition in Webster's Third New International Dictionary—the same dictionary the court of appeals relied on—defines 'novelty' as 'a small manufactured article intended mainly for decoration or adornment and marked by an unusual or novel design.' WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1546 (2002)."  See *State of Texas v. $1,760.00 In United States Currency,* 406 S.W.3d 177, 181 (2013).

Even more, Spectrum's representative acknowledged that "Novelty Synthetic Urine" is used for sexual fetish, *NOT* for urinalysis.  In fact, Spectrum's representative testified as follows:

> "Q:  Okay, very good.  All right.  So going back before the break, you indicated that you had a very good idea as to how the Quick Fix synthetic urine that is sold by Spectrum Laboratories is used in context of novelties.  What is that idea that you have?
> A:  A sexual fetish.

8

Q:  What do you mean by 'sexual fetish'?
A:  Well, I mean, that's kind of what I mean.
…
Q: Okay.  Does Spectrum Laboratories have an advertisement that specifically targets this product to be used as sexual fetish?
A:  Yeah, it's -- we don't use the word "sexual fetish."  We use the word "novelty."
Q:  So you -- so -- okay.  Just to understand what you just said, Spectrum Laboratory uses the word "novelty" synonymous with "sexual fetish"?
A:  That's a fair statement, yes."  See *ECF-136-1, at 5-6.*

Thus, it is acknowledged by Spectrum that "NOVELTY synthetic urine" is used for sexual fetish, *NOT* for use in urinalysis as required by the '892 Registration. Accordingly, Spectrum's Counterfeiting claim is not plausible because it does *NOT* plead that the accused product is the same as the registered good which is "synthetic urine for use in urinalysis".  Essentially, nothing in the Third Amended Complaint alleges that "Novelty Synthetic Urine" is the same as "synthetic urine for use in urinalysis".  These are two substantially different products.  Thus, Spectrum's Counterfeiting claim does *NOT* present a sufficient basis for relief as a matter of law.

Similarly, it is unreasonable to suggest that "synthetic urine for use in urinalysis" is related to "novelty synthetic urine" that is for sexual fetish.  It is unreasonable to suggest that synthetic urine used for sexual fetish is also used for urinalysis in a laboratory setting.  As such, Spectrum cannot rely on the '892 Registration to plead trademark rights for "novelty synthetic urine."  In fact, the '892 Registration is protectable only against the use of "synthetic urine for use in urinalysis", but *NOT* "novelty synthetic urine" that is used for sexual fetish.

After all, the protective scope of a mark's registration is determined by the mark as depicted in the certificate of registration and the goods or services described therein. See *In re Nat'l Data Corp.*, 753 F.2d 1056, 1059 (Fed. Cir. 1985) ("The registration affords prima facie rights in the mark as a whole, not in any component.").  See also *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007) ("A registered trademark holder's protectable interest is limited to those goods or services described in

9

its registration."). By statute, a registration certificate must "reproduce the mark" as illustrated in a registrant's application. See *15 U.S.C. § 1057(a)*. Such registration serves as "prima facie evidence of the validity of the registered mark and of the registration of the mark . . . and of the registrant's exclusive right to use the registered mark . . . on or in connection with the goods or services specified in the registration." See *Id.* § 1115(a). A mark's registration thus defines the bounds of a registrant's protectable interest by depicting the mark and specifying the goods or services for which the mark will be used.

Even more, goods are related when they are complementary, similar in use or function, or sold to the same class of purchasers. See *Ironhawk Technologies, Inc. v. Dropbox,* 2 F.4th 1150, 1163 (9th Cir. 2021). In the present case, Spectrum does not and cannot plausibly allege that "synthetic urine for use in urinalysis" used in a laboratory setting is the same or related to "novelty synthetic urine" used for sexual fetish. In fact, such is not alleged in the Third Amended Complaint. Accordingly, Spectrum's Trademark Infringement claim does not present a sufficient basis for relief as a matter of law.

Based on the foregoing, Spectrum cannot recover the damages it seeks in its Motion.

## V.    CONCLUSION

Accordingly, this Court must deny Spectrum's Motion.


DATED:  January 21, 2026

By:_____

Louis F. Teran (Admitted *Pro Hac Vice)*
Email: lteran@slclg.com
California Bar No. 249494
SLC Law Group
1055 E. Colorado Blvd., Suite 500
Pasadena, CA 91106
Phone:  818-484-3217 x200


ATTORNEY FOR URZ TRENDZ, LLC.

10